*CitiFinancial*
300 St. Paul Place          RECEIVED
Baltimore, MD 21202



RECEIVED

2005 JUL -7 A :' 39

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT

June 4, 2005

2005 JUN 13 P 1: 33

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA

|.||.||...||..|.|.|.|.|.|.||...|.||..|.||.|.||.|.|
C H  KINSEY
JANIE KINSEY
RR 2 BOX 284
HEADLAND AL 36345-9802

Account:  6070103922126995

Dear C H  KINSEY & JANIE KINSEY:

We are writing to let you know that computer tapes containing personal account and payment history information about your loan were lost recently while in the possession of a third-party courier.  We have no reason to believe that this information has been used inappropriately and we have not received any reports of unauthorized activity regarding your credit or loan.

You should know that there is little risk of your account being compromised because you have already received your loan.  No additional credit may be obtained from CitiFinancial without your prior approval, either by initiating a new application or by providing positive proof of identification.  That said, we deeply regret that this situation occurred and want you to know that there are steps we are taking and some steps that we suggest you take to monitor your credit and protect you from identity theft.

**First, we initiated an investigation of this incident as soon as we were made aware of it, and alerted law enforcement.**  The situation arose during the routine shipment of computer tapes to a credit bureau.  The tapes contain names, Social Security numbers, account numbers and payment history of CitiFinancial customers.  We and other lenders provide this information each month to credit bureaus to ensure that your credit report remains accurate and up-to-date.  We send the information via nationally recognized couriers and require them to use enhanced security procedures to transport the tapes from our data center to the bureaus. Nonetheless, during a recent delivery, one of these couriers lost one box of tapes.  Beginning next month the information we provide to credit bureaus will be sent via direct encrypted electronic transmission.

**Second, CitiFinancial has arranged for you, at your option, to enroll in a credit monitoring service at no cost to you for the next 90 days.**  You will not be billed for this service. Once you enroll, our service provider will notify you of activity on your Equifax credit report.  To start your enrollment, call 1-866-271-9152 from 8 a.m. to 11 p.m. Monday-Friday and 9 a.m. to 6 p.m. Saturday (EDT).

**Third, prior to this incident, we had already enrolled you in Citi® Identity Theft Solutions, a free service from CitiFinancial, to help protect you from identity theft.**  To find out more, click on Products & Services at the top of our website: www.citifinancial.com.

*Finally, it is important to regularly review activity on your accounts.*  If you discover any suspicious activity, be sure to report it immediately to CitiFinancial.  It is also good practice to obtain your credit report periodically from one or all of the national credit reporting agencies.  If you think identity theft or fraud has been committed, or if you have any questions, please stop by your local branch or call our dedicated information security hotline at 1-866-452-2484.  The hotline is available seven days a week from 8 a.m. to 9 p.m. (EDT).

You also have the right to place a fraud alert on your credit report by contacting the credit bureaus. You should review the tips and information included with this letter about how you can protect yourself from identity theft, place a fraud alert or request a free copy of your credit report.  It also includes information on who to contact in the event that you believe identity theft has been committed.

Please know that we regret any inconvenience or concern this incident may cause you.  Be assured that we will take whatever steps are necessary to protect confidential customer information, and please do not hesitate to contact us if you have any questions.

Sincerely,

*[signature]*

Information Security Director

0/L0/ER0454/001/00/00/00/0000/00000000/3443



**TRANSOUTH**
Financial
Corporation

An Associates Company

TranSouth Financial Corporation


SERVICE PROVIDERS


DATA SEARCH
7310 RITCHIE HIGHWAY 10th FLOOR
GLEN BURNIE, MD    21061
800-638-7000


NATIONAL REAL ESTATE
1263 CENTER POINT PARKWAY SUITE E
BIRMINGHAM, AL    35215
205-856-9100


LEE & MCINISH ATTORNEYS (JERRY WHITE)
238 WEST MAIN STREET
DOTHAN, AL    36302
334-792-4156


EQUIFAX CREDIT INFORMATION SERVICES
5505 PEACHTREE DUNWOODY ROAD SUITE 600
ATLANTA, GA    30340
770-612-3200


2623 Montgomery Hwy.     334-794-1920
Suite E                  334-794-8099 (fax)
P.O. Box 9081
Dothan, AL 36304

## 2. NOTICE OF LOSS

In case of a loss that applies to this insurance, you must:

a. as soon as practicable notify us or our agent that loss has occurred; and

b. file a detailed, sworn statement of loss with us or our agent within 90 days from the date of loss.

If you fail to notify and provide us with statement of loss, your claim for such loss is not valid.

## 3. EXAMINATION UNDER OATH

In the settlement of a claim, we may require you to submit to examination under oath. This includes:

a. any members of your family residing with you;

b. any persons in your employ; or

c. any persons with an interest in the covered property.

We may also require that you allow us to inspect:

a. any books of account, bills, invoices and other vouchers; or

b. certified copies if the originals are lost; and

c. permit extracts or copies of same to be made.

## 4. VALUATION

If the insured property is damaged but can be repaired, we will pay to have it repaired. If the damaged property cannot be repaired, we will pay to replace it. In this case, there is no deduction for depreciation.

We will not pay more than the original amount of insurance shown on your certificate.

## 5. SETTLEMENT OF CLAIMS

We will pay for a loss within 60 days after we have received and accepted your signed, sworn statement of loss.

## 6. NO BENEFIT TO BAILEE

We don't grant coverage which benefits any person or organization holding, storing, or transporting property for a fee. This is regardless of any other provisions of this certificate.

## 7. SUBROGATION

You shall waive all rights of recovery for a loss against any person or organization. You shall sign and deliver all related papers and do whatever else is necessary to secure such rights. You shall do nothing to prejudice such rights.

## 8. LOSS

The amount of insurance provided by this certificate is not reduced by any loss.

## 9. PAIR OR SET

Should damage occur to any part of a pair or set of items:

a. the loss will be reasonably measured in proportion to the total value of the pair or set, and

b. loss to the pair or set shall not be taken to mean total loss of the pair or set.

## 10. PARTS

When the insured property is made of several parts when complete and loss occurs to a part of the insured property, we only pay for the insured value of the part lost or damaged.

## 11. SUE AND LABOR

Should loss occur, you may be required to sue, labor, and travel to safeguard and recover the insured property or any part of it, without prejudice to this insurance. Any actions by you or us in recovering, saving and preserving the insured property are not considered a waiver or acceptance of abandonment. We will contribute to any expenses you may incur in this regard in proportion to the amount of coverage and the amount of loss.

## 12. PAYMENT FOR LOSS: ACTION AGAINST US

No legal action may be brought against us unless:

a. you have fully complied with all the terms of this certificate;

b. 60 days have passed after you have filed proof of loss; and

c. the amount of loss has been determined as provided in this certificate.

Any action against us must be started within one year after the loss, unless the laws of your state provided for a longer period. If you live in such a state, any action against us must be started within such period.

## 13. APPRAISAL

If you and we fail to agree on the amount of loss:

a. either can demand that the amount of loss be set by appraisal;

b. the demand must be written;

c. the demand must be made within 60 days after we have received your proof of loss.

Each shall select a competent, impartial appraiser. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of the pending appraisal to select an umpire. The appraisers shall then appraise the loss. They shall state separately the value at the time of loss and the amount of loss.

BORROWER COPY (1)

4. Loss or damage to property by:
   a. delay of shipment, wet or dampness, extreme temperature changes; or
   b. being marred, scratched, spotted, discolored, mouldy, rusted, frosted, rotted, soured, steamed or changed in flavor.
5. Loss or damage to foodstuffs.
6. Loss or damage due to:
   a. mechanical defect, normal wear and tear, or improper or faulty repair of, but not limited to, plumbing, heating or air conditioning equipment, etc.; or
   b. short-circuiting, blowout or other electrical disorders within the insured articles.
7. Loss or damage caused by your neglect to use all reasonable means to save and preserve the property:
   a. at and after the time of loss; or
   b. when the property is endangered by any hazard in surrounding areas.
8. Loss or damage caused by:
   a. war or act of war;
   b. any nuclear weapon, whether in time of peace or not;
   c. confiscation or destruction of property by any public official;
   d. risks of contraband, illegal transportation or illegal trade.
9. Loss or damage due to radioactive contamination.
10. We don't insure the sentimental or artistic value of any insured items that are of antique or unique nature.
11. We don't insure accounts, deeds or evidences of debt. Unless listed on this certificate, we don't cover records and books of record (except their value when bought new), cloth awnings, manuscripts, bullion, animals, motor vehicles, aircraft, or narcotics.
12. Loss or damage to salesmen's samples and property held for sale. We don't cover property which relates to your business, profession or occupation, except when it's in your residence.
13. Loss or damage due to rain, snow, sand or dust, wind, or other foreign matter, whether wind driven or not. But wind or hail can cause damage to the building in which the covered property is held. The damage to the building by wind or hail may cause holes that let in rain, snow, sand, dust, wind, or other foreign matter that then damaged the insured property.
   If this happens, we will then pay for loss or damage to the insured property.
14. Loss or damage due to vandalism or malicious mischief caused by any relative living with you.
15. Loss or damage while in storage. We do cover the property when it's stored at points or places en route during travel.
16. Loss or damage to personal effects in the custody of students while in:
   a. fraternity or sorority houses;
   b. dormitories; or
   c. on the premises of schools or colleges.
   We will cover personal effects at these places against risk of fire only.
17. Loss or damage to jewelry, watches, articles made completely or partly of silver, gold or platinum, and furs or articles trimmed with or made partly with furs for:
   a. more than 50% of the total amount of insurance of this certificate; or
   b. $1,000.00 in any one loss, whichever is the lesser figure.
18. Loss caused by theft.

## E. DEDUCTIBLE CLAUSE
Should a covered loss occur:
1. we pay only when each loss exceeds $25.00; and
2. we pay only the amount over $25.00.

## F. LIMITATIONS
We are not liable for an amount exceeding:
1. $100 for any one loss to money. This includes coin collections or any property relating to currency.
2. $500 for any one loss to securities and stamps. This includes stamp collections.

## G. CONDITIONS
### 1. MISREPRESENTATION AND FRAUD
We don't provide coverage for anyone who, before or after a loss:
a. conceals a material fact; or
b. misrepresents a material fact; or
c. attempts any fraud relating to this insurance.

STATE EXCEPTIONS

### 1. FLORIDA
**SINKHOLE COVERAGE**

Your Florida Insurance Policy is amended to include Sinkhole coverage. A "Sinkhole loss" shall mean actual physical damage to the property covered arising out of or caused by sudden settlement or collapse of earth supporting such property only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formation.

A "loss" shall mean structural damage to the building. Your personal property will be covered only if there is a structural damage to the building.

### 2. FLORIDA and SOUTH CAROLINA
**Condition 14. CANCELLATION** is amended to include the following:

Any return premium of $3.00 or more shall be returned to you.

### 3. GEORGIA

Part E "DEDUCTIBLE CLAUSE" is hereby deleted.  No deductible applies in Georgia.

### 4. INDIANA, MARYLAND, NORTH DAKOTA, RHODE ISLAND, SOUTH DAKOTA, UTAH
Condition 14 is changed as follows:
**Condition 14. CANCELLATION**

Paragraph "b." of "We may cancel . . ." is replaced by the following:

b. the return premium will be calculated on the permissible short rate basis as of the effective date of cancellation.

### 5. MARYLAND & WASHINGTON
Condition 14 is changed as follows:
**Condition 14. CANCELLATION**

The words "30 days" in the first sentence of the second paragraph are changed to read "45 days".

### 6. NEW HAMPSHIRE
Condition 5, "SETTLEMENT OF CLAIMS" is replaced by the following:

We will pay for a loss within 5 working days after we have received and accepted your signed, sworn statement of loss.

### 7. UTAH
**Condition 2 is amended as follows:**

2. NOTICE OF LOSS

In case of a loss that applies to this insurance, you must:

a. as soon as practicable notify us or our agent that loss has occurred. Notice to our agent with particulars sufficient to identify the policy, is notice of loss;

b. file a detailed, sworn statement of loss with us or our agent within 90 days from the date of loss. If you fail to notify and provide us with statement of loss, your claim for such loss is not valid, unless you show it was not reasonably possible to give notice of loss within 90 days and notice of loss was filed as soon as reasonably possible.

Condition 14 is changed as follows:
**Condition 14. CANCELLATION**

"We may cancel the certificate . . ." is replaced by the following:

After the Certificate has been in effect for 60 days or more, we cannot cancel it except for one of the following reasons:

a. Nonpayment of premium;

b. The certificate was issued because of a material misrepresentation by you;

c. You have violated any of the material terms and conditions of the Certificate;

d. There has been substantial change in the risk assumed by the Company (unless the Company should have reasonably foreseen the change or contemplated the risk on the effective date of coverage).

Cancellation for nonpayment of premium will be effective 10 days after delivery or first class mailing of notice to you. Cancellation for any of the other reasons set forth above will be effective 30 days after delivery or first class mailing of notice to you.

BORROWER COPY (1)

If they fail to agree, they shall submit their difference to the umpire. Written agreement signed by any two of these three shall set the amount of loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and payment to the umpire shall be paid equally by you and us. We won't be held to have waived any of our rights by any act relating to appraisal.

## 14. CANCELLATION

You may cancel this insurance by giving us written notice within 30 days after receipt of a certificate. The charge for the insurance will:

a. be refunded to you in full; or

b. credited to your account.

The insurance will then be void. You will be in the same position as if no insurance had been issued.

If accepted, you may cancel this certificate at any time. When you request cancellation, the return premium is based on permissible short rate rules. You must return the certificate to us.

We may cancel this certificate at any time. If we do, we must:

a. give you 30 days written notice; and

b. the return premium is on a pro-rata basis as of the effective date of cancellation.

Any written notice of cancellation from us to you must:

a. tell you why we cancelled; and

b. be sent to you by certified mail at your last known mailing address.

A copy of the notice of cancellation will also be sent to the Lender and our agent.

## 15. CONFORMITY TO STATUTE

The terms of this certificate should not conflict with any state statute in which it is issued. If there is conflict, the terms are amended to conform to such statutes.

## 16. CHANGES

The terms of this certificate can't be changed except by endorsement issued by us.

## 17. ASSIGNMENT

Assignment of this certificate won't be valid unless we give our written consent. If you die, we insure:

a. your spouse if living with you at the time of your death; and

b. your legal representatives.

In case you die, notice of cancellation addressed to you and mailed to the address shown on this certificate shall effect cancellation of this certificate.

## 18. OTHER INSURANCE

This insurance is considered primary insurance. It will not be apportioned with any other insurance coverage.

## LOSS PAYABLE CLAUSE

This certificate covering the Lender's interest won't become invalid due to your neglect or acts; provided the Lender has performed certain duties. This certificate won't be voided by any of the following that relate to the property:

1. foreclosure or other proceedings;

2. notice of sale;

3. change in the title or ownership;

4. occupation of the premises for purposes more hazardous than allowed by this certificate.

The Lender must:

1. tell us of any change of ownership or increase in hazard that he learns of; and

2. provide us with proof of loss after learning of it if you do not report it to us.

This must be done within 30 days after the Lender learns of the loss. If proof of loss is supplied by the Lender, he must comply with all provisions as to appraisal, time of payment, and bringing of suit. If the Lender does not comply with these obligations, such failure shall void this insurance as to the interest of the Debtor.

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.


COSIGNER SIGNATURE _____ DATE _____

615063  Rev. 9-85

| ÓRIGINAL (1) |
|---|
| ✓ CO-BORROWER COPY (1) |

00025

## NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ DECEMBER 18, 1998 _____ ;

    or

(2)  the date you received your Truth in Lending disclosures;

    or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(date)

(or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
Consumer's Signature                                            Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of

_____ DECEMBER _____ , _____ 1998 .

_____
Consumer

_____
Consumer

| | |
|---|---|
| ORIGINAL (1) | |
| ✓ | BORROWER COPY (2) |
| CO-BORROWER COPY (2) | |

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ DECEMBER 18, 1998 _____ ;

    or

(2)  the date you received your Truth in Lending disclosures;

    or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(date)

(or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                                                    Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of
_____ DECEMBER _____ , _____ 1998 .

_____
Consumer

_____
Consumer

| ORIGINAL (1) |
|---|
| ✓ BORROWER COPY (2) |
| CO-BORROWER COPY (2) |

00004.03

ASSOCIATES INSURANCE COMPANY

Authorization to

HHG -- PERSONAL PROPERTY (World Wide)

HOME OFFICE • SOUTH BEND, INDIANA
ADMINISTRATIVE OFFICE:
250 CARPENTER FREEWAY • IRVING, TEXAS 75062-2710
P.O. BOX 660028 • DALLAS, TEXAS 75266-0028

INSTALLMENT FLOATER
CERTIFICATE OF INSURANCE

**(A stock insurance company, herein called the Company)**

| MASTER POLICY NUMBER | CERTIFICATE NUMBER | BRANCH | BRANCH CODE |
|---|---|---|---|
| EM 200 | 3065778 | DOTHAN CHEROKEE | 3268 |

12:01 A.M. STANDARD TIME

| EFFECTIVE DATE | ACCOUNT NUMBER | ORIGINAL AMOUNT OF INSURANCE | TERM IN MONTHS | PREMIUM | MINIMUM RETAINED PREMIUM (IF APPLICABLE) | COVERAGES |
|---|---|---|---|---|---|---|
| 11/07/00 | 0245145 | 1,000 | 18 | $ ****22.30* | $ 5.00 | FIRE, INLAND MARINE AND EXTENDED COVERAGE |

| CREDITOR ASSURED | ASSOCIATES FINANCIAL SERVICES | DEBTOR INSURED | JANIE L KINSEY |
|---|---|---|---|
| LOCATION OF PROPERTY | NUMBER AND STREET  RR 2 BOX 284 | CITY AND STATE  HEADLAND | AL |

PROPERTY INSURED

**SEE ATTACHED RETAIL INSTALLMENT CONTRACT OR SCHEDULE A.**

### NOTE: NON-COMPULSORY INSURANCE VOLUNTARILY PURCHASED BY DEBTOR

This authorization is for the convenience and optional use of the Master Policy Holder when statutory or regulatory authority requires written authorization for insurance. Signature hereon is not a condition to effect coverage.

I hereby give authorization to the insurance company indicated above to effect insurance coverage on property described above for a term as shown above and declare that the value of my insured property is not less than the amount of insurance.

I hereby declare that the purchase of the above insurance is entirely voluntary and has not been made compulsory by the creditor and that the creditor has in no way led me to believe that such insurance was prerequisite to the extending of credit to me.

I further declare that the option has been extended to me to purchase this insurance from any insurer or agent of my own choice. I freely choose the insurer and agent to whom the authorization is given.

The creditor to whom I have applied for a loan has made specific inquiry as to the existence of valid and collectible insurance on the collateral securing said loan. My reply to this inquiry is indicated as follows:

☐  I have no valid and collectible insurance to offer the creditor.

☐  Any other applicable insurance is not available to assign or offer the creditor.

I authorize the creditor to deduct the premium from the proceeds of my note.

I hereby acknowledge this insurance can be cancelled with full return of premiums within thirty (30) days of issue date if the Creditor/Loss Payee is provided with a Loss Payable Endorsement on a like insurance certificate of a company qualified to do business in the state in which this insurance is issued.

I further declare that I have read or had read to me this statement before signing this authorization.

**THIS CERTIFICATE DOES NOT PROVIDE COVERAGE FOR LOSS CAUSED BY THEFT.**

WITNESS _____    DEBTOR _____

631198  REV 7-95

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |

00044.07

OPTIONAL CONTINUATION and/or CANCELLATION

**OPTION NO. 1**                    **(WHEN SIGNED SEND TO COMPANY WITH MONTHLY REPORT)**

I, the named insured in the certificate described above, certify that I am unable to surrender and deliver said certificate to the insurance company indicated above and I agree to indemnify and protect the said insurance company indicated above against any claim or loss that may be asserted against said Company under said certificate by any person or persons and that I further request cancellation of said certificate and accept receipt of the unearned portion of the premium calculated thereon; and that I further agree and understand that this certificate shall terminate and cease to exist at 12:01 A.M., Standard Time at my address on the date shown below.

DATE OF CANCELLATION _____ , 19____ RETURN PREMIUM _____ $ _____

WITNESS _____ INSURED _____

(WHEN SIGNED RETAIN FOR YOUR RECORD)
THIS OPTION CANNOT BE USED IN STATES WHERE CANCELLATION IS MANDATORY.

**OPTION NO. 2**

I, the named Insured in the certificate described above hereby elect to continue in force until expiration the above described installment floater insurance certificate rather than to cancel as of this date and accept refund of unearned premium. I understand that the creditor lienholder will have no further right of participation in my certificate and that my benefits in case of claim will accrue to myself.

WITNESS _____ INSURED _____

CANCELLATION COPY

ASSOCIATES INSURANCE COMPANY

HOME OFFICE • SOUTH BEND, INDIANA
ADMINISTRATIVE OFFICE:
250 CARPENTER FREEWAY • IRVING, TEXAS 75062-2710
P.O. BOX 660028 • DALLAS, TEXAS 75266-0028

**(A stock insurance company, herein called the Company)**

**HHG -- PERSONAL PROPERTY (World Wide)**

**INSTALLMENT FLOATER
CERTIFICATE OF INSURANCE**

| MASTER POLICY NUMBER | CERTIFICATE NUMBER | BRANCH | BRANCH CODE |
|---|---|---|---|
| EM 200 | 3065778 | DOTHAN CHEROKEE | 3268 |

12:01 A.M. STANDARD TIME

| EFFECTIVE DATE | ACCOUNT NUMBER | ORIGINAL AMOUNT OF INSURANCE | TERM IN MONTHS | PREMIUM | MINIMUM RETAINED PREMIUM (IF APPLICABLE) | COVERAGES |
|---|---|---|---|---|---|---|
| 11/07/00 | 0245145 | 1,000 | 18 | $ ****22.30* | $ 5.00 | FIRE, INLAND MARINE AND EXTENDED COVERAGE |

| CREDITOR ASSURED | ASSOCIATES FINANCIAL SERVICES | DEBTOR INSURED | JANIE L KINSEY |
|---|---|---|---|
| LOCATION OF PROPERTY | NUMBER AND STREET RR 2 BOX 284 | CITY AND STATE HEADLAND | AL |

PROPERTY INSURED

**SEE ATTACHED RETAIL INSTALLMENT CONTRACT OR SCHEDULE A.**

## DEFINITIONS

Throughout this certificate:

1. "You" and "your" means the person(s) in whose name this certificate has been issued; the debtor (insured) shown above.
2. "We", "us" and "our" means the insurance company.
3. "Lender" means the creditor from which you borrowed money, or financed your purchase.
4. "Personal Property" means the property described above as "Property Insured".

## A. PROPERTY COVERED AND AMOUNT OF INSURANCE

For you and members of your family residing with you, we cover your personal property:

1. Anywhere in the world;
2. Except as stated otherwise in this certificate.

Should loss occur, payment shall be made to both you and the Lender as interests appear at the time of loss.

This certificate is made and accepted subject to compliance with all applicable provisions. This includes any provisions that may be added, as provided in this certificate.
IN WITNESS THEREOF, we have executed and attested to this certificate.

_Secretary_

_President_

**THIS CERTIFICATE DOES NOT PROVIDE COVERAGE FOR LOSS CAUSED BY THEFT.**

631198 REV 7-95

BORROWER COPY (1)

00043A.06

## B. SPECIAL EXTENSION

You may use up to 10% of the original amount of insurance:

    1. If you are a tenant of the described residence; and

    2. Loss by a peril insured against has occurred to:

        a. improvements;

        b. alterations; or

        c. additions

          you have made to the residence.

## C. PERILS INSURED

### FIRE AND INLAND MARINE

We insure for direct and accidental loss to your personal property caused by:

1. Fire and lightning; measures used by civil authorities to combat fire;
2. Windstorm and hail;
3. Explosion, riot, riot attending a strike, civil commotion;
4. Vehicles or aircraft. This includes collision, overturning or derailment of any transporting conveyance;
5. Sudden and accidental damage from smoke. This peril does not include smoke from agricultural smudging or industrial operations;
6. Falling objects. The outside roof or walls of the building containing the covered property must first be damaged by the falling objects;
7. Collapse of buildings or any of their parts;
8. Weight of ice, snow or sleet. The building containing the covered property must first be physically injured by the weight of ice, snow or sleet;
9. Landslide;
10. Vandalism and malicious mischief;
11. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air-conditioning system, or household appliance. This peril does not cover loss caused by water which backs up through sewers or drains;
12. Sudden and accidental damage to electrical appliances or devices from artificially generated electrical current. This peril does not include loss to a television picture tube;
13. Earthquake;
14. Extended Coverage. This means loss caused by:

    a. flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water; or

    b. spray from any of these,

    all whether driven by wind or not.

15. Burglary. This means the illegal taking of insured property from within the premises by a person making illegal entry therein by actual force and violence. There must be visible marks made by:

    a. tools;

    b. explosives;

    c. electricity or chemicals upon; or,

    d. physical damage

    to the outside of the premises at the place of entry.

    However, $50.00 is deducted from the amount of each loss caused under the coverage provided by this paragraph.

16. Robbery. This means the illegal taking of another's property by:

    a. force; or,

    b. threat of force.

    However, $50.00 is deducted from the amount of each loss caused under the coverage provided by this paragraph.

## D. GENERAL EXCLUSIONS

### We don't insure against:

1. Loss or damage caused by slow decay, wear and tear, insect, vermin, or any damage while the property is being cleaned, repaired, renovated, renewed, refurbished, rebuilt or worked upon in any like manner.
2. Breakage of fragile objects unless caused by fire.
3. Loss or damage to any type of motor vehicle, land conveyance, farm equipment or boats and their equipment, furnishings and accessories. This certificate does, however, insure outboard motorboats, sailboats, rowboats and canoes:

    a. up to $500 per loss; and

    b. against all insured perils.

    This includes their equipment, furnishings and accessories. While such property is afloat, there is no coverage against perils 2., 4., and 7. of Section C.

BORROWER COPY (1)

**Disability Exclusions.** We will not pay a Total Disability claim if Total Disability is a result of:
(a) normal pregnancy, whether existing on the Effective Date or developing thereafter;
(b) elective surgery;
(c) intentionally self-inflicted injury;
(d) war, declared or undeclared, or act of war;
(e) flight in any aircraft other than a commercial scheduled aircraft;
(f) disability occurring during the commission of a felony;
(g) sickness or injury caused by or resulting from the use of alcoholic beverages or narcotics (including hallucinogens) unless they are administered on the advise of and taken as directed by a licensed physician other than the Insured;
(h) a pre-existing illness which manifested itself to you by requiring medical diagnosis or treatment within the 6 months preceding the taking of the application for insurance and which caused loss within 6 months after the Effective Date. After that, disability commencing from such illness is covered.

**WHEN INSURANCE STOPS.** The insurance will stop at the end of the term of insurance shown in the Schedule or the first to occur of any of the following events:
(a) when a life insurance benefit is paid;
(b) when the indebtedness is paid off, renewed or refinanced;
(c) when the Insured gives us written notice to cancel the insurance; or
(d) when the indebtedness is otherwise extinguished, whichever happens first.

If joint life insurance is effective and the insurance on one of the Insured Persons ceases because of suicide, contestability, or ineligibility, a refund will be made. The refund will be the difference between the Joint Life Insurance charge and the Single Life insurance charge which would have been paid if only Single Life Insurance had been elected. When termination of life insurance results from an Insured Person's death, the life insurance premium paid to Us is deemed earned and no refund is due.

**REFUNDS.** If the insurance stops before the end of the term of insurance shown in the Schedule for any reason other than a life benefit being paid, a refund or credit of the unearned premium will be paid to the Insured or credited to the Insured's account. Refunds for Decreasing Life Insurance will be calculated according to the Actuarial method. Refunds for Total Disability Insurance will be calculated according to the Actuarial method. When termination of Life/Total Disability Insurance results from death, the life premium paid to us is deemed earned; no refund is due. However, Total Disability Insurance premium is not earned and will be refunded; refunds or credits of less than $1.00 will not be made.

**RENEWAL AND REFINANCING OF THE LOAN.** If the Loan is discharged due to renewal or refinancing prior to the scheduled termination date of the insurance, any insurance in force shall be terminated before any new insurance may be written in connection with the renewed or refinanced Loan. The Effective Date of the coverage shall be deemed to be the first date on which the Insured Person became covered under the policy with respect to the amount and term of the debt outstanding at the time of the renewal or refinancing.

**MISSTATEMENT OF AGE – MAXIMUM AGE EXCEEDED.** If the age of a Borrower is misstated and is over the Maximum Age stated in the Schedule, no insurance shall take effect. The liability of the Company shall be limited to a refund of premium paid therefore. This also applies to the Co-Borrower, if joint life coverage was elected. If an Insured correctly stated their age and their age was more than the Maximum Age, and we do not return the premium within 60 days of the Effective Date and prior to a claim, the coverage will remain in effect. This also applies to the Co-Insured, if joint life coverage was elected.

**RULES FOR FILING A CLAIM. For life insurance,** we must be given a certified copy of the death certificate as proof of a life claim. Upon the death of an Insured Person, we require proof of death be furnished to us which will include a certified copy of the deceased person's death certificate; and an affidavit signed by an officer of the Creditor certifying the amount due.

**For Total Disability Insurance,** the Insured must write us or our agent about their Total Disability claim within 30 days after the beginning of Total Disability or as soon after that as they can. We will send claim forms within 15 days after receiving notification of the claim. If we do not send the forms in 15 days the Insured can simply send us written proof of Total Disability. The proof must show the date and cause of the Total Disability and how serious it is and it must be signed by a licensed physician or chiropractor other than the Insured. The proof of Total Disability must be sent to us no later than 90 days after Total Disability ends. If it is impossible to file within 90 days, the Insured must file as soon as they can.

**LEGAL ACTIONS.** Unless the Insured has been legally incapable of filing the proof of Total Disability, we will not accept it if it is filed after 12 months from the time it should have been filed. The Insured cannot start any legal action until 60 days after sending us the proof of Total Disability and legal action cannot be started more than 36 months after the proof is filed. This also applies to the Co-Insured if joint coverage is in effect.

**PHYSICAL EXAMINATION AND AUTOPSY.** We at our own expense have the right, and the Insured and/or Co-Insured, if any, must allow us the opportunity, to examine their person as often as is reasonably required while a claim is pending and to make an autopsy in case of death; if it is not forbidden by law.

**INCONTESTABILITY.** The Group Master Policy, the application for the Group Master Policy, riders, amendments and endorsements, if any, the applications, if any, of Borrowers provided coverage under the Group Master Policy and this certificate are the complete contract of insurance. All statements made by an Insured on the application are considered to be representations and not warranties. No statement made can be used to void this insurance or deny a claim unless that statement is in the signed application. After 12 months from the date of the application (90 days for loans of under $1,000) no statement made by an Insured in the application can be used to void this insurance or deny a claim unless that statement was made fraudulently. This also applies to the Co-Insured if joint coverage was elected.

**POLICY/CERTIFICATE CHANGES.** All agreements made by us are signed by our President, a Vice President, or Secretary. No other person can alter or waive any of the conditions of the group master policy or this Certificate or make any agreements which will be binding upon the Company.

**CONFORMITY WITH STATE STATUTES.** Any part of the certificate which, on the Effective Date of the certificate, conflicts with the statutes of the state where the certificate was delivered, is changed to conform to the minimum standards of those statutes.

GC13299N9D1

| ORIGINAL COPY (1) |
| --- |
| BORROWER COPY (1) |
| INSURANCE COMPANY COPY (1) |

730055
0421SC.01

ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY          Home Office: P.O. Box 25757, Nashville, TN 37202-5757
A Tennessee Stock Insurance Company, herein called we, us or our          Home Office: 25 Century Blvd. Ste. 600, Nashville, TN 37214

## CERTIFICATE OF SINGLE PREMIUM GROUP CREDIT INSURANCE

### SCHEDULE

| CREDITOR/LESSOR BENEFICIARY (Name & Address)<br>ASSOCIATES FINANCIAL SERV. CO.<br>2407 MONTGOMERY HWY<br>DOTHAN          AL 363030000 | Account No.<br>0245145 | GROUP POLICY NUMBER | | GC1332-A |
|---|---|---|---|---|
| | | ORIGINAL AMOUNT OF<br>DECREASING LIFE INSURANCE | $ | *****1,171.96* |
| SECOND BENEFICIARY | | ORIGINAL AMOUNT OF<br>LEVEL LIFE INSURANCE | $ | NONE |
| | | MONTHLY DISABILITY<br>BENEFIT | $ | *****78.00* |
| BORROWER:<br>ADDRESS:   JANIE L KINSEY<br>           RR 2 BOX 284<br>           HEADLAND      AL 36345-9444 | AGE:<br>43 | Indebtedness Insured | | |
| | | Gross  N/A          Net     X | | |
| | | Single Decreasing<br>Life Premium | $ | *****14.45* |
| CO-BORROWER<br>N/A | AGE:<br>N/A | Joint Decreasing<br>Life Premium | $ | N/A |
| Effective Date of Insurance       11/07/00 | | Single Level<br>Life Premium | $ | N/A |
| Term of Decreasing Life Insurance<br>(Begins on Effective Date Shown Above)    18 mos. | | Joint Level<br>Life Premium | $ | N/A |
| Term of Level Life Insurance<br>(Begins on Effective Date Shown Above)    N/A mos. | | | | |
| Term of Disability Insurance<br>(Begins on Effective Date Shown Above)    18 mos. | | Single<br>Disability Insurance Premium | $ | *****56.16* |
| Maximum Amount of Life Insurance       $ 100,000.00 | | Waiting Period          7   Days<br>Elimination Period    None Days | | |
| Total Maximum Disability Benefit Amount  $ 21,000.00 | | TOTAL CREDIT | | |
| Maximum Monthly Disability Benefit     $ 350.00 | | INSURANCE PREMIUM | $ | ********70.61* |
| Term of the Loan                      18 mos. | | Original Amount of the Loan | $ | *****1,171.96* |

The only insurance coverage effective under this certificate is that for which a premium is charged.

> **NOTE:**
> THE MAXIMUM ELIGIBILITY AGE IS 65 ON THE INCEPTION DATE OF THE INSURANCE.
> THE LIFE INSURANCE BENEFIT MAY NOT COMPLETELY PAY OFF YOUR ACCOUNT.
> THE MONTHLY DISABILITY BENEFIT MAY BE LESS THAN YOUR MONTHLY ACCOUNT PAYMENT.
> THE MAXIMUM TERM OF LIFE INSURANCE COVERAGE IS 120 MONTHS FROM THE EFFECTIVE DATE OF INSURANCE.
> THE MAXIMUM TERM OF DISABILITY INSURANCE COVERAGE IS 60 MONTHS FROM THE EFFECTIVE DATE OF INSURANCE.
>
> IF THE TERM OF YOUR LOAN EXCEEDS THE TERM OF INSURANCE, THE DEATH BENEFIT IS ONLY PAYABLE IF DEATH OCCURS DURING THE TERM OF THE INSURANCE. TOTAL DISABILITY BENEFITS WILL NOT BE PAID FOR ANY PERIOD OF TOTAL DISABILITY CONTINUING AFTER THE TERMINATION DATE SHOWN IN THE SCHEDULE.
>
> **FREE-LOOK:**
> WITHIN 15 DAYS FROM THE DATE YOU RECEIVE THIS CERTIFICATE, YOU MAY RETURN THE CERTIFICATE TO THE CREDITOR IF YOU ARE NOT SATISFIED WITH THE INSURANCE FOR ANY REASON.  THE CREDITOR WILL, WITHIN 30 DAYS, REFUND OR CREDIT TO YOUR ACCOUNT ANY PREMIUM CHARGED FOR THE INSURANCE.

**WHO IS INSURED.**  The Borrower and Co-Borrower may be insured for life insurance.  The Borrower may be insured for Total Disability Insurance.

**DEFINITIONS.**

**"Borrower"** means the borrower of money or a purchaser or lessee of goods, services, property, rights or privileges for which payment is arranged through a Credit Transaction.

**"Co-Borrower"** means the co-borrower who is jointly indebted to the Creditor under the same contract of indebtedness as another borrower and is named in the contract of indebtedness.   An insured Co-Borrower is referred to as "Co-Insured," and named in the Schedule.

The terms **"Borrower"** and **"Co-Borrower"** also refer to "Lessee" and "Co-Lessee."

**"Insured"** or **"Insured Person"** means the Borrower and/or the insured Co-Borrower, if joint coverage is in force, who is insured under the Group Master Policy and named in the Schedule.

**"Creditor"** means the lender of money or vendor or lessor of goods, services or property, rights or privileges, for which payment is arranged through a Credit Transaction, or any successor to the right, title or interest of any such lender, vendor, or lessor, and an affiliate, associate or subsidiary of any of them or any director, officer or employee of any of them or any other person in any way associated with any of them.

**"Loan"** means any transaction by the terms of which the repayment of money loaned or Loan commitment made, or payment for goods, services or properties sold or leased, is to be made at a future date or dates.

**"Total Disability"** means that during the first 6 consecutive months of total disability the Insured is not able to perform the essential functions of their occupation held at the time the disability occurred because of sickness or accidental injury.  The Insured must be receiving regular care and treatment by a licensed physician or chiropractor other than himself.  After the first 6 consecutive months of total disability, the definition changes and requires that the Insured not be able to perform the essential functions of any occupation for which he is suited by virtue of education, training, or experience. Written proof of continuing total disability will be required at reasonable intervals.

### CREDITOR - DEBTOR INSURANCE ONLY

GC13299N9D1

| ORIGINAL COPY (1) |
|---|
| BORROWER COPY (1) |
| INSURANCE COMPANY COPY (1) |

730055
04215A.01

"**Actively Employed**" for disability insurance means that the Borrower: (1) is actively at work for wages and profit; and (2) has been physically present at his place of employment and has performed substantially all the duties of his occupation or employment for at least 30 hours each of the 2 weeks immediately prior to the Effective Date of coverage. A Borrower not actively employed on such date solely because such date was not a regularly scheduled work day shall be deemed actively employed.

"**Injury**" means bodily injury caused by an accident which causes Total Disability.

"**Sickness**" means illness or disease which causes Total Disability.

"**Monthly Disability Benefit**" means the lesser of the Monthly Disability Benefit or the Maximum Monthly Disability Benefit shown in the Schedule. The Monthly Disability Benefit and Maximum Monthly Disability Benefit are subject to the Total Maximum Disability Benefit Amount shown in the Schedule.

## WHEN COVERAGE BEGINS.
The insurance begins on the Effective Date shown in the Schedule. The insurance will terminate at the end of the term shown in the Schedule or for the reasons listed in the "**WHEN INSURANCE STOPS**" provision.

## COVERAGE PROVIDED.
We certify that if we have been paid the premium shown in the Schedule, the person or persons shown in the Schedule are insured subject to the terms of the Group Master Policy issued to the Creditor.

## WHO WE WILL PAY.
Upon receipt of due proof, we will make claim payments directly to the Creditor; the Creditor will apply the payments to reduce or extinguish the unpaid debt. If the amount of insurance benefit exceeds the unpaid debt, any such excess shall be paid to:
(a) the Insured; or
(b) the Second Beneficiary other than the Creditor; or
(c) the Insured's estate.

## WHAT WE WILL PAY.
**Single Life Insurance Benefit.** Single life insurance covers only the Borrower.

**Joint Life Insurance Benefit.** Joint life insurance covers the Borrower and the Co-Borrower and will pay only one death benefit. If a death benefit is paid as a result of the death of the Insured or Co-Insured, no further insurance will exist under the policy. If the deaths of the Insured and Co-Insured occur simultaneously, one death benefit will be paid for the Insured only. **(PAYMENTS ARE NOT DOUBLED.)**

**Amount of Decreasing Life Insurance.** The Decreasing Life Insurance is based on the net indebtedness. The amount of Decreasing Life Insurance is the Original Amount of Decreasing Life Insurance shown in the Schedule until the first payment due date. After the first payment due date, the amount of insurance is the scheduled unpaid principal balance due on the date of death.

The Original Amount of Decreasing Life Insurance may not exceed the Maximum Amount of Life Insurance shown in the Schedule; therefore, the amount may not be enough to completely pay off the Insured's account. We will determine the amount of Life Insurance benefit in two steps; we will divide the Maximum Amount of Life Insurance by the original principal balance to obtain a ratio; then, we will multiply this ratio by the scheduled unpaid principal balance due on the date of death. The result will be the amount of life insurance benefit we will pay.

Note: The amount of Decreasing Life Insurance benefit payable will not include delinquent payments, extensions of payments permitted by the Creditor as a result of delinquent payments or extensions of payments permitted by the Creditor to prevent the delinquency of payments.

**Total Amount of Insurance.** In no event will the sum of the amount of Decreasing Life Insurance exceed the Maximum Amount of Life Insurance shown in the Schedule. If Joint Life coverage is in effect, the joint life benefit will not exceed the amount of insurance which would be provided on a single life. If premium is paid for coverage in excess of the maximum amounts specified in the Schedule, we will: (1) reduce the excess coverage and refund the excess charge; or (2) terminate the coverage and refund the entire premium. Any reduction or termination of coverage must be within sixty (60) days from the Effective Date and while the Insured Person is alive.

**Single Total Disability Insurance Benefit. (INSURED ONLY)** We will pay a monthly benefit to the Creditor upon receipt of written proof the Insured became totally disabled while insured and continued to be totally disabled for at least the Waiting Period shown in the Schedule. Payment will be calculated from the first day of disability following the Elimination Period shown in the Schedule. The benefit will be equal to 1/30th of the Monthly Disability Benefit, subject to the Maximum Monthly Disability Benefit, shown in the Schedule for each day of disability to be compensated. Payments will stop when the Insured is no longer totally disabled; when benefits are paid to the end of the Term of Disability Insurance shown in the Schedule; when there is no longer any indebtedness; or the date of the Insured's death, whichever comes first. The Maximum Monthly Benefit is limited by the Total Maximum Disability Benefit Amount shown in the Schedule.

## PARTIAL PAYOFF
If the Original Amount of Life Insurance shown in the Schedule is less than the Original Amount of the Insured's Loan, the Amount of Life Insurance benefit payable will not be enough to completely pay off the Loan. If the Monthly Disability Benefit shown in the Schedule is less than the monthly Loan payment, the Insured will have to pay the Creditor the difference each month. (See "**Amount of Decreasing Life Insurance**" provision to determine the amount of decreasing life insurance benefit payable.)

If the term of either Life or Disability Insurance, or both, as shown in the Schedule is less than the term of the Insured's Loan, the insurance will not remain in force for any months remaining after the end of the Term of Insurance.

## WHAT WE WON'T PAY.
**Suicide Exclusion.** We will not pay a benefit if death is a result of suicide:
(a) if such death occurs within 12 months from the Effective Date of this Certificate; and
(b) we will refund the life insurance premium.

In such event, our liability will be limited to a refund of the premium paid for such coverage. If Joint Life Insurance coverage is in force, the refund will be that portion of the premium paid for the second Borrower and coverage will remain in force on the survivor.

GC13299N9D1

730055
042158.01

## DISCLOSURE STATEMENT

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY,C H<br>KINSEY,JANIE L<br>RT 2 BOX 284<br>HEADLAND      AL    36345 | TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN          AL    36303-2600 |
| CO-BORROWER: | |

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| 12/18/98 | 0301646 |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.84 % | $    3929.05 | $    7505.93 | $    11434.98 |

PAYMENT SCHEDULE - Payments are payable monthly

1st Payment Date
02/01/99

60  Payments    1 at $    216.72 followed by 59 at $    190.14 followed by 000 at $    $.00

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty.  You may be entitled to a rebate of part of the surcharge. You will not be entitled to a rebate of the loan fee.

SECURITY: ☒  You are giving a security interest in your real estate located at: _____
             RT 2 BOX 284 _____ HEADLAND _____ AL _____
         ☐  You are giving a security interest in the real estate being purchased and which is located at: _____

ASSUMPTION:  If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, security interests and prepayment refunds.

☐  This is a variable interest rate loan.    _____    _____
                                              BORROWER                       BORROWER

☒  This is a fixed interest rate loan.       _____    _____
                                              BORROWER                       BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below.  Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from this insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | 060 months, beginning on the Effective Date of Insurance | $    505.93 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION: You may cancel all, but not part of, the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made. The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account. Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

_____          _____
          WITNESS                              BORROWER

                                    _____
                                              BORROWER

| ORIGINAL (1) | |
|---|---|
| ✓ | BORROWER COPY (1) |
| | CO-BORROWER COPY (1) |
| | EXAMINER COPY (1) |

01745A.11

ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C)  $ _____7505.93_____

A. AMOUNT GIVEN TO YOU DIRECTLY: $ _____4689.85_____  B. AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____$.00_____
    Check No. _____011935_____ $ _____4689.85_____

C. AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | | | |
|---|---|---|---|---|
| AND MERCURY FINANCE 011933 | $ 1098.00 | To Insurance Co. for Credit Life . . . . . . . . . . . . | $ | 505.93 |
| AND MONEYTREE 011934 | $ 703.00 | To Insurance Co. for Credit Accident & Health | $ | $.00 |
| | $ .00 | To Insurance Co. for Involuntary | | |
| | $ .00 |   Unemployment Insurance. . . . . . . . . . . . . . | $ | $.00 |
| | $ .00 | To Public Officials . . . . . . . . . . . . . . . . . . . . . | $ | 24.15 |
| | $ .00 | Fees for Real Estate Transaction: | | |
| | $ .00 | To Appraiser . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 285.00 |
| | $ .00 | To _____ | | |
| | $ .00 |   for Abstract . . . . . . . . . . . . . . . . . . . . . . | $ | $.00 |
| | $ .00 | To Insurance Co. for Title Insurance. . . . . . . . . | $ | 50.00 |
| | $ .00 | To _____ | | |
| | $ .00 |   for Title Examination . . . . . . . . . . . . . . . . | $ | $.00 |
| | $ .00 | To _____ | | |
| | $ .00 |   for Credit Report . . . . . . . . . . . . . . . . . . | $ | $.00 |
| | $ .00 | | | |
| | $ .00 | TO NATIONAL REAL ESTATE FOR | | |
| | $ .00 |   TITLE SEARCH | | 150.00 |
| | $ .00 | | | |
| | $ .00 | | | |
| | $ .00 | | | |

D. PREPAID FINANCE CHARGE (not part of "Amount Financed"):
    Broker Fee Paid by Borrower . . . . . . . . . . . . . . . . . . . . . . . $ _____$.00_____ (1)
    Surcharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____120.00_____ (2)
    Loan Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____375.29_____ (3)
    TOTAL PREPAID FINANCE CHARGE. . . . . . . . . . . . . . $ _____495.29_____ (1)+(2)+(3)

0174SB.04

## NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ DECEMBER 18, 1998 _____ ;

    or

(2)  the date you received your Truth in Lending disclosures;

    or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(date)
(or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                                                   Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of

_____ DECEMBER _____ , 1998 .

_____
Consumer

_____
Consumer

| |
|---|
| ORIGINAL (1) |
| BORROWER COPY (2) |
| ✓ CO-BORROWER COPY (2) |

610864 REV. 10-98

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ DECEMBER 18, 1998 _____;

   or

(2) the date you received your Truth in Lending disclosures;

   or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
Consumer's Signature                                       Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of

_____ DECEMBER _____ , 1998 .

_____
                                    Consumer

_____
                                    Consumer

| | |
|---|---|
| | ORIGINAL (1) |
| | BORROWER COPY (2) |
| ✓ | CO-BORROWER COPY (2) |

# American Arbitration Association

## COMMERCIAL ARBITRATION RULES

To institute proceedings, please send three copies of this demand *and the arbitration agreement,* with the filing fee as provided in the agreement, to the AAA. Send the original demand to the respondent.

### DEMAND FOR ARBITRATION

DATE: _____

TO: NAME _____
(of the Party on Whom the Demand Is Made)

Address _____

City and State _____ ZIP Code _____

Telephone (        ) _____ Fax _____

The named claimant, a party to an arbitration agreement contained in a written contract, dated _____
_____ and providing for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration thereunder.

THE NATURE OF THE DISPUTE:




THE CLAIM OR RELIEF SOUGHT (the Amount, if Any):




TYPES OF BUSINESS: Claimant _____ Respondent _____

HEARING LOCALE REQUESTED: _____
(City and State)

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association at its Dallas, Texas office, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the administrator.

Signed _____ Title _____
(May Be Signed by a Representative)

Name of Claimant _____

Address (to Be Used in Connection with This Case) _____

City and State _____ ZIP Code _____

Telephone (        ) _____ Fax _____

Name of Representative _____

Name of Firm (If Applicable) _____

Representative's Address _____

City and State _____ ZIP Code _____

Telephone (        ) _____ Fax _____



**Financial Corporation**

⚠ An Associates Company

TranSouth Financial Corporation

## SERVICE PROVIDERS

DATA SEARCH
7310 RITCHIE HIGHWAY 10th FLOOR
GLEN BURNIE, MD   21061
800-638-7000


NATIONAL REAL ESTATE
1263 CENTER POINT PARKWAY SUITE E
BIRMINGHAM, AL   35215
205-856-9100


LEE & MCINISH ATTORNEYS (JERRY WHITE)
238 WEST MAIN STREET
DOTHAN, AL   36302
334-792-4156


EQUIFAX CREDIT INFORMATION SERVICES
5505 PEACHTREE DUNWOODY ROAD SUITE 600
ATLANTA, GA   30340
770-612-3200

**8. WASHINGTON**

General Exclusion 18 is amended to read as follows:

18.  Loss caused by mysterious disappearance.

The disclaimer on the top page is amended to read as follows:

**THIS CERTIFICATE DOES NOT PROVIDE COVERAGE FOR LOSS CAUSED BY MYSTERIOUS DISAPPEARANCE**

Conditions  7 and 13 are changed as follows:

**Condition 7. SUBROGATION**

You are entitled to full recovery and you are permitted to recoup general damages before allowing subrogation; provided, however, that in so doing, you don't prejudice our rights as insurer.

**Condition 13.  APPRAISAL**

The last sentence is changed to read: You and We won't be held to have waived any of our rights by any act relating to appraisal.

**9. WEST VIRGINIA**

Condition 5 - Settlement of Claims is replaced by the following:

**Condition 5. PAYMENT OF LOSS**

We will pay for a loss within 15 days after we have received and accepted your signed, sworn statement of loss.

Condition 12 - Payment for loss: Action Against Us; Paragraph b., is replaced by the following:

**Condition 12. ACTION AGAINST US**

b. 15 days have passed after we have received and accepted your signed, sworn statement of loss; and

**10. WYOMING**

Conditions 5 and 12 are changed as follows:

**Condition 5. SETTLEMENT OF CLAIMS**

The words "60 days" are changed to read "45 days".

**Condition 12. PAYMENT FOR LOSS: ACTION AGAINST US**

The words "one year" in the fifth line are changed to read "four years".

BORROWER COPY (1)

00043G.05

## Loan Agreement

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

LENDER:

TRANSOUTH FINANCIAL CORPORATION

8604 2623 MONTGOMERY HWE ST E DOTHAN          ALABAMA

| BRANCH CODE, STREET ADDRESS, CITY AND STATE | | | | | | | |
|---|---|---|---|---|---|---|---|
| ACCOUNT NUMBER | DUE | LOAN DATE | | LAST PAYMENT DATE | BROKER FEE PAID BY BORROWER (1) | | |
| 0301646  01 | | 12/18/98 | | 01/01/04 | $.00 | | FINANCE CHARGE |
| BORROWER | | FEES 509.15 | SURCHARGE (2) 120.00 | LOAN FEE (3) 375.29 | INTEREST (4) 3433.76 | (1)+(2)+(3)+(4)+(5) 3929.05 | |
| KINSEY,C H | | CREDIT LIFE INS. PREM. 505.93 | CREDIT A&H INS. PREM. $.00 | | | AMOUNT FINANCED (6) 7505.93 | |
| RT 2 BOX 284 | | | | | | | |
| HEADLAND | | R.H $.00 | | PRINCIPAL BALANCE (1)+(2)+(3)+(6) 8001.22 | | TOTAL OF PAYMENTS (5)+(6) 11434.98 | |
| AL 36345 | | | | | | | |
| PAYMENT SCHEDULE – PAYMENTS ARE PAYABLE MONTHLY | | | | | | 1ST PAYMENT DATE | |
| 60  PAYMENTS  1  AT $ 216.72 | | FOLLOWED BY 59 AT $ 190.14 | | FOLLOWED BY 000 AT $ $.00 | | 02/01/99 | |
| CO-BORROWER (SPOUSE) | | CO-BORROWER (NON-SPOUSE) | | | | | |
| KINSEY,JANIE L | | | | | | | |

☒ AGREED RATE OF INTEREST:  14.95  % per year on the unpaid principal balance.

☐ AGREED RATE OF INTEREST: THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____%, which is the published rate as of the last business day of _____ ; therefore, the initial interest rate is _____% per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____% per year nor more than _____% per year. The interest rate will not change before the First Payment Date.

Adjustments in the Agreed Rate of Interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter so that the total amount due under this Loan Agreement will be paid by the last payment date. TranSouth waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

REPAYMENT
I promise to pay you at your office, the principal balance together with interest figured at the Agreed Rate of Interest checked above until fully paid.

I will pay principal and interest by making payments each month. I will make my payments as set forth in the Payment Schedule. Payments will be made every month beginning on the first payment date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the maturity date, I will pay these amounts in full on that date.

I agree to pay interest after maturity at the Agreed Rate of Interest.

LATE CHARGES
If any payment is past due 10 days or more, I agree to pay you a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

BAD CHECK CHARGE
If any check I give as payment of this indebtedness is returned unpaid by a bank or other organization, I will pay a charge of $25.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

PREPAYMENT
I have the right to make prepayments of principal at any time. When I make a prepayment, I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no portion of the loan fee will be rebated. No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be refunded on a daily pro rata basis; however, you may retain an amount of no less than $25.00.

SECURITY
I give you a Real Estate Mortgage dated the same as this loan agreement to assure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

ARBITRATION
The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS
WHICH BORROWER AGREES TO, WHICH CONSTITUTE A PART OF THIS NOTE.

The Alternative Mortgage Transaction Parity Act of 1982 governs certain provisions of this loan.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ
THE CONTRACT BEFORE YOU SIGN IT.

_____
(AGENT FOR LENDER)

_____
(BORROWER)

_____
(BORROWER)

| | |
|---|---|
| ORIGINAL (1) | |
| ✓ BORROWER COPY (1) | |
| CO-BORROWER COPY (1) | |

667092 REV. 8-98

01744A.11

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract or business arrangement.

### NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## STATEMENT OF ADDITIONAL PROVISIONS

**DEFAULT**

I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Real Estate Mortgage on the real estate given as security for this loan.

If I default, you have the right to declare the unpaid amount of my loan immediately due and payable without giving me notice or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Real Estate Mortgage that secures this loan and to require me to pay any deficiency.

**DELAY IN ENFORCEMENT**

You can delay enforcing your rights under this loan agreement without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

**ATTORNEY FEES**

If the amount I borrow is over $300, I agree to pay reasonable attorney's fees if this loan agreement is referred for collection to an attorney who is not your salaried employee. Fees will not be in excess of 15% of the unpaid debt.

667092                                                                                            01744B.03

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

### ARBITRATION AGREEMENT

| BORROWER (Called "you" or "your")<br>KINSEY,C H<br>KINSEY,JANIE L<br>RT 2 BOX 284<br>HEADLAND          AL    36345 | LENDER (Called "we" or "us")<br>TRANSOUTH FINANCIAL CORPORATION<br><br>2623 MONTGOMERY HWE ST E<br>DOTHAN               AL  36303-2600 |
|---|---|
| Date of Loan    12/18/98 | Account Number    0301646 |

In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

**DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

**ARBITRATION RULES:** The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.

**STARTING ARBITRATION:** Either you or we can start arbitration any time a dispute arises between you and us. To start arbitration, you or we must do the following things:

1. Complete a Demand For Arbitration (a copy is attached to this agreement)
2. Send three copies of the completed Demand For Arbitration and three copies of  this agreement, along with $125 filing fee, to:
   American Arbitration Association
   13455 Noel Road
   Two Galleria Tower, Suite 1750
   Dallas, TX 75240-6636
3. Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.

**COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and

**SELECTION OF ARBITRATION:** The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.

**LOCATION OF ARBITRATION:** The arbitration will take place in the county where you live unless you and we both agree to another location.

**ENFORCEMENT OF ARBITRATION DECISION:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**OTHER IMPORTANT AGREEMENTS:**

1. This agreement does not affect the applicability of any statute of limitations.
2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

You and we have entered into this agreement as of the "Date of Loan" written above.

Borrower
KINSEY,C H

Lender
TRANSOUTH FINANCIAL CORPORATION

By: _____

Borrower
KINSEY,JANIE L

You acknowledge that you have received a completed copy of this agreement together with a copy of the Commercial Arbitration Rules and one Demand for Arbitration form.

Initials          Initials

612954                                                              02465B.04

## GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

TRANSOUTH FINANCIAL CORPORATION

Lender: _____

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | | |
|---|---|---|---|
| 801 | Loan Origination Fee | $ | XXXXNAXXXX |
| 802 | Loan Discount (Points) | $ | 375.29 |
| 803 | Appraisal Fee | $ | 285.00 |
| 804 | Credit Report Fee | $ | -0- |
| 808 | Broker Fee paid by borrower out of loan proceeds | $ | -0- |
| 809 | Credit Investigation Fee | $ | XXXXNAXXXX |
| 810 | Escrow Fee | $ | XXXXNAXXXX |
| 811 | Document Preparation Fee paid to Lender | $ | XXXXNAXXXX |
| 812 | Real Estate Taxes | $ | -0- |
| 813 | Broker Fee paid by Lender outside of closing | $ | -0-     (p.o.c.) |
| 814 | Surcharge | $ | 120.00 |
| 815 | N/A | $ | XXXXNAXXXX |
| 910 | Non-filing insurance | $ | -0- |
| 1106 | Notary Fees | $ | XXXXNAXXXX |
| 1107 | Attorney fees (including fees for document preparation and title work) | $ | 100.00 (P.O.C.) |
| 1108 | Title Company (including fees for title insurance, title examination, document preparation or other fee. | $ | 200.00 |
| 1111 | Lender's Security Insurance (MSIP) | $ | XXXXNAXXXX |
| 1201 | Recording and Filing Fees | $ | 24.15 |
| 1202 | City/County/Tax/Stamps | $ | XXXXNAXXXX |
| 1203 | State Tax Stamps | $ | XXXXNAXXXX |
| 1301 | Survey | $ | -0- |
| 1302 | Pest Inspection Fee | $ | -0- |
| 1305 | _____ | $ | -0- |
| 1306 | _____ | $ | -0- |

The estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

Lender: __TRANSOUTH FINANCIAL CORPORATION 2623 MONTGOMERY HIGHWAY SUITE E  DOTHAN, AL  36303__

By: _____     Date: _____12/18/98_____

Delivery of the above Good Faith Estimate of Settlement Costs, Required Providers Information Sheet, and, if applicable, the booklet(s) entitled, "Buying Your Home," "Consumer Handbook on ARMS," and "When Your Home Is On The Line," is hereby acknowledged.

Applicant _____
　　　　　　　Print

_____
　　　　　　　Signature

Co-Applicant _____
　　　　　　　Print

_____
　　　　　　　Signature

667579 REV. 4-98 (Alabama)

| | |
|---|---|
| | ORIGINAL (1) |
| | APPLICANT COPY (1) |
| ✓ | CO-APPLICANT COPY (1) |
| | BRANCH COPY (1) |

03205A.01

READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.

### ARBITRATION AGREEMENT

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY, JANIE L | ASSOCIATES FINANCIAL SERVICES COMPANY OF ALABAMA, INC. |
| | 2407 MONTGOMERY HWY |
| RR 2 BOX 284 | DOTHAN          AL  36303 |
| HEADLAND        AL    36345-9444 | |
| Date of Loan     11/07/00 | Account Number       0245145 |

In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

**DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

**ARBITRATION RULES:** The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern.

**STARTING ARBITRATION:** Either you or we can start arbitration any time a dispute arises between you and us. To start arbitration, you or we must do the following things:

1.    Complete a Demand For Arbitration (a copy is attached to this agreement)
2.    Send three copies of the completed Demand For Arbitration and three copies of this
      agreement, along with $125 filing fee, to:
              American Arbitration Association
              13455 Noel Road
              Two Galleria Tower, Suite 1750
              Dallas, TX 75240-6636
3.    Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we
      send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.

**COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expense of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.

**SELECTION OF ARBITRATION:** The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.

**LOCATION OF ARBITRATION:** The arbitration will take place in the county where you live unless you and we both agree to another location.

**ENFORCEMENT OF ARBITRATION DECISION:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**OTHER IMPORTANT AGREEMENTS:**

1. This agreement does not affect the applicability of any statute of limitations.
2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.
8. For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules, contact the American Arbitration Association at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

You and we have entered into this agreement as of the "Date of Loan" written above.

Borrower
KINSEY,JANIE L

Lender
ASSOCIATES FINANCIAL SERVICES COMPANY
OF ALABAMA, INC.

_____
(Signature)

By:_____

Borrower

_____
(Signature)

Borrower

_____
(Signature)

You acknowledge that you have received a completed copy of this agreement and one Demand for Arbitration form.

_____        _____
Initials          Initials

612954                                                                                                        02465B.05

Fair Credit Reporting Act Notice to Applicant

Lender is affiliated with other Associates companies ("Affiliates"). In order for you to learn about the credit or other offerings of our Affiliates you authorize and instruct us to provide to our Affiliates any credit information about you that you have provided on the application for credit or information that we obtained from any credit reporting agency or third party. If you do not want to authorize and instruct us to provide any credit information to our Affiliates, you may advise us by writing to our office. For your request to be effective, you must include your name, address, telephone number and social security number in any correspondence to us. Upon receipt of your request we will promptly cease any distribution of your credit information.

*Associates Financial Services*

(Lender Corporate Name)

616202 Rev. 9/99

| ORIGINAL (1) |
| BRANCH COPY (1) |

03119.02

# Loan Agreement

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

LENDER:
TRANSOUTH FINANCIAL CORPORATION
8604 2623 MONTGOMERY HWE ST E DOTHAN          ALABAMA

| BRANCH CODE, STREET ADDRESS, CITY AND STATE | | | | | | |
|---|---|---|---|---|---|---|
| ACCOUNT NUMBER | DUE | LOAN DATE | LAST PAYMENT DATE | BROKER FEE PAID BY BORROWER (I) | | FINANCE CHARGE |
| 0301646 | 01 | 12/18/98 | 01/01/04 | $.00 | | |
| | | | FEES | SURCHARGE (2) | LOAN FEE (3) | INTEREST (4) | (1)+(2)+(3)+(4)=(5) |
| BORROWER | | | 509.15 | 120.00 | 375.29 | 3433.76 | 3929.05 |
| KINSEY,C H | | | CREDIT LIFE INS. PREM | CREDIT A&H INS. PREM | | | AMOUNT FINANCED (N) |
| RT 2 BOX 284 | | | 505.93 | $.00 | | | 7505.93 |
| HEADLAND | | | KB | | PRINCIPAL BALANCE (1)+(2)+(N)+(H) | | TOTAL OF PAYMENTS (5)+(N) |
| AL 36345 | | | $.00 | | 8001.22 | | 11434.98 |
| PAYMENT SCHEDULE - PAYMENTS ARE PAYABLE MONTHLY | | | | | | | 1ST PAYMENT DATE |
| 60 PAYMENTS 1 AT $ 216.72 FOLLOWED BY 59 AT $ 190.14 FOLLOWED BY 000 AT $ $.00 | | | | | | | 02/01/99 |
| CO-BORROWER (SPOUSE) | | | CO-BORROWER (NON-SPOUSE) | | | | |
| KINSEY,JANIE L | | | | | | | |

☒ AGREED RATE OF INTEREST: __14.95__ % per year on the unpaid principal balance.

☐ AGREED RATE OF INTEREST: THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____ %, which is the published rate as of the last business day of _____ ; therefore, the initial interest rate is _____ % per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____ % per year nor more than _____ % per year. The interest rate will not change before the First Payment Date.

Adjustments in the Agreed Rate of Interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter so that the total amount due under this Loan Agreement will be paid by the last payment date. TranSouth waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

REPAYMENT     I promise to pay you at your office, the principal balance together with interest figured at the Agreed Rate of Interest checked above until fully paid.

I will pay principal and interest by making payments each month. I will make my payments as set forth in the Payment Schedule. Payments will be made every month beginning on the first payment date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the maturity date, I will pay these amounts in full on that date.

I agree to pay interest after maturity at the Agreed Rate of Interest.

LATE CHARGES     If any payment is past due 10 days or more, I agree to pay you a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

BAD CHECK CHARGE     If any check I give as payment of this indebtedness is returned unpaid by a bank or other organization, I will pay a charge of $25.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

PREPAYMENT     I have the right to make prepayments of principal at any time. When I make a prepayment, I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no portion of the loan fee will be rebated. No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be refunded on a daily pro rata basis; however, you may retain an amount of no less than $25.00.

SECURITY     I give you a Real Estate Mortgage dated the same as this loan agreement to assure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

ARBITRATION     The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS WHICH BORROWER AGREES TO, WHICH CONSTITUTE A PART OF THIS NOTE.

The Alternative Mortgage Transaction Parity Act of 1982 governs certain provisions of this loan.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_____
(AGENT FOR LENDER)

_____
(BORROWER)

_____
(BORROWER)

| ORIGINAL (1) | |
|---|---|
| BORROWER COPY (1) | |
| CO-BORROWER COPY (1) | ✓ |

667092 REV. 8-98

01744A.11

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract or business arrangement.

**NOTICE**
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## STATEMENT OF ADDITIONAL PROVISIONS

**·DEFAULT**

I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Real Estate Mortgage on the real estate given as security for this loan.

If I default, you have the right to declare the unpaid amount of my loan immediately due and payable without giving me notice or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Real Estate Mortgage that secures this loan and to require me to pay any deficiency.

**DELAY IN ENFORCEMENT**

You can delay enforcing your rights under this loan agreement without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

**ATTORNEY FEES**

If the amount I borrow is over $300, I agree to pay reasonable attorney's fees if this loan agreement is referred for collection to an attorney who is not your salaried employee. Fees will not be in excess of 15% of the unpaid debt.

01744B.03



**ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY**
A Tennessee Stock Insurance Company, herein called the Company

Admin Office: P.O.Box 223727, Dallas, Texas 75222-3727
Home Office: 25 Century Blvd. Ste. 600, Nashville, TN 37214

### INSURANCE SCHEDULE

| CREDITOR BENEFICIARY | ACCOUNT NUMBER | GROUP POLICY NUMBER | | GC4895-S |
|---|---|---|---|---|
| TRANSOUTH FINANCIAL CORP.<br>2623 MONTGOMERY HWE ST E<br>DOTHAN        AL 363041081 | 0301646 | ORIGINAL AMOUNT OF<br>DECREASING LIFE INSURANCE | $ | *****8,001.22* |
| | | AMOUNT OF LEVEL<br>LIFE INSURANCE | $ | NONE |
| SECOND BENEFICIARY | | Monthly Disability Indemnity<br>(Borrower Only) | $ | NONE |

| BORROWER (called you)<br>ADDRESS     C H KINSEY<br>RT 2 BOX 284<br>HEADLAND     AL 36345 | AGE<br>48 | INSURANCE PREMIUM CHARGE | | |
|---|---|---|---|---|
| CO-BORROWER<br>JANIE L | AGE<br>41 | Single Decreasing<br>Life Premium | $ | N/A |
| | | Joint Decreasing<br>Life Premium | $ | ****505.93* |
| Effective Date of Insurance        12/23/98 | | Single Level<br>Life Premium | $ | N/A |
| TERM OF DECREASING LIFE INSURANCE | 60      mos | Joint Level<br>Life Premium | $ | N/A |
| TERM OF LEVEL LIFE INSURANCE | N/A    mos | DISABILITY INSURANCE<br>PREMIUM | $ | N/A |
| TERM OF DISABILITY INSURANCE | N/A    mos | Waiting Period | | 7 Days |
| Maximum Amount of Life Insurance | $ 100,000.00 | Elimination Period | | NONE Days |
| Maximum Disability Benefit | $ 27,000.00 | TOTAL CREDIT LIFE<br>AND DISABILITY<br>INSURANCE PREMIUM | $ | *******505.93* |
| Maximum Monthly Disability Indemnity | $ 750.00 | | | |

The only insurance effective under this Certificate is that for which a premium is paid.

**NOTE -**  **THE INSURANCE PROVIDED HEREUNDER MAY NOT COMPLETELY PAY OFF YOUR LOAN.**
**MAXIMUM TERM OF LIFE INSURANCE 120 MONTHS (10 YEARS)**
**MAXIMUM TERM OF DISABILITY INSURANCE 36 MONTHS (3 YEARS)**

**WHAT YOU GET**
We certify that if we have been paid the premium shown in the schedule, you are insured for the coverage shown in the schedule, subject to the terms of the group policy issued to the creditor.

**WHO GETS PAID**
Claim payments are made to the creditor beneficiary named in the schedule to pay off or reduce your debt. If claim payments are more than the balance on your debt, the difference will be paid to you or to the second beneficiary named in the schedule, if any, or to your estate.

**WHAT WE WILL PAY**
**Single Life Insurance Benefit.** If you die while insured for single life insurance coverage, we will pay the amount of insurance in force at the time of your death after we receive proof of your death.

**Joint Life Insurance Benefit.** If you or your co-borrower die while insured for joint life coverage, we will pay the amount of insurance in force at the time you or your co-borrower dies after we receive proof of death. Only one death benefit is payable under this certificate.

**Amount of Life Insurance.** The amount of life insurance during the first month of coverage is the original amount of life insurance shown in the schedule. Thereafter, the amount of life insurance is the unpaid principal balance due on the loan on the date of the insured borrower's death  unless the original loan balance exceeds the maximum amount of life insurance shown in the schedule.  If the original loan exceeds this maximum, the life insurance benefit will not completely pay off your loan.  We'll determine the amount of life insurance in two steps.  First we'll divide the maximum amount of life insurance by the original principal balance to obtain a ratio.  Then we'll multiply this ratio by the unpaid principal balance on the date of death.  The result will be the amount of life insurance benefit we'll pay.

**Amount of Level Life Insurance.** The amount of level life insurance remains as the amount of level life insurance shown in the schedule until the end of the term of level life insurance shown in the schedule.

**Total Disability Insurance Benefit.** If you are insured for total disability insurance, we will pay a benefit if you file written proof that you became totally disabled while insured and continued to be totally disabled for more than the waiting period shown in the schedule.  Payment will be calculated from the first day of disability following the elimination period shown in the schedule. The benefit will be equal to 1/30th of your monthly disability indemnity in  the  chedule for each day of disability to be compensated.  Payments will stop when you are not totally disabled anymore or when benefits are paid to the end of the term of disability insurance shown in the Schedule, whichever comes first.  The maximum monthly benefit is limited to the maximum monthly disability benefit shown in the schedule.

**WITHIN 10 DAYS FROM THE DATE THE INDEBTEDNESS IS INCURRED, THE BORROWER SHALL BE PERMITTED TO RETURN THE CERTIFICATE OF INSURANCE TO THE CREDITOR AND TO RECEIVE A REFUND OF ANY PREMIUM PAID FOR THE INSURANCE IF NOT SATISFIED WITH THE INSURANCE FOR ANY REASON.**

44-4895 Rev. 11/96

| ORIGINAL (1) |
|---|
| ✓ BORROWER COPY (1) |

674249 Rev. 6-97

00345A.04

CitiFinancial
300 Saint Paul Pl, BSP13A
Baltimore, MD  21202-2120

(410) 332-3900

C. H. Kinsey                                          September 29, 2003
Janie L. Kinsey                                      Ref # 010039CC012110
RR 2 Box 284                                                      DCEASC
Headland, AL  36345

Thank you for your interest in a CitiFinancial Personal Loan for $2,000.00.  For
well over half a century, we've built a reputation for working very hard to find
ways to get our applicants money when they need it.  We are disappointed that we
cannot approve your application at this time.

We are required by law to provide you with the following information:

*CitiFinancial considers a number of factors in making credit decisions.  We use a scoring
system based on an analysis of credit-related characteristics of our applicants and our
customers.  For real estate loans, additional factors, such as the equity in your home, also
are considered.  Our review process may also include information obtained from a credit
reporting agency.  This agency was not involved in our decision on your application and
cannot provide you with the specific reasons for our decision.*

*If you would like a statement of the specific reasons why your original request was denied,
please contact us at our customer service department within 60 days of this letter's date.
We will provide you with a statement of reasons within 30 days of our receipt of your
request.  Please include the reference number and the date of this letter on all
communications.*

*Under the Fair Credit Reporting Act, you have the right to make a written request to any
credit reporting agency listed below within 60 days of the receipt of this notice to obtain
a free copy of your report:*

*Equifax Credit Services*
*1150 Lake Heard Drive#460*
*PO Box 740241*
*Atlanta, GA 30374*
*1-800-685-1111*

*You also have the right under the Fair Credit Reporting Act to dispute with a credit
reporting agency the accuracy or completeness of any information in any consumer report
furnished by the credit reporting agency.*

Every year CitiFinancial puts millions of dollars in the hands of people all around
the country to help fulfill their dreams.  Should your circumstances change in the
future, we would welcome the opportunity to explore the ways we could help you
fulfill yours.

                                        Sincerely,
                                        CitiFinancial

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the
basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the
capacity to enter into a binding contract); because all or part of the applicant's income derives from any public
assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit
Protection Act.  The Federal agency that administers compliance with this law concerning this creditor is the
Federal Trade Commission, Equal Credit Opportunity, Washington, D. C.  20580.



NOTICE TO MASSACHUSETTS RESIDENTS

You have the right to obtain a free copy of your credit report within sixty days from the consumer credit reporting agency which has been identified on this notice. The consumer credit reporting agency must provide someone to help you interpret the information on your credit report.  Each calendar year you are entitled to receive, upon request, one free consumer report.

You have the right to dispute inaccurate information by contacting the consumer credit reporting agency directly.  If you have notified a consumer credit reporting agency in writing that you dispute the accuracy of information in your file, the agency must then, within thirty business days, reinvestigate and modify or remove inaccurate information. The consumer credit reporting agency may not charge a fee for this service.

If reinvestigation does not resolve the dispute to your satisfaction, you may send a statement to the consumer credit reporting agency, to be kept in your file, explaining why you think the record is inaccurate.  The consumer credit reporting agency must include your statement about the disputed information in a report it issues about you.