# DISCLOSURE STATEMENT, NOTE, AND SECURITY AGREEMENT

ALABAMA
PERSONAL LOAN
SECURED
I.B.

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY,JANIE L | ASSOCIATES FINANCIAL SERVICES COMPANY OF ALABAMA, INC. |
| RR 2 BOX 284 | 2407 MONTGOMERY HWY |
| HEADLAND    AL   36345-9444 | DOTHAN                AL      36303 |

CO-BORROWER:

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| 11/07/00 | 0245145 |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 31.38  % | $      308.27 | $     1105.62 | $      1413.89 |

| PAYMENT SCHEDULE - Payments are payable monthly | 1st Payment Date 12/20/00 |
|---|---|
| 18 Payments    1  at $      87.89  followed by  17 at $     78.00  followed by  000 at $ | $.00 |

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty.  You may be entitled to a rebate of part of the surcharge.

SECURITY:  You are giving a security interest in your property as checked in the following box(es):
- [X] Certain household items
- [ ] Motor Vehicle
- [ ] You are giving a security interest in the goods or property being purchased.
- [ ] Other_____

See below and on reverse side for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, prepayment refunds and security interests.

IF THE AMOUNT OF THIS NOTE INCLUDES A DEBT YOU CURRENTLY OWE TO ASSOCIATES, YOU ARE REFINANCING THE DEBT, WHICH MAY RESULT IN LOWER MONTHLY PAYMENTS BUT MAY ALSO COST YOU MORE IN TOTAL PAYMENTS.

The Principal Balance is the Amount Financed stated above plus the surcharge shown on the reverse side.

AGREED RATE OF INTEREST: _____ 23.70  % per year on the unpaid principal balance.

REPAYMENT:  Borrower(s) promises to pay to the above named Lender the Principal Balance, together with interest thereon at the Agreed Rate of Interest stated above in consecutive monthly payments beginning on the first payment date stated above and continuing on the same day of each month until the last payment date stated above.  If there is no such date in any month that follows, the payment shall be made on the last day of that month.  Borrower(s) understands that Borrower(s) will be paying interest on the unpaid balance each day the loan is outstanding, and if Borrower(s) does not deliver the monthly payment on or before its scheduled monthly due date, Borrower(s) may pay more than if each monthly payment had been made on time.  Each payment shall be applied first to interest to date of actual payment and remainder to principal.   If there is an unpaid balance on this loan at the maturity date as originally scheduled, interest after maturity will be at the highest lawful contract rate until fully paid.  Borrower(s) may pay this loan in whole or in part prior to its maturity.  No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be rebated on a daily pro rata basis; however, Lender may retain an amount of no less than $25.00.

LATE CHARGES: If any payment is past due 10 days or more, Borrower(s) agrees to pay a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

ACCELERATION: If any payment is not paid when due or if Borrower(s) fails to comply with any of the terms of this loan transaction, the unpaid balance of this indebtedness may at the option of the Lender become due and payable without demand or notice and if this occurs, the Borrower(s) shall be allowed a refund credit of unearned finance charge computed as set forth in the "Prepayment In Full Rebate" section.

BAD CHECK CHARGE:  If any check given as payment of this indebtedness is returned unpaid by a bank or other organization, Borrower(s) shall pay a charge of $27.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

ARBITRATION: The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS WHICH
BORROWER AGREES TO, WHICH CONSTITUTES A PART OF THIS NOTE AND SECURITY AGREEMENT.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY
READ THE CONTRACT BEFORE YOU SIGN IT.

_____    _____    _____
(WITNESS)                   (BORROWER)                  (BORROWER)

The undersigned is not personally liable for this loan but grants a security
interest in the property described above as security for this loan.

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |
| CO-BORROWER COPY (1) |
| EXAMINER COPY (1) |

657701 Rev. 4-00

02573A.07

BORROWER NAME AND ADDRESS: KINSEY, JANIE L.

RR 2 BOX 284            HEADLAND       AL  36345-9444

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract, or business arrangement.

**NOTICE**
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PRO-CEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## STATEMENT OF ADDITIONAL PROVISIONS

ATTORNEY FEES:  If the amount borrowed is over $300, Borrower(s) agrees to pay reasonable attorney's fees should this loan agreement be referred for collection to an attorney who is not a salaried employee of the Lender.  Fees will not be in excess of 15% of the unpaid debt.

SECURITY FOR THIS LOAN:  Borrower(s) hereby grant to Lender a security interest in property described below.  This security interest is subject to the provisions in the sections concerning Insurance and Repossession below.

[ ] Motor Vehicle  See Attached Collateral Identification Schedule

[ ] Other (such as Boat, Recreational Vehicle, Mobile Home, etc.) See Attached Collateral Identification Schedule

[X] Certain Household Goods  See Attached Schedule "A"

INSURANCE:  The Borrower(s) will provide insurance against loss of or damage to the property as the Lender may reasonably require if the amount financed, less any charges for insurance, is $300 or more and the value of the property is $300 or more.

REPOSSESSION: If Borrower(s) defaults in payment of this loan or fails to comply with any of the terms of this agreement, the Lender shall have all the rights granted to a secured party under the Uniform Commercial Code including, but not limited to, the right to repossess, sell and hold the Borrower(s) to a deficiency.  If there is a surplus as a result of the sale, it will be paid to the Borrower(s).

ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C) $ _____ 1105.62 _____

A.  AMOUNT GIVEN TO YOU DIRECTLY: $ _____ 1012.71 _____  B.  AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____ $.00 _____
    Check No. _____ 087789 _____ $ _____ 1012.71 _____

C.  AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | |
|---|---|---|
| _____ $ _____ $.00 | To Insurance Co. for Credit Life &/or Accident | |
| _____ $ _____ $.00 | & Health . . . . . . . . . . . . . . . . . . . . . . . . $ | _____ 70.61 |
| _____ $ _____ $.00 | To Insurance Co. for Personal Property | |
| _____ $ _____ $.00 | Insurance . . . . . . . . . . . . . . . . . . $ | _____ 22.30 |
| _____ $ _____ $.00 | To Public Officials . . . . . . . . . . . . . . . . . . $ | _____ $.00 |
| _____ $ _____ $.00 | To Insurance Co. for Non-Filing Insurance . . . . $ | _____ $.00 |
| _____ $ _____ $.00 | To Insurance Co. for Involuntary Unemployment | |
| _____ $ _____ $.00 | Insurance . . . . . . . . . . . . . . . . . . . . . . . $ | _____ $.00 |
| _____ $ _____ $.00 | To Insurance Co. for Limited Physical Damage | |
| _____ $ _____ $.00 | or Vendors Single Interest Insurance . . . . . $ | _____ $.00 |

D.  PREPAID FINANCE CHARGE (not part of "Amount Financed"):
    Surcharge . . . . . . . . . . . . . $ _____ 66.34 _____

    TOTAL PREPAID FINANCE CHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 66.34 _____

INSURANCE:
Credit Insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from the insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | Term of loan | $ 14.45 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | Term of loan | $ $.00 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | First _018_ months of loan | $ 56.16 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | First _____ months of loan | $ $.00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION: If you desire to do so you may, without penalty or obligation, within fifteen days from the date set forth above, cancel, all but not part of, the credit insurance coverages by returning all credit insurance certificates received in connection with the loan to the office where the loan was made.  Upon cancellation, a full cash refund of all credit insurance premiums will be made.

Property insurance may be obtained from anyone you choose or you may provide us with evidence of existing insurance.  Insurance provided by us may be from an affiliated company which expects to profit from the insurance, **and the insurance does not include liability coverage for bodily injury and property damage covered by others.** If you get the insurance from us, the cost will be:

Limited Physical Damage or,
    Vendors Single Interest Insurance .. Premium $ _____ $.00 Term _____ months  Stated Amount $ _____ $.00

Personal Property Insurance . . . . . . . . Premium $ _____ 22.30 Term _____ 18 months  Stated Amount $ _____ 1000.00

## DISCLOSURE STATEMENT

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

| BORROWER (Called "you" or "your")                                                      | LENDER (Called "we" or "us")                                                                                 |
|----------------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------|
| KINSEY, C H<br>KINSEY, JANIE L<br>RT 2 BOX 284<br>HEADLAND        AL    36345          | TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN            AL    36303-2600             |
| CO-BORROWER:                                                                           |                                                                                                              |

| DATE OF LOAN | ACCOUNT NUMBER |
|--------------|----------------|
| 12/18/98     | 0301646        |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.84 % | $    3929.05 | $    7505.93 | $    11434.98 |

| PAYMENT SCHEDULE - Payments are payable monthly | 1st Payment Date<br>02/01/99 |
|---|---|

60   Payments   1   at $       216.72  followed by  59  at $        190.14 followed by  000 at $   $.00

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty. You may be entitled to a rebate of part of the surcharge. You will not be entitled to a rebate of the loan fee.

SECURITY:  [X]  You are giving a security interest in your real estate located at: _____
            RT 2 BOX 284            HEADLAND        AL
        [ ]  You are giving a security interest in the real estate being purchased and which is located at: _____

ASSUMPTION: If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, security interests and prepayment refunds.

[ ] This is a variable interest rate loan.    _____        _____
                                                    BORROWER                            BORROWER

[X] This is a fixed interest rate loan.       _____        _____
                                                    BORROWER                            BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from this insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | _____ months, beginning on the Effective Date of Insurance | $      $.00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | _060_ months, beginning on the Effective Date of Insurance | $    505.93 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | _____ months, beginning on the Effective Date of Insurance | $      $.00 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | _____ months, beginning on the Effective Date of Insurance | $      $.00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION: You may cancel all, but not part of, the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made. The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account. Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

_____        _____
            WITNESS                                    BORROWER

                                         _____
                                                    BORROWER

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |
| ✓ CO-BORROWER COPY (1) |
| EXAMINER COPY (1) |

667092  REV. 8-98                                                                                01745A.11

ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C)  $ _____ 7505.93 _____

A.  AMOUNT GIVEN TO YOU DIRECTLY: $ _____ 4689.85 _____  B.  AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____ $.00 _____
      Check No. _____ 011935 _____ $ _____ 4689.85 _____

C.  AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | To Insurance Co. for Credit Life . . . . . . . . . . . . . $ _____ 505.93 |
|---|---|---|
| AND MERCURY FINANCE  011933 | $ _____ 1098.00 | To Insurance Co. for Credit Accident & Health  $ _____ $.00 |
| AND MONEYTREE  011934 | $ _____ 703.00 | To Insurance Co. for Involuntary |
| _____ | $ _____ $.00 | Unemployment Insurance. . . . . . . . . . . . . . . $ _____ -$.00 |
| _____ | $ _____ $.00 | To Public Officials . . . . . . . . . . . . . . . . . . . . . $ _____ 24.15 |
| _____ | $ _____ $.00 | Fees for Real Estate Transaction: |
| _____ | $ _____ $.00 | To Appraiser . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 285.00 |
| _____ | $ _____ $.00 | To _____ |
| _____ | $ _____ $.00 |     for Abstract . . . . . . . . . . . . . . . . . . . . . . . $ _____ $.00 |
| _____ | $ _____ $.00 | To Insurance Co. for Title Insurance. . . . . . . . . $ _____ 50.00 |
| _____ | $ _____ $.00 | To _____ |
| _____ | $ _____ $.00 |     for Title Examination . . . . . . . . . . . . . . . . . $ _____ $.00 |
| _____ | $ _____ $.00 | To _____ |
| _____ | $ _____ $.00 |     for Credit Report . . . . . . . . . . . . . . . . . . . . $ _____ $.00 |
| _____ | $ _____ $.00 | |
| _____ | $ _____ $.00 | TO NATIONAL REAL ESTATE |
| _____ | $ _____ $.00 | FOR TITLE SEARCH              150.00 |
| _____ | $ _____ $.00 | |
| _____ | $ _____ $.00 | |
| _____ | $ _____ $.00 | |

D.  PREPAID FINANCE CHARGE (not part of "Amount Financed"):

      Broker Fee Paid by Borrower . . . . . . . . . . . . . . . . . . . . . . . $ _____ $.00 (1)
      Surcharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 120.00 (2)
      Loan Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 375.29 (3)
          TOTAL PREPAID FINANCE CHARGE. . . . . . . . . . . . . . . $ _____ 495.29 (1)+(2)+(3)

01745B.04

PERSONAL LOAN
SECURED
I.B.

# DISCLOSURE STATEMENT, NOTE, AND SECURITY AGREEMENT

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY, JANIE L | ASSOCIATES FINANCIAL SERVICES COMPANY |
| | OF ALABAMA, INC. |
| RR 2 BOX 284 | 2407 MONTGOMERY HWY |
| HEADLAND        AL    36345-9444 | DOTHAN        AL        36303 |
| CO-BORROWER: | |

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| 11/07/00 | 0245145 |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 31.38 % | $ 308.27 | $    1105.62 | $    1413.89 |

| PAYMENT SCHEDULE - Payments are payable monthly | | | 1st Payment Date 12/20/00 |
|---|---|---|---|
| 18 Payments    1 at $    87.89 followed by    17 at $    78.00 followed by    000 at $ | | | $ .00 |

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty.  You may be entitled to a rebate of part of the surcharge.

SECURITY:  You are giving a security interest in your property as checked in the following box(es):
- [X] Certain household items
- [ ] Motor Vehicle
- [ ] You are giving a security interest in the goods or property being purchased.
- [ ] Other_____

See below and on reverse side for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, prepayment refunds and security interests.

IF THE AMOUNT OF THIS NOTE INCLUDES A DEBT YOU CURRENTLY OWE TO ASSOCIATES, YOU ARE REFINANCING THE DEBT, WHICH MAY RESULT IN LOWER MONTHLY PAYMENTS BUT MAY ALSO COST YOU MORE IN TOTAL PAYMENTS.

The Principal Balance is the Amount Financed stated above plus the surcharge shown on the reverse side.

AGREED RATE OF INTEREST: _____ 23.70 ___ % per year on the unpaid principal balance.

REPAYMENT:  Borrower(s) promises to pay to the above named Lender the Principal Balance, together with interest thereon at the Agreed Rate of Interest stated above in consecutive monthly payments beginning on the first payment date stated above and continuing on the same day of each month until the last payment date stated above.  If there is no such date in any month that follows, the payment shall be made on the last day of that month.  Borrower(s) understands that Borrower(s) will be paying interest on the unpaid balance each day the loan is outstanding, and if Borrower(s) does not deliver the monthly payment on or before its scheduled monthly due date, Borrower(s) may pay more than if each monthly payment had been made on time.  Each payment shall be applied first to interest to date of actual payment and remainder to principal.  If there is an unpaid balance on this loan at the maturity date as originally scheduled, interest after maturity will be at the highest lawful contract rate until fully paid.  Borrower(s) may pay this loan in whole or in part prior to its maturity.  No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be rebated on a daily pro rata basis; however, Lender may retain an amount of no less than $25.00.

LATE CHARGES: If any payment is past due 10 days or more, Borrower(s) agrees to pay a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

ACCELERATION:  If any payment is not paid when due or if Borrower(s) fails to comply with any of the terms of this loan transaction, the unpaid balance of this indebtedness may at the option of the Lender become due and payable without demand or notice and if this occurs, the Borrower(s) shall be allowed a refund credit of unearned finance charge computed as set forth in the "Prepayment In Full Rebate" section.

BAD CHECK CHARGE:  If any check given as payment of this indebtedness is returned unpaid by a bank or other organization, Borrower(s) shall pay a charge of $27.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

ARBITRATION: The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE:  SEE OTHER SIDE FOR ADDITIONAL PROVISIONS WHICH BORROWER AGREES TO, WHICH CONSTITUTES A PART OF THIS NOTE AND SECURITY AGREEMENT.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_____        _____        _____
(WITNESS)                              (BORROWER)                              (BORROWER)

The undersigned is not personally liable for this loan but grants a security interest in the property described above as security for this loan.

_____

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |
| CO-BORROWER COPY (1) |
| EXAMINER COPY (1) |

667761 Rev. 4-00

02573A.07

BORROWER NAME AND ADDRESS: CENSON, VANITY L.

RR 2 BOX 284          HEADLAND          AL 36345-9444

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract, or business arrangement.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## STATEMENT OF ADDITIONAL PROVISIONS

**ATTORNEY FEES:** If the amount borrowed is over $300, Borrower(s) agrees to pay reasonable attorney's fees should this loan agreement be referred for collection to an attorney who is not a salaried employee of the Lender. Fees will not be in excess of 15% of the unpaid debt.

**SECURITY FOR THIS LOAN:** Borrower(s) hereby grant to Lender a security interest in property described below. This security interest is subject to the provisions in the sections concerning Insurance and Repossession below.

☐ Motor Vehicle  See Attached Collateral Identification Schedule

☐ Other (such as Boat, Recreational Vehicle, Mobile Home, etc.) See Attached Collateral Identification Schedule

☒ Certain Household Goods  See Attached Schedule "A"

**INSURANCE:** The Borrower(s) will provide insurance against loss of or damage to the property as the Lender may reasonably require if the amount financed, less any charges for insurance, is $300 or more and the value of the property is $300 or more.

**REPOSSESSION:** If Borrower(s) defaults in payment of this loan or fails to comply with any of the terms of this agreement, the Lender shall have all the rights granted to a secured party under the Uniform Commercial Code including, but not limited to, the right to repossess, sell and hold the Borrower(s) to a deficiency. If there is a surplus as a result of the sale, it will be paid to the Borrower(s).

### ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C)  $  1105.62

A. AMOUNT GIVEN TO YOU DIRECTLY: $ _____ 1012.71 _____  B. AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____ $.00

   Check No. 087789 _____ $ _____ 1012.71

C. AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | | |
|---|---|---|---|
| _____ | $ _____ $.00 | To Insurance Co. for Credit Life &/or Accident | |
| _____ | $ _____ $.00 | & Health . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 70.61 | |
| _____ | $ _____ $.00 | To Insurance Co. for Personal Property | |
| _____ | $ _____ $.00 | Insurance . . . . . . . . . . . . . . . . . . . . $ _____ 22.30 | |
| _____ | $ _____ $.00 | To Public Officials . . . . . . . . . . . . . . . . . . $ _____ $.00 | |
| _____ | $ _____ $.00 | To Insurance Co. for Non-Filing Insurance . . . . $ _____ $.00 | |
| _____ | $ _____ $.00 | To Insurance Co. for Involuntary Unemployment | |
| _____ | $ _____ $.00 | Insurance . . . . . . . . . . . . . . . . . . . . . . . . $ _____ $.00 | |
| _____ | $ _____ $.00 | To Insurance Co. for Limited Physical Damage | |
| | | or Vendors Single Interest Insurance . . . . . $ _____ $.00 | |

D. PREPAID FINANCE CHARGE (not part of "Amount Financed"):

   Surcharge . . . . . . . . . . . . $ _____ 66.34

   TOTAL PREPAID FINANCE CHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 66.34

**INSURANCE:**

Credit Insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from the insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | Term of loan | $ 14.45 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | Term of loan | $ .00 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | First 018 months of loan | $ 56.16 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | First _____ months of loan | $ .00 | I want involuntary unemployment insurance. |

**CANCELLATION OPTION:** If you desire to do so you may, without penalty or obligation, within fifteen days from the date set forth above, cancel, all but not part of, the credit insurance coverages by returning all credit insurance certificates received in connection with the loan to the office where the loan was made. Upon cancellation, a full cash refund of all credit insurance premiums will be made.

Property insurance may be obtained from anyone you choose or you may provide us with evidence of existing insurance. Insurance provided by us may be from an affiliated company which expects to profit from the insurance, **and the insurance does not include liability coverage for bodily injury and property damage covered by others.** If you get the insurance from us, the cost will be:

Limited Physical Damage or

   Vendors Single Interest Insurance .. Premium $ _____ $.00  Term _____ months  Stated Amount $ _____ $.00

Personal Property Insurance . . . . . . . . Premium $ _____ 22.30  Term _____ 18 months  Stated Amount $ _____ 1000.00

687751                                                                                                                025738.01

## CERTIFICATE OF SINGLE PREMIUM GROUP CREDIT INSURANCE

### SCHEDULE

| CREDITOR/LESSOR BENEFICIARY (Name & Address)<br>ASSOCIATES FINANCIAL SERV. CO.<br>2407 MONTGOMERY HWY<br>DOTHAN     AL 363030000 | Account No.<br>0245145 | GROUP POLICY NUMBER | | GC1332–A |
|---|---|---|---|---|
| SECOND BENEFICIARY | | ORIGINAL AMOUNT OF<br>DECREASING LIFE INSURANCE | $ | *****1,171.96* |
| | | ORIGINAL AMOUNT OF<br>LEVEL LIFE INSURANCE | $ | NONE |
| | | MONTHLY DISABILITY<br>BENEFIT | $ | *****78.00* |
| BORROWER: | AGE: | Indebtedness Insured | | |
| ADDRESS:   JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND    AL 36345–9444 | 43 | Gross   N/A    Net    X | | |
| | | Single Decreasing<br>Life Premium | $ | *****14.45* |
| CO-BORROWER<br>N/A | AGE:<br>N/A | Joint Decreasing<br>Life Premium | $ | N/A |
| Effective Date of Insurance    11/07/00 | | Single Level<br>Life Premium | $ | N/A |
| Term of Decreasing Life Insurance<br>(Begins on Effective Date Shown Above) | 18 mos. | Joint Level<br>Life Premium | $ | N/A |
| Term of Level Life Insurance<br>(Begins on Effective Date Shown Above) | N/A mos. | Single<br>Disability Insurance Premium | $ | *****56.16* |
| Term of Disability Insurance<br>(Begins on Effective Date Shown Above) | 18 mos. | Waiting Period | 7 | Days |
| Maximum Amount of Life Insurance | $ 100,000.00 | Elimination Period | None | Days |
| Total Maximum Disability Benefit Amount | $ 21,000.00 | TOTAL CREDIT<br>INSURANCE PREMIUM | $ | ********70.61* |
| Maximum Monthly Disability Benefit | $ 350.00 | | | |
| Term of the Loan | 18 mos. | Original Amount of the Loan | $ | *****1,171.96* |

The only insurance coverage effective under this certificate is that for which a premium is charged.

---

**NOTE:**
THE MAXIMUM ELIGIBILITY AGE IS 65 ON THE INCEPTION DATE OF THE INSURANCE.
THE LIFE INSURANCE BENEFIT MAY NOT COMPLETELY PAY OFF YOUR ACCOUNT.
THE MONTHLY DISABILITY BENEFIT MAY BE LESS THAN YOUR MONTHLY ACCOUNT PAYMENT.
THE MAXIMUM TERM OF LIFE INSURANCE COVERAGE IS 120 MONTHS FROM THE EFFECTIVE DATE OF INSURANCE.
THE MAXIMUM TERM OF DISABILITY INSURANCE COVERAGE IS 60 MONTHS FROM THE EFFECTIVE DATE OF INSURANCE.

IF THE TERM OF YOUR LOAN EXCEEDS THE TERM OF INSURANCE, THE DEATH BENEFIT IS ONLY PAYABLE IF DEATH OCCURS DURING THE TERM OF THE INSURANCE. TOTAL DISABILITY BENEFITS WILL NOT BE PAID FOR ANY PERIOD OF TOTAL DISABILITY CONTINUING AFTER THE TERMINATION DATE SHOWN IN THE SCHEDULE.

**FREE-LOOK:**
WITHIN 15 DAYS FROM THE DATE YOU RECEIVE THIS CERTIFICATE, YOU MAY RETURN THE CERTIFICATE TO THE CREDITOR IF YOU ARE NOT SATISFIED WITH THE INSURANCE FOR ANY REASON. THE CREDITOR WILL, WITHIN 30 DAYS, REFUND OR CREDIT TO YOUR ACCOUNT ANY PREMIUM CHARGED FOR THE INSURANCE.

---

**WHO IS INSURED.** The Borrower and Co-Borrower may be insured for life insurance. The Borrower may be insured for Total Disability Insurance.

**DEFINITIONS.**

**"Borrower"** means the borrower of money or a purchaser or lessee of goods, services, property, rights or privileges for which payment is arranged through a Credit Transaction.

**"Co-Borrower"** means the co-borrower who is jointly indebted to the Creditor under the same contract of indebtedness as another borrower and is named in the contract of indebtedness. An insured Co-Borrower is referred to as "Co-Insured," and named in the Schedule.

The terms **"Borrower"** and **"Co-Borrower"** also refer to "Lessee" and "Co-Lessee."

**"Insured"** or **"Insured Person"** means the Borrower and/or the insured Co-Borrower, if joint coverage is in force, who is insured under the Group Master Policy and named in the Schedule.

**"Creditor"** means the lender of money or vendor or lessor of goods, services or property, rights or privileges, for which payment is arranged through a Credit Transaction, or any successor to the right, title or interest of any such lender, vendor, or lessor, and an affiliate, associate or subsidiary of any of them or any director, officer or employee of any of them or any other person in any way associated with any of them.

**"Loan"** means any transaction by the terms of which the repayment of money loaned or Loan commitment made, or payment for goods, services or properties sold or leased, is to be made at a future date or dates.

**"Total Disability"** means that during the first 6 consecutive months of total disability the Insured is not able to perform the essential functions of their occupation held at the time the disability occurred because of sickness or accidental injury. The Insured must be receiving regular care and treatment by a licensed physician or chiropractor other than himself. After the first 6 consecutive months of total disability, the definition changes and requires that the Insured not be able to perform the essential functions of any occupation for which he is suited by virtue of education, training, or experience. Written proof of continuing total disability will be required at reasonable intervals.

### CREDITOR - DEBTOR INSURANCE ONLY

GC13299N9D1

| ORIGINAL COPY (1) |
|---|
| BORROWER COPY (1) |
| INSURANCE COMPANY COPY (1) |

730055
04215A.01

**"Actively Employed"** for disability insurance means that the Borrower: (1) is actively at work for wages and profit; and (2) has been physically present at his place of employment and has performed substantially all the duties of his occupation or employment for at least 30 hours each of the 2 weeks immediately prior to the Effective Date of coverage. A Borrower not actively employed on such date solely because such date was not a regularly scheduled work day shall be deemed actively employed.

**"Injury"** means bodily injury caused by an accident which causes Total Disability.

**"Sickness"** means illness or disease which causes Total Disability.

**"Monthly Disability Benefit"** means the lesser of the Monthly Disability Benefit or the Maximum Monthly Disability Benefit shown in the Schedule. The Monthly Disability Benefit and Maximum Monthly Disability Benefit are subject to the Total Maximum Disability Benefit Amount shown in the Schedule.

**WHEN COVERAGE BEGINS.**
The insurance begins on the Effective Date shown in the Schedule. The insurance will terminate at the end of the term shown in the Schedule or for the reasons listed in the **"WHEN INSURANCE STOPS"** provision.

**COVERAGE PROVIDED.**
We certify that if we have been paid the premium shown in the Schedule, the person or persons shown in the Schedule are insured subject to the terms of the Group Master Policy issued to the Creditor.

**WHO WE WILL PAY.**
Upon receipt of due proof, we will make claim payments directly to the Creditor; the Creditor will apply the payments to reduce or extinguish the unpaid debt. If the amount of insurance benefit exceeds the unpaid debt, any such excess shall be paid to:
(a) the Insured; or
(b) the Second Beneficiary other than the Creditor; or
(c) the Insured's estate.

**WHAT WE WILL PAY.**
**Single Life Insurance Benefit.** Single life insurance covers only the Borrower.

**Joint Life Insurance Benefit.** Joint life insurance covers the Borrower and the Co-Borrower and will pay only one death benefit. If a death benefit is paid as a result of the death of the Insured or Co-Insured, no further insurance will exist under the policy. If the deaths of the Insured and Co-Insured occur simultaneously, one death benefit will be paid for the Insured only. **(PAYMENTS ARE NOT DOUBLED.)**

**Amount of Decreasing Life Insurance.** The Decreasing Life Insurance is based on the net indebtedness. The amount of Decreasing Life Insurance is the Original Amount of Decreasing Life Insurance shown in the Schedule until the first payment due date. After the first payment due date, the amount of insurance is the scheduled unpaid principal balance due on the date of death.

The Original Amount of Decreasing Life Insurance may not exceed the Maximum Amount of Life Insurance shown in the Schedule; therefore, the amount may not be enough to completely pay off the Insured's account. We will determine the amount of Life Insurance benefit in two steps; we will divide the Maximum Amount of Life Insurance by the original principal balance to obtain a ratio; then, we will multiply this ratio by the scheduled unpaid principal balance due on the date of death. The result will be the amount of life insurance benefit we will pay.

Note: The amount of Decreasing Life Insurance benefit payable will not include delinquent payments, extensions of payments permitted by the Creditor as a result of delinquent payments or extensions of payments permitted by the Creditor to prevent the delinquency of payments.

**Total Amount of Insurance.** In no event will the sum of the amount of Decreasing Life Insurance exceed the Maximum Amount of Life Insurance shown in the Schedule. If Joint Life coverage is in effect, the joint life benefit will not exceed the amount of insurance which would be provided on a single life. If premium is paid for coverage in excess of the maximum amounts specified in the Schedule, we will: (1) reduce the excess coverage and refund the excess charge; or (2) terminate the coverage and refund the entire premium. Any reduction or termination of coverage must be within sixty (60) days from the Effective Date and while the Insured Person is alive.

**Single Total Disability Insurance Benefit. (INSURED ONLY)** We will pay a monthly benefit to the Creditor upon receipt of written proof the Insured became totally disabled while insured and continued to be totally disabled for at least the Waiting Period shown in the Schedule. Payment will be calculated from the first day of disability following the Elimination Period shown in the Schedule. The benefit will be equal to 1/30th of the Monthly Disability Benefit, subject to the Maximum Monthly Disability Benefit, shown in the Schedule for each day of disability to be compensated. Payments will stop when the Insured is no longer totally disabled; when benefits are paid to the end of the Term of Disability Insurance shown in the Schedule; when there is no longer any indebtedness; or the date of the Insured's death, whichever comes first. The Maximum Monthly Benefit is limited by the Total Maximum Disability Benefit Amount shown in the Schedule.

**PARTIAL PAYOFF**
If the Original Amount of Life Insurance shown in the Schedule is less than the Original Amount of the Insured's Loan, the Amount of Life Insurance benefit payable will not be enough to completely pay off the Loan. If the Monthly Disability Benefit shown in the Schedule is less than the monthly Loan payment, the Insured will have to pay the Creditor the difference each month. (See **"Amount of Decreasing Life Insurance"** provision to determine the amount of decreasing life insurance benefit payable.)

If the term of either Life or Disability Insurance, or both, as shown in the Schedule is less than the term of the Insured's Loan, the insurance will not remain in force for any months remaining after the end of the Term of Insurance.

**WHAT WE WON'T PAY.**
**Suicide Exclusion.** We will not pay a benefit if death is a result of suicide:
(a) if such death occurs within 12 months from the Effective Date of this Certificate; and
(b) we will refund the life insurance premium.

In such event, our liability will be limited to a refund of the premium paid for such coverage. If Joint Life Insurance coverage is in force, the refund will be that portion of the premium paid for the second Borrower and coverage will remain in force on the survivor.

GC13299N9D1

730055
04215B.01

2

(a)  normal pregnancy, whether existing on the Effective Date or developing thereafter;
(b)  elective surgery;
(c)  intentionally self-inflicted injury;
(d)  war, declared or undeclared, or act of war;
(e)  flight in any aircraft other than a commercial scheduled aircraft;
(f)  disability occurring during the commission of a felony;
(g)  sickness or injury caused by or resulting from the use of alcoholic beverages or narcotics (including hallucinogens) unless they are administered on the advise of and taken as directed by a licensed physician other than the Insured;
(h)  a pre-existing illness which manifested itself to you by requiring medical diagnosis or treatment within the 6 months preceding the taking of the application for insurance and which caused loss within 6 months after the Effective Date. After that, disability commencing from such illness is covered.

**WHEN INSURANCE STOPS.**  The insurance will stop at the end of the term of insurance shown in the Schedule or the first to occur of any of the following events:
(a)  when a life insurance benefit is paid;
(b)  when the indebtedness is paid off, renewed or refinanced;
(c)  when the Insured gives us written notice to cancel the insurance; or
(d)  when the indebtedness is otherwise extinguished, whichever happens first.

If joint life insurance is effective and the insurance on one of the Insured Persons ceases because of suicide, contestability, or ineligibility, a refund will be made.  The refund will be the difference between the Joint Life Insurance charge and the Single Life insurance charge which would have been paid if only Single Life Insurance had been elected.  When termination of life insurance results from an Insured Person's death, the life insurance premium paid to Us is deemed earned and no refund is due.

**REFUNDS.**  If the insurance stops before the end of the term of insurance shown in the Schedule for any reason other than a life benefit being paid, a refund or credit of the unearned premium will be paid to the Insured or credited to the Insured's account.  Refunds for Decreasing Life Insurance will be calculated according to the Actuarial method.  Refunds for Total Disability Insurance will be calculated according to the Actuarial method.  When termination of Life/Total Disability Insurance results from death, the life premium paid to us is deemed earned; no refund is due.  However, Total Disability Insurance premium is not earned and will be refunded; refunds or credits of less than $1.00 will not be made.

**RENEWAL AND REFINANCING OF THE LOAN.**  If the Loan is discharged due to renewal or refinancing prior to the scheduled termination date of the insurance, any insurance in force shall be terminated before any new insurance may be written in connection with the renewed or refinanced Loan.  The Effective Date of the coverage shall be deemed to be the first date on which the Insured Person became covered under the policy with respect to the amount and term of the debt outstanding at the time of the renewal or refinancing.

**MISSTATEMENT OF AGE - MAXIMUM AGE EXCEEDED.**  If the age of a Borrower is misstated and is over the Maximum Age stated in the Schedule, no insurance shall take effect.  The liability of the Company shall be limited to a refund of premium paid therefore.  This also applies to the Co-Borrower, if joint life coverage was elected.  If an Insured correctly stated their age and their age was more than the Maximum Age, and we do not return the premium within 60 days of the Effective Date and prior to a claim, the coverage will remain in effect.  This also applies to the Co-Insured, if joint life coverage was elected.

**RULES FOR FILING A CLAIM.  For life insurance,** we must be given a certified copy of the death certificate as proof of a life claim.  Upon the death of an Insured Person, we require proof of death be furnished to us which will include a certified copy of the deceased person's death certificate; and an affidavit signed by an officer of the Creditor certifying the amount due.

**For Total Disability Insurance,** the Insured must write us or our agent about their Total Disability claim within 30 days after the beginning of Total Disability or as soon after that as they can.  We will send claim forms within 15 days after receiving notification of the claim.  If we do not send the forms in 15 days the Insured can simply send us written proof of Total Disability.  The proof must show the date and cause of the Total Disability and how serious it is and it must be signed by a licensed physician or chiropractor other than the Insured.  The proof of Total Disability must be sent to us no later than 90 days after Total Disability ends.  If it is impossible to file within 90 days, the Insured must file as soon as they can.

**LEGAL ACTIONS.**  Unless the Insured has been legally incapable of filing the proof of Total Disability, we will not accept it if it is filed after 12 months from the time it should have been filed.  The Insured cannot start any legal action until 60 days after sending us the proof of Total Disability and legal action cannot be started more than 36 months after the proof is filed.  This also applies to the Co-Insured if joint coverage is in effect.

**PHYSICAL EXAMINATION AND AUTOPSY.**  We at our own expense have the right, and the Insured and/or Co-Insured, if any, must allow us the opportunity, to examine their person as often as is reasonably required while a claim is pending and to make an autopsy in case of death; if it is not forbidden by law.

**INCONTESTABILITY.**  The Group Master Policy, the application for the Group Master Policy, riders, amendments and endorsements, if any, the applications, if any, of Borrowers provided coverage under the Group Master Policy and this certificate are the complete contract of insurance.  All statements made by an Insured on the application are considered to be representations and not warranties.  No statement made can be used to void this insurance or deny a claim unless that statement is in the signed application.  After 12 months from the date of the application (90 days for loans of under $1,000) no statement made by an Insured in the application can be used to void this insurance or deny a claim unless that statement was made fraudulently.  This also applies to the Co-Insured if joint coverage was elected.

**POLICY/CERTIFICATE CHANGES.**  All agreements made by us are signed by our President, a Vice President, or Secretary.  No other person can alter or waive any of the conditions of the group master policy or this Certificate or make any agreements which will be binding upon the Company.

**CONFORMITY WITH STATE STATUTES.**  Any part of the certificate which, on the Effective Date of the certificate, conflicts with the statutes of the state where the certificate was delivered, is changed to conform to the minimum standards of those statutes.

GC13299N9D1

| ORIGINAL COPY (1) |
| BORROWER COPY (1) |
| INSURANCE COMPANY COPY (1) |

730055
04215C.01

READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.

## ARBITRATION AGREEMENT

| BORROWER (Called "you" or "your")<br>KINSEY, JANIE L<br><br>RR 2 BOX 284<br>HEADLAND          AL    36345-9444 | LENDER (Called "we" or "us")<br>ASSOCIATES FINANCIAL SERVICES COMPANY<br>OF ALABAMA, INC.<br>2407 MONTGOMERY HWY<br>DOTHAN              AL 36303 |
|---|---|
| Date of Loan       11/07/00 | Account Number       0245145 |

In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

**DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

**ARBITRATION RULES:** The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern.

**STARTING ARBITRATION:** Either you or we can start arbitration any time a dispute arises between you and us. To start arbitration, you or we must do the following things:

1.   Complete a Demand For Arbitration (a copy is attached to this agreement)
2.   Send three copies of the completed Demand For Arbitration and three copies of this agreement, along with $125 filing fee, to:
    American Arbitration Association
    13455 Noel Road
    Two Galleria Tower, Suite 1750
    Dallas, TX 75240-6636
3.   Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.

**COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expense of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.

**SELECTION OF ARBITRATION:** The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.

**LOCATION OF ARBITRATION:** The arbitration will take place in the county where you live unless you and we both agree to another location.

**ENFORCEMENT OF ARBITRATION DECISION:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**OTHER IMPORTANT AGREEMENTS:**

1. This agreement does not affect the applicability of any statute of limitations.
2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.
8. For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules, contact the American Arbitration Association at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

You and we have entered into this agreement as of the "Date of Loan" written above.

Borrower
KINSEY,JANIE L

Lender
ASSOCIATES FINANCIAL SERVICES COMPANY
OF ALABAMA, INC.

_____
(Signature)

Borrower

By:_____

_____
(Signature)

Borrower

_____
(Signature)

You acknowledge that you have received a completed copy of this agreement and one Demand for Arbitration form.

_____              _____
Initials                Initials

| ACCOUNT NUMBER | DATE OF TRANSACTION |
|---|---|
| 126995 | 04/30/2002 |

| BORROWER(S)--(Name and Address) | CREDITOR--(Name and Address) |
|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CitiFinancial<br>2407 MONTGOMERY HWY<br><br>DOTHAN          AL36303 |

**Your Right to Cancel**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is stated above; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not support the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address stated above. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel the new transaction, you may do so by notifying us in writing at the address stated above.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____05/03/2002_____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____          _____
          Borrower's Signature                              Date

Each of the undersigned acknowledges receipt of two copies of this Notice of Right to Cancel this ___30th___ day of_____April_____ , 2002___.

_C.H. Kinsey_
          Borrower's Signature

_____
          Borrower's Signature

26879-3 4/2000          Original(Branch)    Copy(2 Each Customer)

| ACCOUNT NUMBER | DATE OF TRANSACTION |
|---|---|
| 126995 | 04/30/2002 |
| **BORROWER(S)--(Name and Address)**<br>C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | **CREDITOR--(Name and Address)**<br>CitiFinancial<br>2407 MONTGOMERY HWY<br><br>DOTHAN            AL36303 |

**Your Right to Cancel**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is stated above; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not support the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address stated above. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel the new transaction, you may do so by notifying us in writing at the address stated above.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____05/03/2002_____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____        _____
Borrower's Signature                                Date

Each of the undersigned acknowledges receipt of two copies of this Notice of Right to Cancel this __30th__ day of_____April_____, 2002 .

_____
Borrower's Signature

_____
Borrower's Signature

26879-3 4/2000          Original(Branch)    Copy(2 Each Customer)

| ACCOUNT NUMBER 126995 | DATE OF TRANSACTION 04/30/2002 |
|---|---|
| BORROWER(S)--(Name and Address)<br><br>C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CREDITOR--(Name and Address)<br><br>CitiFinancial<br>2407 MONTGOMERY HWY<br><br>DOTHAN          AL36303 |

**Your Right to Cancel**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is stated above; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not support the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address stated above. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel the new transaction, you may do so by notifying us in writing at the address stated above.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____05/03/2002____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____          _____
          Borrower's Signature                          Date

Each of the undersigned acknowledges receipt of two copies of this Notice of Right to Cancel this __30th__ day of_____April_____ , 2002 .

_C H Kinsey_
Borrower's Signature

_____
Borrower's Signature

26879-3 4/2000            Original(Branch)    Copy(2 Each Customer)

# Disclosure Statement, Note and Security Agreement

| Borrower's name and mailing address | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| C, H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CITIFINANCIAL CORPORATION<br><br>CITIFINANCIAL<br>DOTHAN CHEROKEE AL 36303 | 126995<br><br>Date of Loan<br>04/30/2002 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 20.99 % | $ 4,205.87 | $ 6,700.91 | $ 10,906.78 |

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 213.62 | 06/15/2002 |
| 59 | $ 181.24 | MONTHLY BEGINNING 07/15/2002 |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower has a security interest in:

- [ ] Motor Vehicle
- [ ] Mobile Home
- [x] Real Property
- [ ] Other:

**Late Charge:** If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00 , whichever is more, but in no event to exceed $ 100.00 .

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

**Additional Information:**

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 226.60 | $ 7,035.96 | $ 335.05 | 05/06/2002 |

**Required Insurance Disclosure:**

If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. **If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid.** The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**

Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | First Borrower's Signature | Date |
|---|---|---|---|---|
| $ 12.98<br>$NONE<br>$NONE | $ 146.56<br>$ | JOINT CREDIT LIFE | | |

Second Borrower's Signature                    Date

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**

Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:

(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 18.6696 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to N/A % per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to Borrower.

(Intentionally left blank)

Borrower's Initials: ____

final payments, beginning on the first payment date shown above and continuing on the same day in each following month paid in full unless this acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

**SECURITY AGREEMENT:**

A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

2. Other Property:

B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at
RR 2 BOX 284        HEADLAND AL 36345                                    . See either the Deed of Trust or the Mortgage for
terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGE:** Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

**NSF CHECKS:** Lender may charge the greater of either a $ 20.00 fee or an amount equal to the actual charge by the depository institution if a check, draft, negotiable order of withdrawal or like instrument is and draft is dishonored.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

**EFFECTS OF DEFAULT:** If Borrower defaults, Lender may deliver the Property to Lender, or upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

CitiFinancial Corporation
AL 25738-15  3/2002

Borrower's Initials: ___

Original (Branch)        Copy (Customer)

II the proceeds of sale are not sufficient to satisfy the unpaid balance, earned interest, and expenses, plus, if applicable, Alabama law, Borrower agrees to pay the remaining amount due. Under applicable Alabama law, Borrower Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

---

## NOTICE OF ARBITRATION PROVISION

**THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND LENDER, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply: "You" or "Your" means any or all of Borrower(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors, assigns, and representatives. "We" or "Us" means the Lender under this Disclosure Statement, Note and Security Agreement, American Health & Life Insurance Company, and any assignee of Lender, together with all of their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity). "Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You. "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the applicable rules for arbitration, any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Financial Services Arbitration Rules and Procedures of JAMS/Endispute, Inc. ("Administrator"), and (iii) this Provision, unless we both agree in writing to forgo arbitration. The terms of this Provision shall control any inconsistency between the rules of the Administrator and this Provision. You may obtain a copy of the arbitration rules by calling (800) 448-1660 or by accessing the Administrator's internet site at www.jamsadr.com/financial_rules.asp. At Your request, We will obtain and provide to You copies of the Administrator's rules and other materials, including a form Demand For Arbitration. Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. Pursuant to this Provision, You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons or entities involved with any Credit Transaction or any other matter covered by this Disclosure Statement, Note and Security Agreement, (ii) all persons who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

(Intentionally left blank)

Claims Excluded from Arbitration. The following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate:

- enforcement of a security interest by repossession or foreclosure or transfer of title to the property being foreclosed, or exercise of extra-judicial or self-help repossession under applicable law; or
- Any matter where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages; restitution; disgorgement; costs and fees (including attorneys' fees), or any Claims brought in a small claims court. In the event You attempt to assert any of Your Claims on behalf of a putative class of persons, in violation of other terms in this Provision, the value of Your Claims will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00.

However, should either party initiate arbitration, the other party, at its option, may seek injunctive and/or monetary relief in arbitration. Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

**Additional Terms.**

Administration of Arbitration. Arbitration shall be administered by the Administrator, but if it is unable or unwilling to administer the arbitration, then the American Arbitration Association will administer any arbitration required under this Provision pursuant to its Commercial Arbitration Rules and Expedited Procedures. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

Appeal. Either You or We may appeal the arbitrator's award in accordance with the Optional Appeals Procedures of the Administrator, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Provision.

Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Costs. The cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay the initial filing fee up to $125.00 to the Administrator when the demand is made. We will pay any balance.
- We will pay to the Administrator all other costs for the arbitration proceeding up to a maximum of one day (eight hours) of hearings.
- All costs of the arbitration proceeding that exceed one day of hearings will be advanced by the party that initiated the arbitration. To the extent allowed by the applicable arbitration rules and applicable law, the arbitrator may tax or assess costs of the arbitration to any party.
- In the case of an appeal, the appealing party will advance any costs of initiating an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing an appeal.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of this Disclosure Statement, Note and Security Agreement.

**Governing Law.** This Provision is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Severability.** If the arbitrator or any court determines that one or more terms of this Provision or the arbitration rules are unenforceable, or would make this Provision unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Provision, but such determination shall not impair or affect the enforceability of the other terms of this Provision or the arbitration rules.

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will not hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, (iv) rights to appeal an arbitration award are very limited, and (v) the rights of the parties hereunder may not be exactly mutual in all respects.

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

_____ (Seal)
C H KINSEY                        -Borrower

_____ 4/30/02 (Seal)
JANIE L KINSEY                    -Borrower

The following notice applies only if this box is checked.  ☐

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

WITNESSES:                        SIGNED: _____ (Seal)
_____         C H KINSEY                        -Borrower
_____ (Seal)
                                  JANIE L KINSEY                    -Borrower
_____                                          -Borrower

                                  CITIFINANCIAL CORPORATION,
_____         By: _____
                                       (Name and Title)

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower by payment of loan.

_____ (Seal)  _____ (Seal)
Signature          Date           Signature          Date

CitiFinancial Corporation
AL 25738-15  3/2002          **Original (Branch)    Copy (Customer)**          Page 4 of 4

# SECTION 32 MORTGAGE DISCLOSURE

These disclosures are provided pursuant to Section 226.32 of Regulation Z (Truth in Lending Act) in connection with the credit you requested.

Lender: CITIFINANCIAL
Application No.: 6577

Date Prepared: 04/24/2002

Prepared For: C H KINSEY
JANIE L KINSEY
RR 2 BOX 284
HEADLAND AL 36345

Amount Financed: $ 6,700.91      Loan Term: 60 months

---

**You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.**

**The ANNUAL PERCENTAGE RATE on your loan will be 20.99 %.**

**Your regular monthly payment will be $ 181.24.**

**If this is an adjustable rate mortgage loan, the following applies:**
**Your interest rate may increase. Increases in the interest rate could increase your payment. The highest amount your payment could increase is to $ N/A .**

---

I/we hereby acknowledge that I/we have received a copy of this disclosure at least three (3) business days before loan closing. ☐ If this box is checked, I/we certify that I/we received the disclosures above over the telephone at least three (3) business days before loan closing.

Borrower: C H KINSEY                          Date 4~30-2

Borrower: JANIE L KINSEY                       Date 04/30/02

I certify that this disclosure was provided to the above borrower(s) three (3) or more business days prior to loan closing.

Lender Representative                          Date
Print Name:

29302-2  8/97          Original(Branch)    Copy(Customer)

307 West 7th Street, Suite 400 PO Box 2548
Fort Worth, Texas 76113
(called we, our, or us)

certifies that the Insured Debtor and the Joint Insured Debtor (when insurance on the joint debtor is requested and an additional premium is paid), shown in the Schedule below, hereafter referred to as "you" or "your", are insured under the group policy issued to the Creditor. Only those coverages for which a specific premium rate appears in the Schedule are provided by this Certificate of insurance.

## APPLICATION FOR INSURANCE

**If the Initial Debt is greater than $5,000, You must answer the following question:**
Have you in the past 5 years, been treated for or been diagnosed as having:
(1) cancer; (2) stroke; (3) AIDS (Acquired Immune Deficiency Syndrome), ARC (AIDS Related Complex - ARC is a condition with signs and symptoms which may include generalized Lymphadenopathy, (swollen lymph nodes); loss of appetite, weight loss; fever; oral thrush; skin rashes; unexplained infections; dementia; depression or other psychoneurotic disorders with no known cause); or any other immunological disorder (including testing positive for the HIV-Human Immunodeficiency Virus);
(4) alcoholism or substance abuse; or
(5) any disease or disorder of the heart, liver, kidneys, or lungs?
**If an answer is not checked below, if the answer is "YES", or if you have not signed below, you are not eligible and the loan office is not authorized to issue Credit Life or Disability Insurance Coverage.**

Proposed Insured Debtor - [ ] YES [X] NO          Proposed Joint Insured Debtor - [ ] YES [✓] NO

**If you are applying for Credit Disability Coverage you must answer the following question:**
Have you in the past 2 years, as a result of disease, injury, sprain, or strain to the back, neck or spine: 1) received disability benefits; 2) been hospitalized; or 3) missed 7 or more consecutive days of work? If an answer is not checked below, if the answer if "YES", or if you have not signed, you are not eligible and the loan office is not authorized to issue Credit Disability Insurance Coverage.

Proposed Insured Debtor - [ ] YES  [ ] NO

Are you currently working less than 30 hours per week? **If an answer is not checked below, if the answer is "YES", or if you have not signed, you are not eligible and the loan office is not authorized to issue Credit Disability Insurance Coverage.**

Proposed Insured Debtor - [ ] YES  [ ] NO          Proposed Joint Insured Debtor - [ ] YES  [ ] NO

I (We) acknowledge that the creditor will be adding an initial insurance premium using the rate indicated below, for each coverage requested, to my account each month on the payment due date.

x C H Kinsey
_____
Signature of Proposed Insured Debtor          Age: 52   Date: 4-30-02

_____
Signature of Proposed Joint Insured Debtor    Age: 45   Date: 4/30/02

## SCHEDULE

| Certificate/Account Number | Group Policy Number | Branch Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| 126995 | 3380 | 0039 | 05/06/2002 | 05/15/2007 |

| INSURED DEBTOR | | JOINT INSURED DEBTOR | |
|---|---|---|---|
| NAME<br>C H KINSEY | | JANIE L KINSEY | |
| STREET ADDRESS<br>RR 2 BOX 284 | AGE<br>52 | | AGE<br>45 |
| CITY<br>HEADLAND | STATE AL   ZIP CODE 36345 | | |

| CREDITOR - FIRST BENEFICIARY | SECOND BENEFICIARY - RELATIONSHIP (If not specified - Estate of Insured) |
|---|---|
| CITIFINANCIAL CORPORATION<br>CITIFINANCIAL<br>DOTHAN CHEROKEE   AL   36303 | ESTATE<br>ESTATE |

| Monthly Premium Rate per $100 of monthly outstanding balance - Single Life | Monthly Premium Rate per $100 of monthly outstanding balance - Joint Life | Monthly Premium Rate per $100 of regular monthly payment - Single Disability | | |
|---|---|---|---|---|
| NONE | 0.1845 | NONE | | |

| Maximum Amount of Life Insurance | Maximum Monthly Disability Benefit | Disability Waiting Period | Age Limit | Maximum Number of Monthly Benefits Per Occurrence | Initial Debt |
|---|---|---|---|---|---|
| $100,000 | $840.00 | 7 Days | 66 | 60 months | $ 7,035.96 |

**YOU HAVE THE RIGHT TO CANCEL THIS INSURANCE FOR ANY REASON WITHIN 30 DAYS AFTER THE EFFECTIVE DATE. RETURN THE CERTIFICATE WITH YOUR WRITTEN REQUEST FOR CANCELLATION TO THE CREDITOR AT THE ADDRESS LISTED ABOVE. ANY PREMIUM YOU HAVE PAID WILL BE REFUNDED OR CREDITED TO YOUR ACCOUNT AND THE INSURANCE WILL BE VOIDED AS OF THE EFFECTIVE DATE.**

NOTICE: PLEASE READ YOUR CERTIFICATE OF INSURANCE CAREFULLY. THE LIFE INSURANCE BENEFIT MIGHT NOT COMPLETELY PAY OFF YOUR LOAN. THE DISABILITY BENEFIT IS LIMITED TO A MAXIMUM OF 60 MONTHLY PAYMENTS PER OCCURRENCE OF DISABILITY. THIS CERTIFICATE MAY NOT PROVIDE DISABILITY BENEFITS FOR CERTAIN PREEXISTING CONDITIONS.

## DEFINITIONS

**ACCIDENTAL INJURY:** Means accidental bodily injury sustained by you during the term of insurance.

**ACCOUNT:** Means your loan with the creditor listed in the Schedule, which coincides with the Account Number shown in the Schedule.

CREDITOR - DEBTOR INSURANCE CERTIFICATE
MONTHLY OUTSTANDING BALANCE/CRITICAL PERIOD DISABILITY
SINGLE LIFE/JOINT LIFE/SINGLE DISABILITY

73765          Original (Branch)     Copy (Customer)     Copy (Ins. Co.)          AL 36644
Page 1 of 3

**DISABILITY PRE-EXISTING CONDITION:** A pre-existing condition are those conditions which manifested themselves to you by requiring medical diagnosis or treatment within six months preceding the Effective Date of this insurance and which caused or contributed to your disability within the six months following the Effective Date of this insurance; however, any disability commencing after that time resulting from such condition shall be covered.

**OUTSTANDING BALANCE AT DEATH:** The Outstanding Balance At Death equals the unpaid Account balance as of the date of death.

**SICKNESS:** Means illness or disease which commences during the term of insurance.

**TOTAL DISABILITY:** Means that during the first 12 consecutive months of disability, because of Accidental Injury or Sickness, you are unable to perform the important and significant duties of your occupation at the time disability commences. For the remainder of the period of disability, "Total Disability" means that you are unable to perform the duties of any gainful occupation for which you are reasonably suited by reason of education, training or experience. During any period of Total Disability, the Insured Debtor must be under the care of a legally qualified physician or surgeon other than himself, the joint debtor, or a member of his Immediate family.

**REGULAR MONTHLY PAYMENT:** Means the regularly scheduled monthly payment obligation due the Creditor in connection with the Certificate/Account number shown in the Schedule plus any credit insurance premium except for credit life premiums and credit disability premiums. In no event will the regularly scheduled monthly payment referenced in this certificate include any: a) late charges; b) delinquency; or c) default charges.

**OCCURRENCE:** Means each separate period of total disability for which benefits are payable.

## CREDIT LIFE INSURANCE BENEFIT

If you have not misrepresented your health or age and are eligible for coverage under this certificate, and subject to the payment of the life premiums each month, you will be insured against the contingency of death, subject to the exclusions and provisions herein. Any Credit Life benefit paid will completely discharge our obligation with regard to this Certificate of Insurance.

**SINGLE LIFE INSURANCE BENEFIT:** We will pay the Amount of Life Insurance in force on the date of death to the Creditor Beneficiary after we receive due proof of your death at our administrative offices.

**JOINT LIFE INSURANCE BENEFIT:** We will pay the Amount of Life Insurance in force on the date of death to the Creditor Beneficiary when the first of you dies and after we receive due proof of death at our administrative offices. In the event of simultaneous deaths, only one such benefit will be paid.

**AMOUNT OF LIFE INSURANCE:** Subject to the Maximum Amount of Life Insurance shown in the Schedule, the Amount of Life Insurance in force at any time will be equal to the Outstanding Balance At Death (see Definitions section).

If, at any time, the outstanding balance on your Account exceeds the Maximum Amount of Life Insurance and a premium for the excess amount is charged, we have the right to refund the excess premium, provided that such refund is made prior to any claim.

**MAXIMUM LIMITS OF LIABILITY:** If you are currently insured under another certificate of insurance issued under the same group policy mentioned above in connection with another Account, making the total Amount of Life Insurance in excess of the Maximum Amount of Life Insurance shown in the Schedule, the amount of insurance in excess will be canceled. You will receive a refund or credit of the premium paid for the excess amount.

**SUICIDE:** If you die as the result of suicide or self-destruction, while sane or insane, within one year of the Effective Date of this insurance, a death benefit will not be paid. A refund of the life insurance premium will be made. If joint life coverage was selected, insurance on the surviving debtor will be canceled and a full refund of all premiums will be made.

**PREMIUM WAIVER:** We will waive the life premiums due on this certificate during any period for which you are receiving benefits under any credit disability or credit involuntary unemployment insurance in force on this Account.

## CREDIT DISABILITY INSURANCE BENEFIT

If you have not misrepresented your health or age and are eligible for coverage under this certificate, and subject to the payment of the disability premiums each month, you will be insured against the contingency of Total Disability, subject to the exclusions and provisions herein.

**ELIGIBILITY:** This disability coverage becomes effective only if you are actively at work at least 30 hours per week on the Effective Date and truthfully answer "NO" to the health question(s) in this Certificate of Insurance.

**SINGLE DISABILITY INSURANCE BENEFIT:** We will pay a Monthly Benefit, to the Creditor Beneficiary when you become Totally Disabled and after we receive due proof of your Total Disability at our administrative offices.

**MONTHLY BENEFIT:** If, while insured, you become Totally Disabled, and remain Totally Disabled continuously for the number of days indicated in the Disability Waiting Period shown in the Schedule, we will pay a benefit for each day of disability equal to the lesser of 1/30th of: a) your scheduled monthly Account payment or the Maximum Monthly Disability Benefit shown in the Schedule plus; b) the monthly credit disability insurance and credit involuntary unemployment premium if due on this certificate, Benefits begin after the Disability Waiting Period stated in the Schedule and are payable up to the Maximum Number of Monthly Benefits Per Occurrence.

Once the Monthly Benefit becomes payable, it will continue until the earliest of the following: 1) the date of death; or 2) the date upon which you are no longer Totally Disabled; or 3) when the Maximum Number of Monthly Benefits Per Occurrence shown in the Schedule have been paid for that disability Occurrence. We will make no more than 60 monthly payments for any one disability Occurrence. A disability Occurrence will be considered separate from another Occurrence if the two disabilities are from totally unrelated causes. Only one benefit per day will be payable during any period of Total Disability even though Total Disability is caused by or results from both Accidental Injury and Sickness.

**DISABILITY EXCLUSIONS:** This insurance does not cover any Total Disability resulting from: (a) normal pregnancy; (b) intentionally self-inflicted injuries; (c) war, declared or undeclared; (d) flight in nonscheduled aircraft; or (e) a Pre-existing Condition, as defined; however, any disability commencing after that time resulting from such condition shall be covered.

## STANDARD PROVISIONS-DISABILITY INSURANCE

**NOTICE OF CLAIM:** You must send a written notice to us or our agent regarding your disability claim within 20 days after disability starts or as soon as reasonably possible. The notice should include sufficient information to identify you as an Insured Debtor.

forms within 15 working days, you can simply send us a written statement describing your disability. The statement should be signed by your physician and should include the dates as well as the nature and extent of your disability. Thereafter, claim forms are required to be filed every 30 days, while Total Disability continues.

**PROOF OF DISABILITY:** The proof of Total Disability signed by your physician must be sent to us no later than 90 days after the disability ends. If it is not possible to submit proof within 90 days, we will not reduce or deny a claim for this reason, if the proof is filed as soon as reasonably possible. In any event, the necessary proof must be given no later than one year from the date the disability commenced unless you are legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** Provided written proof of Total Disability is submitted, all benefits to which you are entitled will be payable by us to the Creditor each month.

**PHYSICAL EXAMINATION:** We, at our own expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

**LEGAL ACTION:** No legal action may be brought by you to recover on this Insurance within 60 days after written proof of Total Disability has been given. No such action may be taken after 3 years from the time proof of disability is given.

## GENERAL PROVISIONS

**AGE LIMIT:** If either of you misstate your age or will attain age 66 before the expiration date of the Account, the insurance is void. In such instance, all premiums paid will be refunded. However, if either of you correctly stated your age and it was above the maximum, and a Certificate of Insurance was issued in error, we have the right to terminate the coverage and refund the full premium, provided that such refund is made prior to any claim.

**GENERAL:** We will not pay benefits on any late charges or finance charges added to your Account balance after the date of death or the date Total Disability commences.

**PAYMENT OF CLAIMS:** Any benefits paid will be paid to the Creditor Beneficiary to reduce or extinguish your Outstanding Balance At Death. If the amount of insurance exceeds the unpaid balance of your Account, any excess will be paid to the Second Beneficiary, named by you, or to your estate. We will pay the excess, if any, by check or draft.

**PREMIUM:** Premiums will be paid by the Creditor each month on your behalf and will be collected from you in accordance with the terms of the Account agreement. The rate of premium charged by the Creditor for this insurance may not legally exceed that paid by the Creditor to us, on your behalf. If we change the premium rates and such change results in an increase then we will give you written notice: (1) at least thirty (30) days in advance; and (2) setting forth the revised rates and the Effective Date. Any such notice should be attached to the certificate. Any increase in rates will not be retroactive.

**AUTOPSY:** We, at our own expense, have the right to have an autopsy performed, unless it is not permitted by law.

**TERMINATION OF INSURANCE:** This insurance terminates upon the earliest of the following dates: (1) the last day of the billing cycle of the month in which you reach your 66th birthday; (2) when your Account is discharged for any reason, including prepayment, renewal, or refinancing; (3) upon repossession of the collateral given as security for your Account, or by your Account or any portion of your Account being charged off or required to be charged off by law; (4) upon nonpayment of premium by the Creditor; (5) on the expiration date shown the schedule; or (6) the date the Group Policy terminates.

**REFUND OF PREMIUM:** If the insurance is terminated prior to the original scheduled Expiration Date, the unearned portion of the prepaid premium will be refunded to You and/or credit to your account. Any such refund will be calculated according to the "Pro Rata" method. Refunds of less than $1.00 will not be made.

**CANCELLATION OF INSURANCE:** By the Debtor: This insurance may be cancelled by you by providing 1) Us, or 2) the Creditor, with advance written notice stating when cancellation is to be effective. By the Creditor: The Creditor may request cancellation of this Certificate for Your nonpayment of premium. The Creditor will give You written notice 30 days prior to the requested effective date of cancellation. By the Company: The Company may cancel this Certificate by giving the Debtor(s) written notice 30 days prior to the effective date of cancellation.

**CONFORMITY WITH STATE STATUTES:** Any provision of this Certificate of Insurance which, on its Effective Date, is in conflict with the statutes of the state in which it was issued is changed to conform to the minimum standards of those statutes.

**ENTIRE CONTRACT:** The policy including the certificate, any endorsements, and any attached papers, constitutes the entire contract of insurance. All statements made by the policyholder or by you will be deemed representations and not warranties. No statements made by you will be used in any contest unless a copy of the statement is or has been furnished to you or your beneficiary.

**INCONTESTABILITY:** Insurance under this Certificate of Insurance, in amounts up to and including $1,000 will not be contested, except for nonpayment of premiums or fraud, after it has been in force for ninety days from its Effective Date. Insurance under this Certificate of Insurance, in amounts over $1,000 or more, will not be contested, except for nonpayment of premiums or fraud, after it has been in force during Your lifetime for one year from its Effective Date. No statement made by or on behalf of You relating to your insurability will be used in a contest of his insurance unless it is contained in a written statement signed by you, and a copy has been furnished to you and/or your beneficiary.

We reserve the right to rescind this insurance coverage during the contestable period in the event of material misrepresentation made in the Application portion of this Certificate of Insurance.

**TRANSFER PROCEDURE:** We reserve the right to enter into an agreement with another insurer to transfer the liability under this Certificate without prior notice to you. We shall be relieved of all liability transferred, and the assuming insurer shall be directly and solely liable to you for those obligations or risks.

*Daniel J. Gumbers*

PRESIDENT

**Request for Taxpayer Identification Number and Certification**

Form W-9
Department of the Treasury
Internal Revenue Service

Give form to the requester. Do not send it to the IRS.

**Please print or type**

Name (See Specific Instructions on page 2.)
C H KINSEY   JANIE L KINSEY

Business name, if different from above. (See Specific Instructions on page 2.)

Check appropriate box: ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ...................

Address (number, street, and apt. or suite no.)
RR 2 BOX 284

Requester's name and address (optional)

City, state, and ZIP code
HEADLAND AL 36345

## Part I   Taxpayer Identification Number (TIN)

List account number(s) here (optional)
126995

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number
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

or

Employer identification number

## Part II   For U.S. Payees Exempt From Backup Withholding (See the Instructions on page 2.)

## Part III   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

Certification Instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here   Signature of U.S. person ▶ C H Kinsey   Date ▶ 4-30-01

## Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Corporations.

Note: If a payer gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

## What is backup withholding? Persons

making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or
2. You do not certify your TIN when required (see the Part III instructions on page 2 for details), or
3. The IRS tells the requester that you furnished an incorrect TIN, or
4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate Instructions for the Requester of Form W-9.

## Penalties

Failure to furnish TIN. If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

Civil penalty for false information with respect to withholding. If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

Criminal penalty for falsifying information. Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs. If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

24632-2  7/2001

Cat. No. 10231X
Original (Branch)

Form W-9 (Rev. 12-2000)

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

### Part I — Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.**

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see **How to get a TIN** below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see **Limited liability company (LLC)** above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note:** *See the chart on this page for further clarification of name and TIN combinations.*

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS's Internet Web Site at www.irs.gov.

If you do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments,

generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** *Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.*

### Part II — For U.S. Payees Exempt From Backup Withholding

Individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the separate Instructions for the Requester of Form W-9.

If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding. Enter your correct TIN in Part I, write "Exempt" in Part II, and sign and date the form.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

### Part III — Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required).

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified state tuition program payments, IRA or MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

**Privacy Act Notice**

Section 6109 of the Internal Revenue Code

requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 31% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties also may apply.

### What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporation | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

24632-2 7/2001



**Original (Branch)**

| Borrower(s) | Lender | Account Number |
|---|---|---|
| JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CITIFINANCIAL<br>DOTHAN CHEROKEE AL 36303 | |
| | | Date of Loan<br>04/30/2002 |

## ITEMIZATION OF AMOUNT FINANCED: $  6,700.91

$ __2,339.71__ Amount given to you directly (check to you)  $ ___335.05__ Prepaid finance charge
$ __3,720.09__ Amount paid on your prior account
$ ____641.11__ Amount paid to others on your behalf (sum of schedules A through C)

### SCHEDULE A: PREMIUMS PAID TO INSURANCE COMPANIES
$ __NONE__ Credit Life
$ __NONE__ Credit Disability
$ __NONE__ Property Insurance
$ __NONE__ Automobile Single Interest
$ __NONE__
$ _____

### SCHEDULE B: PAID TO PUBLIC OFFICIALS
$ __NONE__ License/title/registration fees
$ __25.65__ Recording and releasing fees
$ _____ Stamps/intangible/transfer tax
$ _____
$ _____

### SCHEDULE C: PAID TO OTHERS

| AMOUNT | PAYEE NAME | REASON |
|---|---|---|
| 440.46 | CITIFINANC | PAYOFF OF ACCOUNT |
| 175.00 | NATIONAL RE SERVICES | TITLE FEES |

ANY AMOUNTS LISTED IN SCHEDULE C, PAYABLE AS BROKER FEES, APPLICATION FEE, SETTLEMENT FEE, OVERNIGHT DELIVERY FEE,
FLOOD CERTIFICATION FEE OR TAX SERVICE FEE ARE INCLUDED IN PREPAID FINANCE CHARGE AND NOT IN THE AMOUNT FINANCED.

25746-6 7/2000            Original(Branch)    Copy(Customer)

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CITIFINANCIAL CORPORATION<br><br>CITIFINANCIAL<br>DOTHAN CHEROKEE AL 36303 |

**Property Location:** (if different from above)
RR 2 BOX 284
HEADLAND AL 36345

**Settlement Agent:**
CITIFINANCIAL CORPORATION

**Place of Settlement:**
CITIFINANCIAL
DOTHAN CHEROKEE AL 36303

**Loan Number:** 126995

**Settlement Date:** 04/30/2002

**L. Settlement Charges**

| 800. Items Payable in Connection with Loan: | | M. Disbursement to Others | |
|---|---|---|---|
| 801. Loan origination fee          % to | | | |
| 802. Loan discount      5.0000 % to | 335.05 | 1501. CITIFINANC | 440.46 |
| 803. Appraisal fee to | | 1502. | |
| 804. Credit report to | | 1503. | |
| 805. Inspection fee to | | 1504. | |
| 808. Mortgage Broker Fee Paid from Proceeds to | | 1505. | |
| 809. Points Paid to Mortgage Broker to | | 1506. | |
| 810. Mortgage Broker Fee Paid by Lender   $_____ (P.O.C.)   to | | 1507. | |
| 811. Mortgage Broker Fee Paid by Borrower $_____ (P.O.C.)   to | | 1508. | |
| 812. | | 1509. | |
| **900. Items Required by Lender to be Paid in Advance:** | | 1510. | |
| 903. Hazard insurance premium for        year(s) to | | 1511. | |
| 905. Credit Life Insurance Premium to | | 1612. | |
| 906. Disability Insurance Premium to | | 1513. | |
| 907. Involuntary Unemployment Insurance Premium to | | 1514. | |
| 908. | | 1515. | |
| 909. | | 1516. | |
| 910. | | 1517. | |
| **1000. Reserves Deposited with Lender** | | 1518. | |
| **1100. Title Charges:** | | 1519. | |
| 1101. Settlement or closing fee to | | 1520. | |
| 1102. Abstract or title search to | | 1521. | |
| 1103. Title examination to<br>NATIONAL RE SERVICES | 175.00 | 1522. | |
| 1104. Title Insurance binder to | | 1523. | |
| 1105. Document preparation to | | 1524. | |
| 1106. Notary fees to | | 1525. CitiFinancial | 3,720.09 |
| 1107. Attorney's fees to<br>(includes above item numbers       ) | | 1526.TOTAL DISBURSED(enter on line 1603) | 4,160.55 |
| 1108. Title Insurance to<br>(includes above item numbers       ) | | **N. Net Settlement** | |
| 1109. Lender's coverage      $N/A | | | |
| 1110. Owner's coverage      $N/A | | 1600. Loan Amount | $ 7,035.96 |
| 1111. Mortgage Impairment Insurance to | | 1601. Plus Cash/Check from Borrower | $ |
| 1112. Tax Related Service Fee to | 0.00 | 1602. Minus Total Settlement Charges (line 1400) | $ 535.70 |
| **1200. Government Recording and Transfer Charges:** | | 1603. Minus Total Disbursements to Others (line 1526) | $ 4,160.55 |
| 1201. Recording fees: | 25.65 | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period required by law) | $ 2,339.71 |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps: | | | |
| 1204. Recording Tax       to $     10.65 (P.O.C) | 0.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Overnight Delivery Fee to | 0.00 | | |
| 1304. Flood Certification Fee to | 0.00 | | |
| 1305.<br>to | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | 535.70 | | |

Borrower(s) Signature(s):

x _C. H. Kinsey_                    _Janie Kinsey_
  C H KINSEY                       JANIE L KINSEY

28525-5  6/2001

form HUD-1A (2/94)
ref. RESPA

**Original (Branch)        Copy (Customer)**

# MORGAGE

THIS MORTGAGE is made this  30th  day of        April        ,  2002   , between the Grantor,
C.H. KINSEY AND WIFE, JANIE L. KINSEY

(herein "Borrower"),

and the Mortgagee,  CITIFINANCIAL CORPORATION
a corporation organized and existing        under the laws of        Delaware                               ,
is CITIFINANCIAL DOTHAN CHEROKEE AL  36303                                      , whose address
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $        7,035.96        ,
which indebtedness is evidenced by Borrower's note dated     04/30/2002        and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the
indebtedness, if not sooner paid, due and payable on  05/15/2007   ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to
Lender and Lender's successors and assigns with power of sale, the following described property located in the County of
HENRY                        , State of Alabama:

LOT NO. 32 IN PARKWOOD ACRES SUBDIVISION, A SUBDIVISION IN HENRY
COUNTY, ALABAMA, AS SHOWN BY PLAT AND SURVEY OF SAID SUBDIVISION
RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF HENRY COUNTY,
ALABAMA, IN TOWN PLAT BOOK 1, AT PAGE 106.

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns, forever, together with
all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of
which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing,
together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the
"Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage and deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the U. S. Postal address of the Property or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish the notice of sale once a week for three consecutive weeks in some newspaper published in HENRY                    County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of said County. Lender shall deliver to the purchaser Lender's deed conveying the Property so sold. Lender or Lender's designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in the Mortgage or (ii) entry of a judgment enforcing the Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall

continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead, Dower and Curtesy.** Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all right of dower and curtesy in the Property.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**REQUEST FOR NOTICE OF DEFAULT**
——— **AND FORECLOSURE UNDER SUPERIOR** ———
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the presence of :

_____     _____ (Seal)
                                       C.H. KINSEY                    -Borrower

_____     _____ (Seal)
                                       JANIE L. KINSEY                -Borrower

STATE OF ALABAMA,     HENRY _____ County ss:

On this ___30TH___ day of ___APRIL___ , ____2002___ , I, _____
a Notary Public in and for said county and in said state, hereby certify that ___C.H. KINSEY AND WIFE___
___JANIE L. KINSEY_____ , whose name(s) ___ARE___ signed to the foregoing
conveyance, and who ___ARE___ known to me, acknowledged before me that, being informed of the contents of
the conveyance, _T_ he _Y_ executed the same voluntarily and as _____
act on the day the same bears date.

Given under my hand and seal of office this the ___30TH___ day of ___APRIL___ , ____2002___ .

My Commission expires: ___4-27-2004___

This instrument was prepared by: _____     _____
                                                             Notary Public
                                 2407 MONTGOMERY HWY STE 1
                                 DOTHAN, AL  36303

Alabama 1596-6 1/98     **Original (Recorded)     Copy (Branch)     Copy (Customer)**     Page 4 of 4
——— (Space Below This Line Reserved For Lender and Recorder) ———

**AutoPay Advantage**

**PRE-AUTHORIZED PAYMENT ENROLLMENT**

I (we) authorize CITIFINANCIAL CORPORATION and the financial institution listed below to transfer (debit) money from the indicated checking account for payment of my loan.

| 1 | CUSTOMER NAME<br>C H KINSEY<br>JANIE L KINSEY | LOAN ACCOUNT NUMBER<br>126995 | |
|---|---|---|---|
| | ADDRESS<br>RR 2 BOX 284<br>HEADLAND AL 36345 | HOME TELEPHONE NUMBER<br>334 585-3413 | WORK TELEPHONE NUMBER<br>334 999-9999 |

| 2 | FINANCIAL INSTITUTION NAME | CREDIT UNION<br>☐ Yes ☐ No |
|---|---|---|
| | ADDRESS (Street/City/State/Zip Code) | |

**3**  *A check marked "VOID" must be attached to this Enrollment.*

BANK ROUTING NUMBER            CHECKING ACCOUNT NUMBER

*Write in the digits between these symbols from bottom of check.*

JANE DOE
112233 CANARSIE STREET
BROOKLYN, NY 11215

1234
1-2/210

PAY TO THE
ORDER OF

DOLLARS

The XYZ Bank Corporation
2 New York Plaza, New York, NY 10001

For

⑆ 021000021 ⑆ 017 1 155641 ⑆' 1234

*NOTE: Bank Routing and Account numbers may not appear in this order. Look for the symbols shown by the arrows.*

I (we) agree to the terms on the bottom of this application.

| 4 | Payer Signature (as you would sign your check)     Date | Payer Signature (as you would sign your check)     Date |
|---|---|---|

## PROVISIONS AND SERVICE AGREEMENT FOR PRE-AUTHORIZED PAYMENT SERVICE

**Billing Questions.** If you have any questions about AutoPay please call your local branch.

**Stop Payments.** You may stop any automatic payment by notifying your financial institution at least three business days prior to the payment date. However, as when you stop payment on a check, you are responsible for any charges this may involve. You may be required to send written confirmation of the stop payment to your financial institution. Please advise us of any requested stop payment.

**Record of Payment.** The amount and date of your automatic transfer will be shown on your regular bank statement. This is your proof of payment. If there is a question about a transfer, or if the amount differs from your statement, to initiate an investigation you must notify us and your financial institution within 60 days of the date of the statement on which the error is first reflected. Your financial institution will advise you of your rights in the case of an error.

**Availability of Funds.** You are responsible for having enough money in the account you selected on the payment date. You may be charged should your transfer be returned due to insufficient funds. Also, your pre-authorized payment service may be cancelled if three payments are returned for any reason in a 12-month period.

**Payment Date.** You have been notified of the amount and due date of your regularly scheduled payments. The amount of the automatic transfer may change due to interest rate adjustments, increases or decreases in insurance premiums, or other changes. Appropriate funds will be transferred from your checking account on the day your payment is due. If a payment is due on a weekend or holiday, your account will be debited on the next business day.

**Termination.** This authorization will remain in effect until we receive written notice from you 30 days prior to the cancellation date or until your pre-authorized payment service has been terminated.

**Account/Address Changes.** Please notify us of any account or address changes as soon as possible to ensure timely payments.

29312-6 12/2001                                        Original (Branch)

(Lender)

Policy/Certificate No. _____126995_____

# ACKNOWLEDGMENT OF INSURANCE LIMITATIONS IN THE AMOUNT AND/OR TERM OF CREDIT INSURANCE

## PLEASE READ THIS DISCLOSURE CAREFULLY

The undersigned has obtained a loan from the above-mentioned lender evidenced by a promissory note dated 04/30/2002 . In connection with the loan, the undersigned has voluntarily chosen to purchase optional credit insurance. The terms of the insurance protection are as described in the policy(s)/certificate(s) of insurance identified above, which has been delivered to the undersigned.

**(A) CREDIT LIFE INSURANCE**--Credit life insurance has been obtained upon the borrower(s) named as insured in the policy(s)/certificate(s) of insurance. The original amount of decreasing credit life insurance is $ ___7,035.96 which may be less than the amount of your loan. Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions.

**(B) CREDIT ACCIDENT AND HEALTH INSURANCE**--Credit accident and health insurance has been obtained upon the borrower(s) named as insured(s) and provides an initial benefit of $ N/A_____ per month in the event the insured(s) becomes disabled in accordance with the terms of the insurance policy/certificate. The maximum number of monthly benefits payable for each separate occurrence of disability is 60. Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions.

**(C) CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE**--Credit involuntary unemployment insurance has been obtained upon the borrower(s) named as insured(s) and provides an initial benefit of $ N/A_____ per month in the event the insured(s) becomes involuntarily unemployed in accordance with the terms of the insurance policy/certificate. The maximum number of monthly benefits payable for each separate occurrence of involuntary unemployment is N/A___ . Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions. (For Members of the Armed Forces: No credit involuntary unemployment insurance benefits will be paid as a result of dishonorable discharge or separation from service at the conclusion of an active duty commitment.)

**AGE LIMITATIONS APPLY**--Review your Policy(s)/Certificate(s) for age limitations applicable to your coverage(s).

**The undersigned(s) realize that if benefits should become payable, said benefits may not be sufficient to repay the loan in full or meet the monthly payments for the full term of the loan. The undersigned(s) may be required to pay monies in order to completely repay the debt even if insurance benefits have been paid or are being paid.**

The undersigned(s) acknowledge receipt of a completed copy of this Acknowledgment this 30th day of April_____, 2002 .

Insured - _____    Joint Insured - _____
      C H KINSEY                                      JANIE L KINSEY

36555-4 12/2001                    Original (Branch)        Copy (Customer)

Fair Credit Reporting Act Notice to Applicant

Lender is affiliated with other Associates companies ("Affiliates"). In order for you to learn about the credit or other offerings of our Affiliates you authorize and instruct us to provide to our Affiliates any credit information about you that you have provided on the application for credit or information that we obtained from any credit reporting agency or third party. If you do not want to authorize and instruct us to provide any credit information to our Affiliates, you may advise us by writing to our office. For your request to be effective, you must include your name, address, telephone number and social security number in any correspondence to us. Upon receipt of your request we will promptly cease any distribution of your credit information.

_____

(Lender Corporate Name)

| ORIGINAL (1) |
| BRANCH COPY (1) |

616202 Rev. 9/99

03119.02

*Authorization to*
**ASSOCIATES INSURANCE COMPANY**

HOME OFFICE ▪ SOUTH BEND, INDIANA
ADMINISTRATIVE OFFICE:
250 CARPENTER FREEWAY ▪ IRVING, TEXAS 75062-2710
P.O. BOX 660028 ▪ DALLAS, TEXAS 75266-0028

**(A stock insurance company, herein called the Company)**

**HHG -- PERSONAL PROPERTY (World Wide)**

**INSTALLMENT FLOATER**
**CERTIFICATE OF INSURANCE**

| MASTER POLICY NUMBER | CERTIFICATE NUMBER | BRANCH | BRANCH CODE |
|---|---|---|---|
| EM 200 | 3065778 | DOTHAN CHEROKEE | 3268 |

12:01 A.M. STANDARD TIME

| EFFECTIVE DATE | ACCOUNT NUMBER | ORIGINAL AMOUNT OF INSURANCE | TERM IN MONTHS | PREMIUM | MINIMUM RETAINED PREMIUM (IF APPLICABLE) | COVERAGES |
|---|---|---|---|---|---|---|
| 11/07/00 | 0245145 | 1,000 | 18 | $ *****22.30* | $ 5.00 | FIRE, INLAND MARINE AND EXTENDED COVERAGE |

| CREDITOR ASSURED | ASSOCIATES FINANCIAL SERVICES | DEBTOR INSURED | JANIE L KINSEY |
|---|---|---|---|
| LOCATION OF PROPERTY | NUMBER AND STREET RR 2 BOX 284 | CITY AND STATE | HEADLAND          AL |

PROPERTY INSURED

**SEE ATTACHED RETAIL INSTALLMENT CONTRACT OR SCHEDULE A.**

**DEFINITIONS**

Throughout this certificate:

1. "You" and "your" means the person(s) in whose name this certificate has been issued; the debtor (insured) shown above.
2. "We", "us" and "our" means the insurance company.
3. "Lender" means the creditor from which you borrowed money, or financed your purchase.
4. "Personal Property" means the property described above as "Property Insured".

**A. PROPERTY COVERED AND AMOUNT OF INSURANCE**

For you and members of your family residing with you, we cover your personal property:

1. Anywhere in the world;
2. Except as stated otherwise in this certificate.

Should loss occur, payment shall be made to both you and the Lender as interests appear at the time of loss.

This certificate is made and accepted subject to compliance with all applicable provisions. This includes any provisions that may be added, as provided in this certificate.
IN WITNESS THEREOF, we have executed and attested to this certificate.

Secretary

President

**THIS CERTIFICATE DOES NOT PROVIDE COVERAGE FOR LOSS CAUSED BY THEFT.**

## B. SPECIAL EXTENSION

You may use up to 10% of the original amount of insurance:

1. If you are a tenant of the described residence; and
2. Loss by a peril insured against has occurred to:
   a. improvements;
   b. alterations; or
   c. additions
   you have made to the residence.

## C. PERILS INSURED

### FIRE AND INLAND MARINE

We insure for direct and accidental loss to your personal property caused by:

1. Fire and lightning; measures used by civil authorities to combat fire;
2. Windstorm and hail;
3. Explosion, riot, riot attending a strike, civil commotion;
4. Vehicles or aircraft. This includes collision, overturning or derailment of any transporting conveyance;
5. Sudden and accidental damage from smoke. This peril does not include smoke from agricultural smudging or industrial operations;
6. Falling objects. The outside roof or walls of the building containing the covered property must first be damaged by the falling objects;
7. Collapse of buildings or any of their parts;
8. Weight of ice, snow or sleet. The building containing the covered property must first be physically injured by the weight of ice, snow or sleet;
9. Landslide;
10. Vandalism and malicious mischief;
11. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air-conditioning system, or household appliance. This peril does not cover loss caused by water which backs up through sewers or drains;
12. Sudden and accidental damage to electrical appliances or devices from artificially generated electrical current. This peril does not include loss to a television picture tube;
13. Earthquake;
14. Extended Coverage. This means loss caused by:
    a. flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water; or
    b. spray from any of these,
    all whether driven by wind or not.
15. Burglary. This means the illegal taking of insured property from within the premises by a person making illegal entry therein by actual force and violence. There must be visible marks made by:
    a. tools;
    b. explosives;
    c. electricity or chemicals upon; or,
    d. physical damage
    to the outside of the premises at the place of entry.
    However, $50.00 is deducted from the amount of each loss caused under the coverage provided by this paragraph.
16. Robbery. This means the illegal taking of another's property by:
    a. force; or,
    b. threat of force.
    However, $50.00 is deducted from the amount of each loss caused under the coverage provided by this paragraph.

## D. GENERAL EXCLUSIONS

### We don't insure against:

1. Loss or damage caused by slow decay, wear and tear, insect, vermin, or any damage while the property is being cleaned, repaired, renovated, renewed, refurbished, rebuilt or worked upon in any like manner.
2. Breakage of fragile objects unless caused by fire.
3. Loss or damage to any type of motor vehicle, land conveyance, farm equipment or boats and their equipment, furnishings and accessories. This certificate does, however, insure outboard motorboats, sailboats, rowboats and canoes:
   a. up to $500 per loss; and
   b. against all insured perils.
   This includes their equipment, furnishings and accessories. While such property is afloat, there is no coverage against perils 2., 4., and 7. of Section C.

BORROWER COPY (1)

**Authorization to**

## ASSOCIATES INSURANCE COMPANY

HOME OFFICE • SOUTH BEND, INDIANA
ADMINISTRATIVE OFFICE:
250 CARPENTER FREEWAY • IRVING, TEXAS 75062-2710
P.O. BOX 660028 • DALLAS, TEXAS 75266-0028

**(A stock insurance company, herein called the Company)**

**HHG -- PERSONAL PROPERTY (World Wid**

**INSTALLMENT FLOATER
CERTIFICATE OF INSURANCE**

| MASTER POLICY NUMBER | CERTIFICATE NUMBER | BRANCH | BRANCH CODE |
|---|---|---|---|
| EM 200 | 3065778 | DOTHAN CHEROKEE | 3268 |

12:01 A.M. STANDARD TIME

| EFFECTIVE DATE | ACCOUNT NUMBER | ORIGINAL AMOUNT OF INSURANCE | TERM IN MONTHS | PREMIUM | MINIMUM RETAINED PREMIUM (IF APPLICABLE) | COVERAGES |
|---|---|---|---|---|---|---|
| 11/07/00 | 0245145 | 1,000 | 18 | $ *****22.30* | $ 5.00 | FIRE, INLAND MARINE AND EXTENDED COVERAGE |

| CREDITOR ASSURED | ASSOCIATES FINANCIAL SERVICES | DEBTOR INSURED | JANIE L KINSEY |
|---|---|---|---|
| LOCATION OF PROPERTY | NUMBER AND STREET  RR 2 BOX 284 | CITY AND STATE  HEADLAND | AL |

**PROPERTY INSURED**

## SEE ATTACHED RETAIL INSTALLMENT CONTRACT OR SCHEDULE A.

### NOTE: NON-COMPULSORY INSURANCE VOLUNTARILY PURCHASED BY DEBTOR

This authorization is for the convenience and optional use of the Master Policy Holder when statutory or regulatory authority requires written authorization for insurance. Signature hereon is not a condition to effect coverage.

I hereby give authorization to the insurance company indicated above to effect insurance coverage on property described above for a term as shown above and declare that the value of my insured property is not less than the amount of insurance.

I hereby declare that the purchase of the above insurance is entirely voluntary and has not been made compulsory by the creditor and that the creditor has in no way led me to believe that such insurance was prerequisite to the extending of credit to me.

I further declare that the option has been extended to me to purchase this insurance from any insurer or agent of my own choice. I freely choose the insurer and agent to whom the authorization is given.

The creditor to whom I have applied for a loan has made specific inquiry as to the existence of valid and collectible insurance on the collateral securing said loan. My reply to this inquiry is indicated as follows:

☐   I have no valid and collectible insurance to offer the creditor.

☐   Any other applicable insurance is not available to assign or offer the creditor.

I authorize the creditor to deduct the premium from the proceeds of my note.

I hereby acknowledge this insurance can be cancelled with full return of premiums within thirty (30) days of issue date if the Creditor/Loss Payee is provided with a Loss Payable Endorsement on a like insurance certificate of a company qualified to do business in the state in which this insurance is issued.

I further declare that I have read or had read to me this statement before signing this authorization.

### THIS CERTIFICATE DOES NOT PROVIDE COVERAGE FOR LOSS CAUSED BY THEFT.

WITNESS _____   DEBTOR _____

631198 REV 7-95

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |

00044

OPTIONAL CONTINUATION and/or CANCELLATION

**OPTION NO. 1**                                    **(WHEN SIGNED SEND TO COMPANY WITH MONTHLY REPORT)**

I, the named insured in the certificate described above, certify that I am unable to surrender and deliver said certificate to the insurance company indicated above and I agree to indemnify and protect the said insurance company indicated above against any claim or loss that may be asserted against said Company under said certificate by any person or persons and that I further request cancellation of said certificate and accept receipt of the unearned portion of the premium calculated thereon; and that I further agree and understand that this certificate shall terminate and cease to exist at 12:01 A.M., Standard Time at my address on the date shown below.

DATE OF CANCELLATION _____ , 19____ RETURN PREMIUM _____ $ _____

WITNESS _____ INSURED _____

**(WHEN SIGNED RETAIN FOR YOUR RECORD)**
THIS OPTION CANNOT BE USED IN STATES WHERE CANCELLATION IS MANDATORY.

**OPTION NO. 2**

I, the named Insured in the certificate described above hereby elect to continue in force until expiration the above described installment floater insurance certificate rather than to cancel as of this date and accept refund of unearned premium. I understand that the creditor lienholder will have no further right of participation in my certificate and that my benefits in case of claim will accrue to myself.

WITNESS _____ INSURED _____

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ DECEMBER 18, 1998 _____ ;

   or

(2)  the date you received your Truth in Lending disclosures;

   or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 ____
(date)
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    |    _____
Consumer's Signature                                                               |    Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of
_____ DECEMBER _____ , ___ 1998 .

_____
                                                    Consumer

_____
                                                    Consumer

| ORIGINAL (1) |
| BORROWER COPY (2) |
| ✓ CO-BORROWER COPY (2) |

00004.03

## NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is _____ DECEMBER 18, 1998 _____ ;

    or

(2)  the date you received your Truth in Lending disclosures;

    or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
Consumer's Signature                                                                             Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of
                                                                                                                       (date)
_____ DECEMBER _____ , __ 1998 .

_____
                                                                Consumer

_____
                                                                Consumer

| ORIGINAL (1) |
| --- |
| ✓ BORROWER COPY (2) |
| CO-BORROWER COPY (2) |

610864 REV. 10-98

00004.03

# NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**
You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ DECEMBER 18, 1998 _____

or

(2) the date you received your Truth in Lending disclosures;

or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____
_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____
(Address of Creditor's Place of Business)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
(date)
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
Consumer's Signature                                                          Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of
_____ DECEMBER _____ , ___ 1998 ___

_____
Consumer

_____
Consumer

| ORIGINAL (1) |
| ✓ BORROWER COPY (2) |
| CO-BORROWER COPY (2) |

610864 REV. 10-98

00004.03

# Our Privacy Notice

| Customer Name and Address: | Account No. | Loan Date: |
|---|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | 126995 | 04/30/2002 |

Keeping customer information secure is a top priority for all of us at CitiFinancial*. We are providing you this privacy notice to help you understand how we handle the personal information about you that we collect and may disclose. This notice tells you how you can limit our disclosure of personal information about you. The provisions of this notice will apply to former customers as well as current customers unless we indicate otherwise.

## Our Policies and Practices to Protect Your Personal Information

We protect personal information we collect about you by maintaining physical, electronic, and procedural safeguards that meet or exceed applicable law. Third parties who have access to personal information must agree to follow appropriate standards of security and confidentiality.

We train people who work for us how to properly handle personal information and we restrict access to it. As a current customer, you can rely on the Citigroup Privacy Promise for Consumers that is followed by the Citigroup family of companies. It is found at the end of this notice.

## Categories of Personal Information We Collect And May Disclose

The personal information we may collect about you comes from various sources including:

- Information we receive from you on applications or other forms, such as name, address, social security number, telephone number, income, and occupation.
- Information about your transactions with us, our affiliates, or nonaffiliated third parties, such as account balances and payment history, and account activity.
- Information we receive from a consumer reporting agency, such as your credit bureau reports and other information relating to your creditworthiness.
- Information we receive about you from other sources, such as your employer and other third parties.

* All references to CitiFinancial in this notice refer to the subsidiary of CitiFinancial Credit Company which is maintaining your account. These subsidiaries include: CitiFinancial Alabama, Inc., CitiFinancial Company, CitiFinancial Consumer Services, Inc., CitiFinancial Corporation, CitiFinancial of Virginia, Inc., CitiFinancial Services, Inc., CitiFinancial Inc., CitiFinancial of Mississippi, CitiFinancial Services, Inc. and City Loan Financial, Inc.

We may disclose any of the above information that we collect to affiliates and nonaffiliated third parties as described below.

## Categories of Affiliates To Whom We May Disclose Personal Information

Our affiliates are the family of companies controlled by Citigroup, Inc. Affiliates to whom we may disclose personal information about you are in several different businesses, including banking, credit cards, consumer finance, securities and insurance. Our affiliates do business under names that include Citibank, Associates, CitiMortgage, Travelers Insurance, Primerica and Salomon Smith Barney.

## Categories of Nonaffiliated Third Parties To Whom We May Disclose Personal Information

Nonaffiliated third parties are those not part of the family of companies controlled by Citigroup, Inc. We may disclose personal information about you to the following types of nonaffiliated third parties:

- Financial services providers, such as companies engaged in banking, credit cards, consumer finance, securities, and insurance.
- Non-financial organizations, such as companies engaged in direct marketing and the selling of consumer products and services.

If you check **Box 1** on the **Privacy Choices Form**, we will not make those disclosures except as follows. First, we may disclose information about you as described in "Categories of Personal Information We Collect and May Disclose" section of this notice to nonaffiliated third parties that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements. Second, we may disclose personal information about you to nonaffiliated third parties as permitted by law, including disclosures necessary to process and service your account.

# Our Privacy Notice

notice applies only to those customers ("you") of CitiFinancial ("your lender") who have purchased insurance products in connection with their loan. Your insurer ("us" or "we") is the company with whom you have your policy*.

We are providing you with this privacy notice to help you understand how we handle the personal information about you that we collect. The provisions of this notice will apply to former clients as well as our current clients unless we state otherwise.

We protect personal information about you by maintaining physical, electronic, and procedural safeguards that meet or exceed applicable law. Third parties who have access to personal information must agree to follow appropriate standards of security and confidentiality.

We train people who work for us how to properly handle personal information and we restrict access to it. You can also rely on the Citigroup Privacy Promise for Consumers, which your lender has provided to you, that is followed by the Citigroup family of companies.

We may collect personal information about you when you apply for insurance and when we process an insurance claim. The information comes from various sources including:
- Information we receive from you on applications or claims forms, such as name, address, social security number,
- telephone number, income, and occupation; Information about your transactions with us, our affiliates, or nonaffiliated third parties, such as account balances,
- payment history, and account activity; and Information we receive about you from other sources, such as your employer and other third parties.

We do not disclose personal information about you with third parties except as follows: First we may disclose information about you to third parties that perform services on our behalf. Second, we may disclose personal information about you to third parties as permitted by law, such as disclosures necessary to process and service your account, to protect against fraud, and to protect the security or confidentiality of our customers' records.

* "We" includes the following insurance companies: American Health and Life Insurance Company, Gulf Insurance Company and Triton Insurance Company.

, SBY JANIE L KINSEY                                    126995        09/30/2002

# The Citigroup Privacy Promise for Consumers

While information is the cornerstone of our ability to provide superior service, our most important asset is our customers' trust. Keeping customer information secure, and using it only as our customers would want us to, is a top priority for all of us at CitiFinancial, a member of the Citigroup family of companies.

Here, then, is our promise to our individual customers:

1.  We will safeguard, according to strict standards of security and confidentiality, any information our customers share with us.

2.  We will limit the collection and use of customer information to the minimum we require to deliver superior service to our customers, which includes advising our customers about our products, services and other opportunities, and to administer our business.

3.  We will permit only authorized employees, who are trained in the proper handling of customer information, to have access to that information. Employees who violate our Privacy Promise will be subject to our normal disciplinary process.

4.  We will not reveal customer information to any external organization unless we have previously informed the customer in disclosures or agreements, have been authorized by the customer, or are required by law or our regulators.

5.  We will always maintain control over the confidentiality of our customer information. We may, however, facilitate relevant offers from reputable companies. These companies are not permitted to retain any customer information unless the customer has specifically expressed interest in their products or services.

6.  We will tell customers in plain language, initially and at least once annually, how they may remove their names from marketing lists. At any time, customers can contact us to remove their names from such lists.

7.  Whenever we hire other organizations to provide support services, we will require them to conform to our privacy standards and to allow us to audit them for compliance.

8.  For purposes of credit reporting, verification and risk management, we will exchange information about our customers with reputable reference sources and clearing-house services.

9.  We will not use or share – internally or externally – personally identifiable medical information for any purpose other than the underwriting or administration of a Customer's policy, claim or account, or as disclosed to the customer when the information is collected, or to which the customer consents.

10.  We will attempt to keep customer files complete, up to date, and accurate. We will tell our customers how and where to conveniently access their account information (except when we're prohibited to do so by law) and how to notify us about errors which we will promptly correct.

We will continuously assess ourselves to ensure that customer privacy is respected. We will conduct our business in a manner that fulfills our Promise in the many nations in which we do business.

To file a Privacy complaint, write to:
Privacy Officer
CitiFinancial Credit Company
300 St. Paul Place, BSP12C
Baltimore, MD 21202

**ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY**
A Tennessee Stock Insurance Company, herein called the Company

Admin Office: P.O.Box 223727, Dallas, Texas 75222-3727
Home Office: 25 Century Blvd. Ste. 600, Nashville, TN 37214

## INSURANCE SCHEDULE

| CREDITOR BENEFICIARY | ACCOUNT NUMBER | | |
|---|---|---|---|
| TRANSOUTH FINANCIAL CORP.<br>2623 MONTGOMERY HWE ST E<br>DOTHAN       AL 363041081 | 0301646 | **GROUP POLICY NUMBER** | **GC4895-S** |

| | | | |
|---|---|---|---|
| | | ORIGINAL AMOUNT OF DECREASING LIFE INSURANCE | $ *****8,001.22* |
| SECOND BENEFICIARY | | AMOUNT OF LEVEL LIFE INSURANCE | $ NONE |
| | | Monthly Disability Indemnity (Borrower Only) | $ NONE |

| BORROWER (called you) ADDRESS | | AGE | |
|---|---|---|---|
| C H KINSEY<br>RT 2 BOX 284<br>HEADLAND       AL 36345 | | 48 | **INSURANCE PREMIUM CHARGE** |

| CO-BORROWER | AGE | Single Decreasing Life Premium | $ N/A |
|---|---|---|---|
| JANIE L | 41 | Joint Decreasing Life Premium | $ ****505.93* |
| Effective Date of Insurance        12/23/98 | | Single Level Life Premium | $ N/A |
| | | Joint Level Life Premium | $ N/A |
| TERM OF DECREASING LIFE INSURANCE | 60    mos | | |
| TERM OF LEVEL LIFE INSURANCE | N/A    mos | DISABILITY INSURANCE PREMIUM | $ N/A |
| TERM OF DISABILITY INSURANCE | N/A    mos | | |
| Maximum Amount of Life Insurance | $ 100,000.00 | Waiting Period | 7 Days |
| | | Elimination Period | NONE Days |
| Maximum Disability Benefit | $ 27,000.00 | TOTAL CREDIT LIFE AND DISABILITY INSURANCE PREMIUM | $ *******505.93* |
| Maximum Monthly Disability Indemnity | $ 750.00 | | |

The only insurance effective under this Certificate is that for which a premium is paid.

**NOTE -   THE INSURANCE PROVIDED HEREUNDER MAY NOT COMPLETELY PAY OFF YOUR LOAN.
MAXIMUM TERM OF LIFE INSURANCE 120 MONTHS (10 YEARS)
MAXIMUM TERM OF DISABILITY INSURANCE 36 MONTHS (3 YEARS)**

**WHAT YOU GET**
We certify that if we have been paid the premium shown in the schedule, you are insured for the coverage shown in the schedule, subject to the terms of the group policy issued to the creditor.

**WHO GETS PAID**
Claim payments are made to the creditor beneficiary named in the schedule to pay off or reduce your debt. If claim payments are more than the balance on your debt, the difference will be paid to you or to the second beneficiary named in the schedule, if any, or to your estate.

**WHAT WE WILL PAY**
**Single Life Insurance Benefit.** If you die while insured for single life insurance coverage, we will pay the amount of insurance in force at the time of your death after we receive proof of your death.

**Joint Life Insurance Benefit.** If you or your co-borrower die while insured for joint life coverage, we will pay the amount of insurance in force at the time you or your co-borrower dies after we receive proof of death. Only one death benefit is payable under this certificate.

**Amount of Life Insurance.** The amount of life insurance during the first month of coverage is the original amount of life insurance shown in the schedule. Thereafter, the amount of life insurance is the unpaid principal balance due on the loan on the date of the insured borrower's death unless the original loan balance exceeds the maximum amount of life insurance shown in the schedule. If the original loan exceeds this maximum, the life insurance benefit will not completely pay off your loan. We'll determine the amount of life insurance in two steps. First we'll divide the maximum amount of life insurance by the original principal balance to obtain a ratio. Then we'll multiply this ratio by the unpaid principal balance on the date of death. The result will be the amount of life insurance benefit we'll pay.

**Amount of Level Life Insurance.** The amount of level life insurance remains as the amount of level life insurance shown in the schedule until the end of the term of level life insurance shown in the schedule.

**Total Disability Insurance Benefit.** If you are insured for total disability insurance, we will pay a benefit if you file written proof that you became totally disabled while insured and continued to be totally disabled for more than the waiting period shown in the schedule. Payment will be calculated from the first day of disability following the elimination period shown in the schedule. The benefit will be equal to 1/30th of your monthly disability indemnity in the chedule for each day of disability to be compensated. Payments will stop when you are not totally disabled anymore or when benefits are paid to the end of the term of disability insurance shown in the Schedule, whichever comes first. The maximum monthly benefit is limited to the maximum monthly disability benefit shown in the schedule.

**WITHIN 10 DAYS FROM THE DATE THE INDEBTEDNESS IS INCURRED, THE BORROWER SHALL BE PERMITTED TO RETURN THE CERTIFICATE OF INSURANCE TO THE CREDITOR AND TO RECEIVE A REFUND OF ANY PREMIUM PAID FOR THE INSURANCE IF NOT SATISFIED WITH THE INSURANCE FOR ANY REASON.**

44-4895 Rev. 11/96

| ORIGINAL (1) |
|---|
| ✓ BORROWER COPY (1) |

674249 Rev. 6-97

00345A.04

**Definition of Total Disability.** During the first 12 consecutive months of total disability total disability means that you are not able to perform the important duties of your occupation because of sickness or accidental injury and are receiving regular care and treatment by a licensed physician or practitioner of the healing arts. After the first 12 consecutive months of total disability, the definition changes and requires that you not be able to perform the duties of any occupation for which you are reasonably qualified by education, training, or experience. You will be required to give us written proof of your continuing total disability at reasonable intervals.

## WHAT WE WON'T PAY

**Misstated Age.** If you stated your age on the scheduled inception date of the insured indebtedness will be 65 or less, and this is not correct, we will return your premium when we discover this and will not pay any benefits. This also applies to your co-borrower, if you applied for joint life coverage.

**Suicide.** We won't pay any claim if you commit suicide within 12 months of the effective date shown in the schedule, but we will refund the life insurance premium. This also applies to your co-borrower, if you applied for joint life coverage.

**Total Disabilities Not Covered.** We won't pay the claim or refund the premium if disability is a result of (1) pregnancy or childbirth whether existing on the date the certificate is issued to any borrower or developing subsequent thereto; provided, however, that disability resulting from complications of pregnancy or childbirth shall be covered; (2) war, declared or undeclared, or act of war; (3) intentionally self-inflicted injuries; (4) operating, riding in or descending from a non-scheduled aircraft; (5) pre-existing conditions which manifested themselves to the insured debtor by requiring medical diagnosis or treatment, or would have caused a reasonably prudent person to have sought the medical diagnosis or treatment, within six months preceding the taking of the application for insurance and which caused loss within six months following the effective date of coverage; provided, however, that disability commencing thereafter resulting from such condition shall be covered; (6) foreign travel or residence outside the United States.

## PARTIAL PAYOFF

If the original amount of life insurance shown in the schedule is less than the original amount of your debt, the life insurance benefit may not completely pay off your debt. See section titled "WHAT WE WILL PAY" to calculate the partial payoff.

If the monthly disability indemnity shown in the schedule is less than your monthly payment, you will have to pay the creditor the difference each month.

NOTE: If the term of the insurance shown in the schedule is less than the actual term of your loan, the insurance will not remain in force for any months remaining after the end of the term of insurance.

## WHEN INSURANCE STOPS - REFUNDS

This insurance stops at the end of the term shown in the schedule, when any life insurance benefit is paid, or when your loan is paid off, renewed or refinanced, whichever happens first. This insurance will also stop if the collateral for the loan is repossessed or its title is transferred. If your insurance stops before the end of the term shown in the schedule, you will be given a refund or a credit on your account of unearned premium. Refunds for decreasing credit life insurance and disability insurance will be calculated according to the actuarial method, for level life insurance, refunds will be calculated on a pro-rata basis. Refunds or credits of less than $1.00 won't be made.

## WHAT YOUR CONTRACT IS AND HOW YOUR STATEMENTS AFFECT IT

The group policy, the application for the group policy, and the attached application of borrower, if any, are the complete contract of insurance. All statements made by you in your application are considered to have been made to the best of your knowledge and belief. No statement can be used to void this insurance or deny a claim unless that statement is in your signed application. After 1 year (ninety (90) days for amount less than $1,000) from the date of the application, no statement made by you in your application can be used to void this insurance or deny a claim unless that statement was made fraudulently. If you stated that you will be age 66 or older on the inception date of the loan and we do not return your premium within 75 days of the effective date, you are insured.

## RULES FOR FILING A TOTAL DISABILITY CLAIM

You must write us or our agent about your total disability claim within 30 days after the beginning of your disability or as soon after that as you can. We will send you claim forms within 15 days after you tell us about the claim. If we don't send the forms in 15 days you can simply send us written proof of your total disability. The proof must show the date and cause of the total disability and how serious it is, and it must be signed by a physician or chiropractor. The proof of total disability must be sent to us no later than 90 days after your total disability ends. If it is impossible to file within 90 days, you must file as soon as you can. Unless you have been legally incapable of filing the proof of total disability, we won't accept it if it is filed after one year from the time it should have been filed. You can't start any legal action until 60 days after you send us the proof of your total disability, and you can't start any legal action more than 3 years after the proof is filed.

## RULES FOR FILING A LIFE CLAIM

We must be given a certified copy of the death certificate as proof of a life claim.

## CONFORMITY WITH STATE STATUTES

Any part of the group policy which, on the effective date of this group policy, conflicts with the statutes of the state where this group policy was delivered, is changed to conform to the minimum standards of those statutes.

## PHYSICAL EXAMINATION AND AUTOPSY

We at our own expense have the right, and you must allow us the opportunity, to examine your person as often as is reasonably required while a claim is pending and to make an autopsy in case of death, if it is not forbidden by law.

**44-4895 Rev. 11/96**

674249 Rev. 6-07
00345B.04

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

# DISCLOSURE STATEMENT

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY,C H<br>KINSEY,JANIE L<br>RT 2 BOX 284<br>HEADLAND      AL    36345 | TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN        AL    36303-2600 |
| CO-BORROWER: | |

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| 12/18/98 | 0301646 |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.84 % | $    3929.05 | $    7505.93 | $    11434.98 |

**PAYMENT SCHEDULE** – Payments are payable monthly

1st Payment Date
02/01/99

| 60   Payments   1   at $      216.72 followed by 59 at $      190.14 followed by 000 at $        $.00 |
|---|

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty. You may be entitled to a rebate of part of the surcharge. You will not be entitled to a rebate of the loan fee.

SECURITY:  [X]  You are giving a security interest in your real estate located at: _____
_____RT 2 BOX 284_____HEADLAND_____AL_____
[ ]  You are giving a security interest in the real estate being purchased and which is located at: _____
_____

ASSUMPTION: If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, security interests and prepayment refunds.

[ ] This is a variable interest rate loan.       _____        _____
                                                                            BORROWER                                       BORROWER

[X] This is a fixed interest rate loan.         _____        _____
                                                                            BORROWER                                       BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from this insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | _____ months, beginning on the Effective Date of Insurance | $       $.00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | _060_ months, beginning on the Effective Date of Insurance | $    505.93 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | _____ months, beginning on the Effective Date of Insurance | $       $.00 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | _____ months, beginning on the Effective Date of Insurance | $       $.00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION: You may cancel all, but not part, of the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made. The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account. Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

_____                    _____
WITNESS                                                            BORROWER

                                                                        _____
                                                                        BORROWER

| ORIGINAL (1) |
|---|
| ✓ BORROWER COPY (1) |
| CO-BORROWER COPY (1) |
| EXAMINER COPY (1) |

667092 REV. 8-08

01745A.11

ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C)  $ ____7505.93____

A. AMOUNT GIVEN TO YOU DIRECTLY: $ ____4689.85____  B. AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____$.00____

    Check No. ____011935____ $ ____4689.85____

C. AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | |
|---|---|---|
| AND MERCURY FINANCE    011933 $ 1098.00 | To Insurance Co. for Credit Life . . . . . . . . . . . $ | 505.93 |
| AND MONEYTREE    011934 $ 703.00 | To Insurance Co. for Credit Accident & Health  $ | $.00 |
| _____ $ $.00 | To Insurance Co. for Involuntary | |
| _____ $ $.00 |   Unemployment Insurance. . . . . . . . . . . . . $ | $.00 |
| _____ $ $.00 | To Public Officials  . . . . . . . . . . . . . . . . . . . $ | 24.15 |
| _____ $ $.00 | Fees for Real Estate Transaction: | |
| _____ $ $.00 | To Appraiser . . . . . . . . . . . . . . . . . . . . . . . . $ | 285.00 |
| _____ $ $.00 | To _____ | |
| _____ $ $.00 |   for Abstract . . . . . . . . . . . . . . . . . . . . . $ | $.00 |
| _____ $ $.00 | To Insurance Co. for Title Insurance. . . . . . . . . $ | 50.00 |
| _____ $ $.00 | To _____ | |
| _____ $ $.00 |   for Title Examination . . . . . . . . . . . . . . . . . $ | $.00 |
| _____ $ $.00 | To _____ | |
| _____ $ $.00 |   for Credit Report . . . . . . . . . . . . . . . . . . . . $ | $.00 |
| _____ $ $.00 | TO NATIONAL REAL ESTATE FOR | |
| _____ $ $.00 |      TITLE SEARCH | 150.00 |
| _____ $ $.00 | | |
| _____ $ $.00 | | |
| _____ $ $.00 | | |
| _____ $ $.00 | | |

D. PREPAID FINANCE CHARGE (not part of "Amount Financed"):

    Broker Fee Paid by Borrower . . . . . . . . . . . . . . . . . . . . . . . $ ____$.00____ (1)

    Surcharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ____120.00____ (2)

    Loan Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ____375.29____ (3)

    TOTAL PREPAID FINANCE CHARGE. . . . . . . . . . . . . . . $ ____495.29____ (1)+(2)+(3)

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

# DISCLOSURE STATEMENT

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY,C H<br>KINSEY,JANIE L<br>RT 2 BOX 284<br>HEADLAND       AL    36345 | TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN           AL    36303-2600 |
| CO-BORROWER: | |

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| 12/18/98 | 0301646 |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.84 % | $    3929.05 | $    7505.93 | $    11434.98 |

| PAYMENT SCHEDULE – Payments are payable monthly | 1st Payment Date<br>02/01/99 |
|---|---|

60   Payments    1   at $    216.72  followed by  59   at $    190.14  followed by  000  at $    .00

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE:  If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty.  You may be entitled to a rebate of part of the surcharge.  You will not be entitled to a rebate of the loan fee.

SECURITY:  [X]  You are giving a security interest in your real estate located at: _____
RT 2 BOX 284 _____  HEADLAND _____  AL._____

[ ]  You are giving a security interest in the real estate being purchased and which is located at: _____

ASSUMPTION:  If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, security interests and prepayment refunds.

[ ]  This is a variable interest rate loan.    _____        _____
                                                              BORROWER                                    BORROWER

[X]  This is a fixed interest rate loan.       _____        _____
                                                              BORROWER                                    BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below.  Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from this insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | _____ months, beginning on the Effective Date of Insurance | $     .00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | 060 months, beginning on the Effective Date of Insurance | $   505.93 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | _____ months, beginning on the Effective Date of Insurance | $     .00 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | _____ months, beginning on the Effective Date of Insurance | $     .00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION:  You may cancel all, but not part of, the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made.  The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account.  Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

_____                              _____
        WITNESS                                                                    BORROWER

                                                                     _____
                                                                              BORROWER

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |
| ✓ CO-BORROWER COPY (1) |
| EXAMINER COPY (1) |

557092 REV. 8-98                                                                                    01745A.11

ITEMIZATION OF AMOUNT FINANCED (Sum of A, B & C)  $ _____ 7505.93 _____

A. AMOUNT GIVEN TO YOU DIRECTLY: $ _____ 4689.85 _____  B. AMOUNT PAID ON YOUR ACCOUNT (NO. _____ ) $ _____ $.00 _____

         Check No. _____ 011935 _____ $ _____ 4689.85 _____

C. AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

| | | |
|---|---|---|
| AND MERCURY FINANCE    011933 $ 1098.00 | To Insurance Co. for Credit Life .............. $ | 505.93 |
| AND MONEYTREE    011934 $ 703.00 | To Insurance Co. for Credit Accident & Health  $ | $.00 |
| _____ $ _____ $.00 | To Insurance Co. for Involuntary | |
| _____ $ _____ $.00 |   Unemployment Insurance. .............. $ | $.00 |
| _____ $ _____ $.00 | To Public Officials ...................... $ | 24.15 |
| _____ $ _____ $.00 | Fees for Real Estate Transaction: | |
| _____ $ _____ $.00 | To Appraiser ......................... $ | 285.00 |
| _____ $ _____ $.00 | To _____ | |
| _____ $ _____ $.00 |   for Abstract ......................... $ | $.00 |
| _____ $ _____ $.00 | To Insurance Co. for Title Insurance. ......... $ | 50.00 |
| _____ $ _____ $.00 | To _____ | |
| _____ $ _____ $.00 |   for Title Examination ................... $ | $.00 |
| _____ $ _____ $.00 | To _____ | |
| _____ $ _____ $.00 |   for Credit Report ..................... $ | $.00 |
| _____ $ _____ $.00 | TO NATIONAL REAL ESTATE | |
| _____ $ _____ $.00 | FOR TITLE SEARCH | 150.00 |
| _____ $ _____ $.00 | | |
| _____ $ _____ $.00 | | |
| _____ $ _____ $.00 | | |

D. PREPAID FINANCE CHARGE (not part of "Amount Financed"):

Broker Fee Paid by Borrower ....................... $ _____ $.00 _____ (1)

Surcharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 120.00 _____ (2)

Loan Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 375.29 _____ (3)

TOTAL PREPAID FINANCE CHARGE. .............. $ _____ 495.29 _____ (1)+(2)+(3)

667092

01745B.04

**LENDER:**

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

TRANSOUTH FINANCIAL CORPORATION

8604 2623 MONTGOMERY HWE ST E DOTHAN          ALABAMA
BRANCH CODE, STREET ADDRESS, CITY AND STATE

| ACCOUNT NUMBER | DUE | LOAN DATE | | LAST PAYMENT DATE | BROKER FEE PAID BY BORROWER (1) | | |
|---|---|---|---|---|---|---|---|
| 0301646 | 01 | 12/18/98 | | 01/01/04 | $ .00 | | |

| BORROWER | FEES | 509.15 | SURCHARGE (2) 120.00 | LOAN FEE (3) 375.29 | INTEREST (4) 3433.76 | (1)+(2)+(3)+(4)+(5) 3929.05 | FINANCE CHARGE |
|---|---|---|---|---|---|---|---|
| KINSEY,C H | CREDIT LIFE INS. PREM. | 505.93 | CREDIT A&H INS. PREM. $ .00 | | | AMOUNT FINANCED (6) 7505.93 | |
| RT 2 BOX 284 HEADLAND | (5) | $ .00 | | PRINCIPAL BALANCE (1)+(2)+(5)+(6) 8001.22 | | TOTAL OF PAYMENTS (5)+(6) 11434.98 | |
| AL 36345 | | | | | | | |

PAYMENT SCHEDULE – PAYMENTS ARE PAYABLE MONTHLY

| 60 | PAYMENTS 1 AT $ | 216.72 | FOLLOWED BY 59 AT $ | 190.14 | FOLLOWED BY 000 AT $ | $ .00 | 1ST PAYMENT DATE 02/01/99 |
|---|---|---|---|---|---|---|---|

CO-BORROWER (SPOUSE)  KINSEY,JANIE L   CO-BORROWER (NON-SPOUSE)

☒ AGREED RATE OF INTEREST: ___14.95___ % per year on the unpaid principal balance.

☐ AGREED RATE OF INTEREST: THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____%, which is the published rate as of the last business day of _____ ; therefore, the initial interest rate is _____% per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____% per year nor more than _____% per year. The interest rate will not change before the First Payment Date.

Adjustments in the Agreed Rate of Interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter so that the total amount due under this Loan Agreement will be paid by the last payment date. TranSouth waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

REPAYMENT
I promise to pay you at your office, the principal balance together with interest figured at the Agreed Rate of Interest checked above until fully paid.

I will pay principal and interest by making payments each month. I will make my payments as set forth in the Payment Schedule. Payments will be made every month beginning on the first payment date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the maturity date, I will pay these amounts in full on that date.

I agree to pay interest after maturity at the Agreed Rate of Interest.

LATE CHARGES
If any payment is past due 10 days or more, I agree to pay you a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

BAD CHECK CHARGE
If any check I give as payment of this indebtedness is returned unpaid by a bank or other organization, I will pay a charge of $25.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

PREPAYMENT
I have the right to make prepayments of principal at any time. When I make a prepayment, I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no portion of the loan fee will be rebated. No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be refunded on a daily pro rata basis; however, you may retain an amount of no less than $25.00.

SECURITY
I give you a Real Estate Mortgage dated the same as this loan agreement to assure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

ARBITRATION
The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS WHICH BORROWER AGREES TO, WHICH CONSTITUTE A PART OF THIS NOTE.

The Alternative Mortgage Transaction Parity Act of 1982 governs certain provisions of this loan.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_____
(AGENT FOR LENDER)

_____
(BORROWER)

_____
(BORROWER)

| ORIGINAL (1) | |
|---|---|
| ✓ BORROWER COPY (1) | |
| CO-BORROWER COPY (1) | |

067092 REV. 8-96

01744A.11

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract or business arrangement.

**NOTICE**
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

STATEMENT OF ADDITIONAL PROVISIONS

DEFAULT — I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Real Estate Mortgage on the real estate given as security for this loan.

If I default, you have the right to declare the unpaid amount of my loan immediately due and payable without giving me notice or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Real Estate Mortgage that secures this loan and to require me to pay any deficiency.

DELAY IN ENFORCEMENT — You can delay enforcing your rights under this loan agreement without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

ATTORNEY FEES — If the amount I borrow is over $300, I agree to pay reasonable attorney's fees if this loan agreement is referred for collection to an attorney who is not your salaried employee. Fees will not be in excess of 15% of the unpaid debt.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

### ARBITRATION AGREEMENT

| BORROWER (Called "you" or "your")<br>KINSEY, C H<br>KINSEY, JANIE L<br>RT 2 BOX 284<br>HEADLAND            AL    36345 | LENDER (Called "we" or "us")<br>TRANSOUTH FINANCIAL CORPORATION<br><br>2623 MONTGOMERY HWE ST E<br>DOTHAN            AL 36303-2600 |
|---|---|
| Date of Loan      12/18/98 | Account Number        0301646 |

In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

**DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

**ARBITRATION RULES:** The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.

**STARTING ARBITRATION:** Either you or we can start arbitration any time a dispute arises between you and us. To start arbitration, you or we must do the following things:

1. Complete a Demand For Arbitration (a copy is attached to this agreement)
2. Send three copies of the completed Demand For Arbitration and three copies of this agreement, along with $125 filing fee, to:
   American Arbitration Association
   13455 Noel Road
   Two Galleria Tower, Suite 1750
   Dallas, TX 75240-6636
3. Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.

**COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expense of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.

612054 REV. 4-98                                                                02405A.06

**SELECTION OF ARBITRATION:** The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.

**LOCATION OF ARBITRATION:** The arbitration will take place in the county where you live unless you and we both agree to another location.

**ENFORCEMENT OF ARBITRATION DECISION:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**OTHER IMPORTANT AGREEMENTS:**

1. This agreement does not affect the applicability of any statute of limitations.
2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

You and we have entered into this agreement as of the "Date of Loan" written above.

Borrower
KINSEY,C H

Lender
TRANSOUTH FINANCIAL CORPORATION

By: _____

Borrower
KINSEY,JANIE L

You acknowledge that you have received a completed copy of this agreement together with a copy of the Commercial Arbitration Rules and one Demand for Arbitration form.

Initials                    Initials

612954

02465B.04

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

Lender: _____ TRANSOUTH FINANCIAL CORPORATION

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $ XXXXNAXXXX |
| 802 | Loan Discount (Points) | $ 375.29 |
| 803 | Appraisal Fee | $ 285.00 |
| 804 | Credit Report Fee | $ -0- |
| 808 | Broker Fee paid by borrower out of loan proceeds | $ -0- |
| 809 | Credit Investigation Fee | $ |
| 810 | Escrow Fee | $ XXXXNAXXXX |
| 811 | Document Preparation Fee paid to Lender | $ XXXXNAXXXX |
| 812 | Real Estate Taxes | $ XXXXNAXXXX |
| 813 | Broker Fee paid by Lender outside of closing | $ -0- |
| 814 | Surcharge | $ -0- (p.o.c.) |
| 815 | N/A | $ 120.00 |
| | | $ XXXXNAXXXX |
| 910 | Non-filing insurance | $ -0- |
| 1106 | Notary Fees | $ XXXXNAXXXX |
| 1107 | Attorney fees (including fees for document preparation and title work) | $ 100.00 (P.O.C.) |
| 1108 | Title Company (including fees for title insurance, title examination, document preparation or other fee. | $ 200.00 |
| 1111 | Lender's Security Insurance (MSIP) | $ XXXXNAXXXX |
| 1201 | Recording and Filing Fees | $ 24.15 |
| 1202 | City/County/Tax/Stamps | $ XXXXNAXXXX |
| 1203 | State Tax Stamps | $ XXXXNAXXXX |
| 1301 | Survey | $ -0- |
| 1302 | Pest Inspection Fee | $ -0- |
| 1305 | | $ -0- |
| 1306 | | $ -0- |

The estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

Lender: ___ TRANSOUTH FINANCIAL CORPORATION  2623 MONTGOMERY HIGHWAY SUITE E  DOTHAN, AL  36303

By: _____     Date: ___ 12/18/98 ___

Delivery of the above Good Faith Estimate of Settlement Costs, Required Providers Information Sheet, and, if applicable, the booklet(s) entitled, "Buying Your Home," "Consumer Handbook on ARMS," and "When Your Home Is On The Line," is hereby acknowledged.

Applicant _____
         Print

_____
         Signature

Co-Applicant _____
         Print

_____
         Signature

| | |
|---|---|
| | ORIGINAL (1) |
| | APPLICANT COPY (1) |
| ✓ | CO-APPLICANT COPY (1) |
| | BRANCH COPY (1) |

03265A.01

**Loan Agreement**

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

LENDER:

TRANSOUTH FINANCIAL CORPORATION

8604 2623 MONTGOMERY HWE ST E  DOTHAN        ALABAMA

BRANCH CODE, STREET ADDRESS, CITY AND STATE

| ACCOUNT NUMBER | DUE | LOAN DATE | | LAST PAYMENT DATE | BROKER FEE PAID BY BORROWER (1) | | | FINANCE |
|---|---|---|---|---|---|---|---|---|
| 0301646 | 01 | 12/18/98 | | 01/01/04 | $ .00 | | | CHARGE |

BORROWER

| | | FEES | SURCHARGE (2) | LOAN FEE (3) | INTEREST (4) | (1)+(2)+(3)+(4)+(5) |
|---|---|---|---|---|---|---|
| KINSEY,C H | | 509.15 | 120.00 | 375.29 | 3433.76 | 3929.05 |
| RT 2 BOX 284 | | CREDIT LIFE INS. PREM. | CREDIT A&H INS. PREM. | | | AMOUNT FINANCED (6) |
| HEADLAND | | 505.93 | $ .00 | | | 7505.93 |
| AL 36345 | | ILI $ .00 | | PRINCIPAL BALANCE (1)+(2)+(3)+(6) 8001.22 | | TOTAL OF PAYMENTS (6)+(8) 11434.98 |

| PAYMENT SCHEDULE – PAYMENTS ARE PAYABLE MONTHLY | | | | | 1ST PAYMENT DATE |
|---|---|---|---|---|---|
| 60 PAYMENTS 1 AT $ 216.72 | FOLLOWED BY 59 AT $ 190.14 | FOLLOWED BY 000 AT $ | $ .00 | | 02/01/99 |

CO-BORROWER (SPOUSE)                CO-BORROWER (NON-SPOUSE)

KINSEY,JANIE L

☒ AGREED RATE OF INTEREST:   14.95   % per year on the unpaid principal balance.

☐ AGREED RATE OF INTEREST: THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____%, which is the published rate as of the last business day of _____ ; therefore, the initial interest rate is _____% per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____% per year nor more than _____% per year. The interest rate will not change before the First Payment Date.

Adjustments in the Agreed Rate of Interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter so that the total amount due under this Loan Agreement will be paid by the last payment date. TranSouth waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

REPAYMENT    I promise to pay you at your office, the principal balance together with interest figured at the Agreed Rate of Interest checked above until fully paid.

I will pay principal and interest by making payments each month. I will make my payments as set forth in the Payment Schedule. Payments will be made every month beginning on the first payment date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the maturity date, I will pay these amounts in full on that date.

I agree to pay interest after maturity at the Agreed Rate of Interest.

LATE
CHARGES    If any payment is past due 10 days or more, I agree to pay you a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

BAD
CHECK
CHARGE    If any check I give as payment of this indebtedness is returned unpaid by a bank or other organization, I will pay a charge of $25.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

PREPAYMENT    I have the right to make prepayments of principal at any time. When I make a prepayment, I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no portion of the loan fee will be rebated. No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be refunded on a daily pro rata basis; however, you may retain an amount of no less than $25.00.

SECURITY    I give you a Real Estate Mortgage dated the same as this loan agreement to assure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

ARBITRATION    The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS
WHICH BORROWER AGREES TO, WHICH CONSTITUTE A PART OF THIS NOTE.

The Alternative Mortgage Transaction Parity Act of 1982 governs certain provisions of this loan.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ
THE CONTRACT BEFORE YOU SIGN IT.

_____        _____
(AGENT FOR LENDER)                    (BORROWER)

_____
(BORROWER)

| ORIGINAL (1) |
|---|
| BORROWER COPY (1) |
| ✓ CO-BORROWER COPY (1) |

667092 REV. 8-98                    01744A.11

| ACCOUNT NUMBER | DATE OF TRANSACTION |
|---|---|
| 126995 | 04/30/2002 |

| BORROWER(S)--(Name and Address) | CREDITOR--(Name and Address) |
|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CitiFinancial<br>2407 MONTGOMERY HWY<br><br>DOTHAN          AL36303 |

**Your Right to Cancel**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is stated above; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not support the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address stated above. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel the new transaction, you may do so by notifying us in writing at the address stated above.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____05/03/2002_____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____          _____
Borrower's Signature                              Date

Each of the undersigned acknowledges receipt of two copies of this Notice of Right to Cancel this __30th__ day of_____April_____ , 2002 .

_____
Borrower's Signature

_____
Borrower's Signature

26879-3 4/2000          **Original(Branch)    Copy(2 Each Customer)**

# ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY
### A Tennessee Stock Insurance Company, herein called the Company

Admin Office: P.O.Box 223727, Dallas, Texas 75222-3727
Home Office: 25 Century Blvd. Ste. 600, Nashville, TN 37214

## INSURANCE SCHEDULE

| CREDITOR BENEFICIARY | ACCOUNT NUMBER | GROUP POLICY NUMBER | GC4895-S |
|---|---|---|---|
| TRANSOUTH FINANCIAL CORP.<br>2623 MONTGOMERY HWE ST E<br>DOTHAN        AL 363041081 | 0301646 | ORIGINAL AMOUNT OF DECREASING LIFE INSURANCE | $ *****8,001.22* |
| | | AMOUNT OF LEVEL LIFE INSURANCE | $   NONE |
| SECOND BENEFICIARY | | Monthly Disability Indemnity (Borrower Only) | $   NONE |

| BORROWER (called you) | | AGE | | |
|---|---|---|---|---|
| ADDRESS   C H KINSEY<br>         RT 2 BOX 284<br>         HEADLAND       AL 36345 | | 48 | INSURANCE PREMIUM CHARGE | |
| CO-BORROWER | | AGE | Single Decreasing Life Premium | $   N/A |
| JANIE L | | 41 | Joint Decreasing Life Premium | $ ****505.93* |
| Effective Date of Insurance | 12/23/98 | | Single Level Life Premium | $   N/A |
| TERM OF DECREASING LIFE INSURANCE | 60 mos | | Joint Level Life Premium | $   N/A |
| TERM OF LEVEL LIFE INSURANCE | N/A mos | | DISABILITY INSURANCE PREMIUM | $   N/A |
| TERM OF DISABILITY INSURANCE | N/A mos | | | |
| Maximum Amount of Life Insurance | $ 100,000.00 | | Waiting Period | 7 Days |
| | | | Elimination Period | NONE Days |
| Maximum Disability Benefit | $ 27,000.00 | | TOTAL CREDIT LIFE AND DISABILITY INSURANCE PREMIUM | $ *******505.93* |
| Maximum Monthly Disability Indemnity | $ 750.00 | | | |

The only insurance effective under this Certificate is that for which a premium is paid.

**NOTE –   THE INSURANCE PROVIDED HEREUNDER MAY NOT COMPLETELY PAY OFF YOUR LOAN.
MAXIMUM TERM OF LIFE INSURANCE 120 MONTHS (10 YEARS)
MAXIMUM TERM OF DISABILITY INSURANCE 36 MONTHS (3 YEARS)**

## WHAT YOU GET
We certify that if we have been paid the premium shown in the schedule, you are insured for the coverage shown in the schedule, subject to the terms of the group policy issued to the creditor.

## WHO GETS PAID
Claim payments are made to the creditor beneficiary named in the schedule to pay off or reduce your debt. If claim payments are more than the balance on your debt, the difference will be paid to you or to the second beneficiary named in the schedule, if any, or to your estate.

## WHAT WE WILL PAY
**Single Life Insurance Benefit.** If you die while insured for single life insurance coverage, we will pay the amount of insurance in force at the time of your death after we receive proof of your death.

**Joint Life Insurance Benefit.** If you or your co-borrower die while insured for joint life coverage, we will pay the amount of insurance in force at the time you or your co-borrower dies after we receive proof of death. Only one death benefit is payable under this certificate.

**Amount of Life Insurance.** The amount of life insurance during the first month of coverage is the original amount of life insurance shown in the schedule. Thereafter, the amount of life insurance is the unpaid principal balance due on the loan on the date of the insured borrower's death  unless the original loan balance exceeds the maximum amount of life insurance shown in the schedule. If the original loan exceeds this maximum, the life insurance benefit will not completely pay off your loan. We'll determine the amount of life insurance in two steps. First we'll divide the maximum amount of life insurance by the original principal balance to obtain a ratio. Then we'll multiply this ratio by the unpaid principal balance on the date of death. The result will be the amount of life insurance benefit we'll pay.

**Amount of Level Life Insurance.** The amount of level life insurance remains as the amount of level life insurance shown in the schedule until the end of the term of level life insurance shown in the schedule.

**Total Disability Insurance Benefit.** If you are insured for total disability insurance, we will pay a benefit if you file written proof that you became totally disabled while insured and continued to be totally disabled for more than the waiting period shown in the schedule. Payment will be calculated from the first day of disability following the elimination period shown in the schedule. The benefit will be equal to 1/30th of your monthly disability indemnity in the  chedule for each day of disability to be compensated. Payments will stop when you are not totally disabled anymore or when benefits are paid to the end of the term of disability insurance shown in the Schedule, whichever comes first. The maximum monthly benefit is limited to the maximum monthly disability benefit shown in the schedule.

**WITHIN 10 DAYS FROM THE DATE THE INDEBTEDNESS IS INCURRED, THE BORROWER SHALL BE PERMITTED TO RETURN THE CERTIFICATE OF INSURANCE TO THE CREDITOR AND TO RECEIVE A REFUND OF ANY PREMIUM PAID FOR THE INSURANCE IF NOT SATISFIED WITH THE INSURANCE FOR ANY REASON.**

44-4895 Rev. 11/96

| ORIGINAL (1) |
|---|
| ✓ BORROWER COPY (1) |

674249 Rev. 6-97

00345A.04

**Definition of Total Disability.** During the first 12 consecutive months of total disability, total disability means that you are not able to perform the important duties of your occupation because of sickness or accidental injury and are receiving regular care and treatment by a licensed physician or practitioner of the healing arts. After the first 12 consecutive months of total disability, the definition changes and requires that you not be able to perform the duties of any occupation for which you are reasonably qualified by education, training, or experience. You will be required to give us written proof of your continuing total disability at reasonable intervals.

## WHAT WE WON'T PAY

**Misstated Age.** If you stated your age on the scheduled inception date of the insured indebtedness will be 65 or less, and this is not correct, we will return your premium when we discover this and will not pay any benefits. This also applies to your co-borrower, if you applied for joint life coverage.

**Suicide.** We won't pay any claim if you commit suicide within 12 months of the effective date shown in the schedule, but we will refund the life insurance premium. This also applies to your co-borrower, if you applied for joint life coverage.

**Total Disabilities Not Covered.** We won't pay the claim or refund the premium if disability is a result of (1) pregnancy or childbirth whether existing on the date the certificate is issued to any borrower or developing subsequent thereto; provided, however, that disability resulting from complications of pregnancy or childbirth shall be covered; (2) war, declared or undeclared, or act of war; (3) intentionally self-inflicted injuries; (4) operating, riding in or descending from a non-scheduled aircraft; (5) pre-existing conditions which manifested themselves to the insured debtor by requiring medical diagnosis or treatment, or would have caused a reasonably prudent person to have sought the medical diagnosis or treatment, within six months preceding the taking of the application for insurance and which caused loss within six months following the effective date of coverage; provided, however, that disability commencing thereafter resulting from such condition shall be covered; (6) foreign travel or residence outside the United States.

## PARTIAL PAYOFF

If the original amount of life insurance shown in the schedule is less than the original amount of your debt, the life insurance benefit may not completely pay off your debt. See section titled "WHAT WE WILL PAY" to calculate the partial payoff.

If the monthly disability indemnity shown in the schedule is less than your monthly payment, you will have to pay the creditor the difference each month.

NOTE: If the term of the insurance shown in the schedule is less than the actual term of your loan, the insurance will not remain in force for any months remaining after the end of the term of insurance.

## WHEN INSURANCE STOPS - REFUNDS

This insurance stops at the end of the term shown in the schedule, when any life insurance benefit is paid, or when your loan is paid off, renewed or refinanced, whichever happens first. This insurance will also stop if the collateral for the loan is repossessed or its title is transferred. If your insurance stops before the end of the term shown in the schedule, you will be given a refund or a credit on your account of unearned premium. Refunds for decreasing credit life insurance and disability insurance will be calculated according to the actuarial method, for level life insurance, refunds will be calculated on a pro-rata basis. Refunds or credits of less than $1.00 won't be made.

## WHAT YOUR CONTRACT IS AND HOW YOUR STATEMENTS AFFECT IT

The group policy, the application for the group policy, and the attached application of borrower, if any, are the complete contract of insurance. All statements made by you in your application are considered to have been made to the best of your knowledge and belief. No statement can be used to void this insurance or deny a claim unless that statement is in your signed application. After 1 year (ninety (90) days for amount less than $1,000) from the date of the application, no statement made by you in your application can be used to void this insurance or deny a claim unless that statement was made fraudulently. If you stated that you will be age 66 or older on the inception date of the loan and we do not return your premium within 75 days of the effective date, you are insured.

## RULES FOR FILING A TOTAL DISABILITY CLAIM

You must write us or our agent about your total disability claim within 30 days after the beginning of your disability or as soon after that as you can. We will send you claim forms within 15 days after you tell us about the claim. If we don't send you the forms in 15 days you can simply send us written proof of your total disability. The proof must show the date and cause of the total disability and how serious it is, and it must be signed by a physician or chiropractor. The proof of total disability must be sent to us no later than 90 days after your total disability ends. If it is impossible to file within 90 days, you must file as soon as you can. Unless you have been legally incapable of filing the proof of total disability, we won't accept it if it is filed after one year from the time it should have been filed. You can't start any legal action until 60 days after you send us the proof of your total disability, and you can't start any legal action more than 3 years after the proof is filed.

## RULES FOR FILING A LIFE CLAIM

We must be given a certified copy of the death certificate as proof of a life claim.

## CONFORMITY WITH STATE STATUTES

Any part of the group policy which, on the effective date of this group policy, conflicts with the statutes of the state where this group policy was delivered, is changed to conform to the minimum standards of those statutes.

## PHYSICAL EXAMINATION AND AUTOPSY

We at our own expense have the right, and you must allow us the opportunity, to examine your person as often as is reasonably required while a claim is pending and to make an autopsy in case of death, if it is not forbidden by law.

674249 Rev. 6-97
00345B.04

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

TRANSOUTH FINANCIAL CORPORATION
Lender: _____

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD–1 or HUD–1A settlement statement that you will be receiving at settlement. The HUD–1 or HUD–1A settlement statement will show you the actual cost for items paid at settlement.

| | | | |
|---|---|---|---|
| 801 | Loan Origination Fee | $ | XXXXNAXXXX |
| 802 | Loan Discount (Points) | $ | 375.29 |
| 803 | Appraisal Fee | $ | 285.00 |
| 804 | Credit Report Fee | $ | –0– |
| 808 | Broker Fee paid by borrower out of loan proceeds | $ | –0– |
| 809 | Credit Investigation Fee | $ | XXXXNAXXXX |
| 810 | Escrow Fee | $ | XXXXNAXXXX |
| 811 | Document Preparation Fee paid to Lender | $ | XXXXNAXXXX |
| 812 | Real Estate Taxes | $ | –0– |
| 813 | Broker Fee paid by Lender outside of closing | $ | –0– (p.o.c.) |
| 814 | Surcharge | $ | 120.00 |
| 815 | N/A | $ | XXXXNAXXXX |
| 910 | Non-filing insurance | $ | –0– |
| 1106 | Notary Fees | $ | XXXXNAXXXX |
| 1107 | Attorney fees (including fees for document preparation and title work) | $ | 100.00 (P.O.C.) |
| 1108 | Title Company (including fees for title insurance, title examination, document preparation or other fee. | $ | 200.00 |
| 1111 | Lender's Security Insurance (MSIP) | $ | XXXXNAXXXX |
| 1201 | Recording and Filing Fees | $ | 24.15 |
| 1202 | City/County/Tax/Stamps | $ | XXXXNAXXXX |
| 1203 | State Tax Stamps | $ | XXXXNAXXXX |
| 1301 | Survey | $ | –0– |
| 1302 | Pest Inspection Fee | $ | –0– |
| 1305 | _____ | $ | –0– |
| 1306 | _____ | $ | –0– |

The estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

TRANSOUTH FINANCIAL CORPORATION 2623 MONTGOMERY HIGHWAY SUITE E  DOTHAN, AL  36303
Lender: _____

By: _____    Date: ___12/18/98___

Delivery of the above Good Faith Estimate of Settlement Costs, Required Providers Information Sheet, and, if applicable, the booklet(s) entitled, "Buying Your Home," "Consumer Handbook on ARMS," and "When Your Home Is On The Line," is hereby acknowledged.

Applicant _____
           Print

_____
           Signature

Co-Applicant _____
           Print

_____
           Signature



| | |
|---|---|
| | ORIGINAL (1) |
| ✓ | APPLICANT COPY (1) |
| | CO-APPLICANT COPY (1) |
| | BRANCH COPY (1) |

03265A.01

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

TRANSOUTH FINANCIAL CORPORATION

Lender: _____

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | | |
|---|---|---|---|
| 801 | Loan Origination Fee | $ | XXXXNAXXXX |
| 802 | Loan Discount (Points) | $ | 375.29 |
| 803 | Appraisal Fee | $ | 285.00 |
| 804 | Credit Report Fee | $ | -0- |
| 808 | Broker Fee paid by borrower out of loan proceeds | $ | -0- |
| 809 | Credit Investigation Fee | $ | XXXXNAXXXX |
| 810 | Escrow Fee | $ | XXXXNAXXXX |
| 811 | Document Preparation Fee paid to Lender | $ | XXXXNAXXXX |
| 812 | Real Estate Taxes | $ | -0- |
| 813 | Broker Fee paid by Lender outside of closing | $ | -0-           (p.o.c.) |
| 814 | **Surcharge** | $ | 120.00 |
| 815 | **N/A** | $ | XXXXNAXXXX |
| 910 | Non-filing insurance | $ | -0- |
| 1106 | Notary Fees | $ | XXXXNAXXXX |
| 1107 | Attorney fees (including fees for document preparation and title work) | $ | 100.00 (P.O.C.) |
| 1108 | Title Company (including fees for title insurance, title examination, document preparation or other fee. | $ | 200.00 |
| 1111 | **Lender's Security Insurance (MSIP)** | $ | XXXXNAXXXX |
| 1201 | Recording and Filing Fees | $ | 24.15 |
| 1202 | City/County/Tax/Stamps | $ | XXXXNAXXXX |
| 1203 | State Tax Stamps | $ | XXXXNAXXXX |
| 1301 | Survey | $ | -0- |
| 1302 | Pest Inspection Fee | $ | -0- |
| 1305 | _____ | $ | -0- |
| 1306 | _____ | $ | -0- |

The estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

Lender: TRANSOUTH FINANCIAL CORPORATION 2623 MONTGOMERY HIGHWAY SUITE E  DOTHAN, AL  36303

By: _____          Date: _____12/18/98_____ _____

Delivery of the above Good Faith Estimate of Settlement Costs, Required Providers Information Sheet and, if applicable, the booklet(s) entitled, "Buying Your Home," "Consumer Handbook on ARMS," and "When Your Home Is On The Line," is hereby acknowledged.

Applicant _____
                    Print

           _____
                    Signature

Co-Applicant _____
                    Print

           _____
                    Signature

667579 REV. 4-98 (Alabama)

| | |
|---|---|
| ORIGINAL (1) | |
| ✓ APPLICANT COPY (1) | |
| CO-APPLICANT COPY (1) | |
| BRANCH COPY (1) | |

03265A.01

PERSONAL LINES APPLICATION

**VESTA INSURANCE CORPORATION**
P. O. Box 43360
Birmingham, Alabama 35243
1-800-444-2955

COMPANY USE ONLY

| | Approved | Date Received |
|---|---|---|
| Agency _Driggers Ins Agency_ | Insured Number | Co. Code | Office No. |
| Agency No. _09 7637?_ | Policy Number | Line of Bus. | Underwriter |

## UNDERWRITING INFORMATION

| | | S.S. # | D.O.B. |
|---|---|---|---|
| Named Insured (Last, First, Middle) | C. H. Kinsey | 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 | 4-4-50 |
| Spouse's Name (Last, First, Middle) | Janie Kinsey | 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 | 3-3-57 |

If No Spouse: ☐ Single/Never Married ☐ Widowed ☐ Divorced - Month/Year: ☐ Separated - Month/Year: Phone No. 334 1585-3

Mailing Address _Route 2 Box 284 Abbeville Al 36310_ 36345
_Headland Al_ County: _Henry_

Property Location (if Different)
_Located in the Parkwood SD_ County: _Henry_

Previous Address if at Present Address Less Than One Year

Other Residence Premises Address

| Applicant's Occupation | ☐ Homemaker<br>☐ Retired<br>☐ Self-Employed | ☐ Unemployed/Disabled<br>☑ Employed | Name of Employer _Sills Pulpwood_<br>Occupation _Machine Operator_<br>Years Experience in current occupation _13 years_ |
|---|---|---|---|
| Spouse's Occupation | ☐ Homemaker<br>☐ Retired<br>☐ Homemaker | ☐ Unemployed/Disabled<br>☑ Employed | Name of Employer _Cane South Home Health Care_<br>Occupation _Nurse Asst_<br>Years Experience in current occupation _10_ |

Has any company cancelled, non-renewed, or refused to insure this applicant or any member of the household? ☑ No ☐ Yes - Explain in "Remark

Has the applicant or spouse had ☑ No If Yes, explain below. (If additional space is needed, use the "Remarks" Section)
any losses within the last 3 years? ☐ Yes

| Date of Loss | Detailed Description/Cause of Loss | Amount of Loss |
|---|---|---|
| | _during Opal had wind damage to roof_ | $ |
| | | $ |
| | | $ |
| | | $ |

Previous Ins. Cvg. Company _National Security_ Policy Number | Expiration Date | Dwelling Limit $ _25,000_
(If None, Explain) Name

Month/Year _7/86_ Purchase Price $ _25,000_
Purchased

If there have been improvements, list cost, description, and name of contractor in "Remarks" Section.

Heating - Primary ☑ Central ☐ Permanent ☐ Wood/Coal ☐ Freestanding ☐ Portable or Floor-Mounted Electric, ☐ Other-(Explain in the
or Supplemental Space Stove Fireplace Gas or Kerosene Space Heater "Remarks" Section)

Security ☐ Deadbolt Locks ☑ Smoke Detector ☐ Fire Extinguisher ☐ Local Burglar Alarm - Type, Make, Model:
Devices ☐ Central Station System - Reporting to:

Electrical System: ☑ Circuit Breakers ☐ Fuses Was Dwelling Built By A Qualified Contractor? ☐ Yes ☑ No Roof Material: ☑ Asphalt/Fiberglass ☐ Wo

Is any Business or Farming Conducted on Premises? ☐ Yes ☐ No If Yes, Explain in "Remarks" Section. Metal ☐ Other

Any Dogs on Premises? ☑ Yes ☐ No If Yes, Give Breed and Bite History in "Remarks" Section. N/A Age of Roof: _1996_ Yea

Coastal Is Risk Near Ocean, Gulf, ☐ Yes If Yes, Distance in Miles_____mi Or, Distance in Feet If Less Than 2 Miles, Provide
Exposure Bay Inlet or Sound? ☐ No If At Least 1 Mile:_____mi. If Less Than 1 Mile:_____ft. Elevation Above Sea Level:

## COVERAGE INFORMATION

| | Month-Day-Year To Month-Day-Year | ☐ Not Bound | IF THIS APPLICATION REPRESENTS NEW BUSINESS TO YOUR AGENCY, APPLICANT'S SIGNATURE IS REQUIRED ON NEXT PAGE. |
|---|---|---|---|
| Policy Term | _5-9-97_ To _5-9-98_ | ☑ Bound _5-9-97_ _12:30_ ☐ A.M. ☑ P.M.<br>Date Time | |

Check One: ☐ This is New Business ☐ This Business Has Been Written
☐ To This Agency _Delivered_ Through This Agency For: Years

Type of ☐ Low Value HO ☐ Spec HO ☐ Stand HO ☐ Pref HO ☐ Renters ☐ Condos ☐ Secondary HO ☐ Vintage HO Form N
Policy ☐ Low Value Dwl. ☐ Spec. Dwl. ☐ Spec Tenant Dwl. ☐ Other - Specify _Ho 3_

| COVERAGE AMOUNTS | DEDUCTIBLE (Section I): ☐ $100 ☑ $250 ☐ $500 ☐ $1,000 ☐ Other |
|---|---|
| A) Dwelling $ _75,000_ | Additional And Optional Coverages. Please Provide Endorsement No. and All Other Necessary Information. (For additional space use "Remarks" Section) |
| COMPLETE B. C. D. E. & F. ONLY IF LIMITS OTHER THAN BASIC ARE DESIRED | |
| B) Other Structures $ _7,500_ | ☑ Alarm or Fire Protection _5_ % |
| C) Personal Property $ _37,500_ | ☐ Personal Property Replacement Cost |
| D) Loss of Use $ _15,000_ | |
| E) Personal Liability $ _100,000_ | |
| F) Medical Payments $ _1,000_ | |

F-013, Ed. 9-94
Formerly A-386

Page 1 of 2

GULFinance / A Division of The Gulf Agency, Inc.
P.O. Box 235008  Montgomery, AL 36123-5008                    PAGE

**PREMIUM FINANCE AGREEMENT -- INSURED: READ BOTH PAGES BEFORE SIGNING**

This Agreement made, executed, and delivered this day, 05/13/97 , between

C. H. & Janie Kinsey
Route 2 Box 284                    HEADLAND              334-585-3416
                                                          AL 36345

...ereinafter referred to as Insured, and GULFinance, for financing the balance o...
...remiums listed on the following Scheduled Policies of Insurance:

| ...ffect | Term | Company / General Agency | Policy Number | Premiu... |
|---|---|---|---|---|
| 5/09/97 | 12 | Vesta Insurance Co. | | 982.00 |
| | | Griggs Insurance Agency | | |

| Total Premium | Down Payment | Amount Financed | Finance Charge | Total Payment | Annual % Rate | Monthly Payment | No. of Months | First Due |
|---|---|---|---|---|---|---|---|---|
| 982.00 | 245.50 | 736.50 | 56.40 | 792.90 | 18.02 | 88.10 | 9 | 06/... /97 |

...enholders:  Rural Ecomonic & Community Dev
              1849 A Ross Clark Cr SE
              DOTHAN                    AL 36301

**PAYMENT OF LOAN:**    In consideration of GULFinance's extension of credit to the
...sured,  and its payment of the premiums listed on this Agreement to  Insurance
...mpanies, or their Brokers or Agents on Insured's behalf;  and subject to terms
...sted on pages 1 and 2 of this Agreement, Insured promises to pay to GULFinance
...e total of payments according to the schedule above. A payment under Agreement
...all be deemed paid on the date it is physically received by GULFinance at its
...dress listed above and delinquent if not received on or before the due date.

...CEPTANCE:  Insured understands this Agreement shall not become effective until
...gned by Insured and Broker and accepted by GULFinance, and that neither Agency
... other entities issuing any Scheduled Policies of Insurance, nor Broker, is an
...ent of GULFinance.    GULFinance shall notify the Insured of its acceptance by
...ding payment coupons, or other applicable notice, and mailing such coupons or
...ice shall constitute acceptance and create a binding contract among parties.

...ICE TO INSURED:    Read and sign both pages of this Agreement.    Both pages 1
... 2 contain important terms.    By signing this Agreement,  Insured agrees to
... terms and conditions listed on both pages of Agreement and acknowledges that
...ured has received a true and complete copy thereof.

...URED'S SIGNATURE                                    DATE 5-22-97

... undersigned Broker understands and agrees that the provisions on page 2 of
...s Agreement are incorporated as a part of this Agreement.    (Broker GRIGG)

...ggs Insurance Agency          SIGNATURE

## PREMIUM FINANCE AGREEMENT -- PAGE 2

### TERMS AND CONDITIONS

ACCEPTANCE: Insured understands that this Agreement shall not become effective until it has been signed by Insured and Broker and has been accepted by GULFinance, and understands that neither the agency or other person issuing any of the Scheduled Policies of Insurance nor Broker is an agent of GULFinance. Rather, GULFinance shall notify Insured of its acceptance by sending payment coupons to Insured, or by other appropriate means in GULFinance's sole discretion, and only the mailing of (or other conveyance of) any such notice to Insured shall be deemed to constitute acceptance and to create a binding contract among the parties.

AGENCY DISCLOSURE: Insured agrees that the Broker named on this Agreement is the Insured's agent in this transaction, not GULFinance's, and GULFinance is not legally bound by anything the Broker represents to Insured, orally or in writing.

ARBITRATION: Any dispute or claim arising from or relating to this Agreement, or any clause thereof, or the relationships resulting therefrom, shall be resolved by binding arbitration in accordance with the rules, then existing, of the American Arbitration Association. This Agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act. All decisions of the arbitrator shall be binding on the parties and judgments upon any such decisions may be entered in any court having jurisdiction.

CANCELLATION: GULFinance may cancel any of the Scheduled Policies of Insurance and the unpaid balance due GULFinance shall be immediately payable by Insured if any of the following occur: (a) Insured does not pay any scheduled payment according to the terms of this Agreement (b) Insured does not comply with any of the terms of this Agreement (c) Insured or Insurer voluntarily or involuntarily becomes the subject of bankruptcy, receivership, or any kind of insolvency proceeding (d) Insured is a business and stops doing business or ceases to be qualified to do business. GULFinance at its option may enforce payment of this debt without recourse to the security given to GULFinance.

COLLECTIONS: It is agreed that GULFinance is empowered to hire a collection agency, and to institute legal action if necessary, to recover any delinquent, unpaid amounts due under this Agreement. Insured agrees to pay attorney fees up to 20% of the unpaid amount due or any amount allowed by a court in its judgment, whichever is greater.

FINANCE CHARGE: The finance charge shown on this Agreement begins to accrue as of the earliest policy effective date.

POLICY NOT YET ISSUED: If any of the Scheduled Policies of Insurance have not been issued at the time Insured executes this Agreement, it is understood that GULFinance has the power, if it accepts this Agreement, to fill in the name of the insurance companies and policy numbers when the policies are issued and this Agreement will be deemed to have been validly amended to include those terms as if they had been included upon initial submission of this Agreement to GULFinance. In addition, GULFinance hereby is authorized to correct patent errors or omissions on this Agreement.

POST-CANCELLATION PAYMENTS: Insured agrees that any payments made to GULFinance after mailing Notice of Cancellation on any of the Scheduled Policies of Insurance (1) may be credited to the Insured's account without affecting the acceleration of this Agreement (2) shall not obligate GULFinance to reinstate any canceled insurance policy (3) shall not operate automatically to reinstate any such canceled policy. Any money GULFinance receives from an insurance company shall be credited to the amount due GULFinance with any surplus being paid to whomever is entitled, subject to a nonrefundable charge of $15. No refund less than $1 shall be made. If a balance remains after GULFinance receives the unearned premiums, dividends, or loss payments from insurance company, Insured will pay balance to GULFinance with interest at the rate shown on this Agreement.

POWER OF ATTORNEY: Insured irrevocably appoints GULFinance its Attorney-In-Fact with full authority to cancel the insurance policies and receive all sums assigned to GULFinance or in which it has granted GULFinance a security interest. GULFinance may execute and deliver on Insured's behalf all documents, instruments of payment, forms and notices of any kind relating to the insurance policies in furtherance of this Agreement.

PREMIUM INCREASE: If an insurance company issuing any of the Scheduled Policies of Insurance increases its premium, or imposes an additional premium, such that the policy premium exceeds the premium disclosed in this Agreement, Insured agrees to pay the additional amount immediately.

REPAYMENT OF LOAN: For and in consideration of GULFinance's extension of credit to the Insured, and its payment of the premiums listed on this Agreement to the insurance companies, their brokers or agents on Insured's behalf; and subject to the terms listed on this Agreement, Insured promises to pay GULFinance the total of payments according to the Payment Schedule. A payment under this Agreement shall be deemed paid on the date it is physically received by GULFinance at its address listed on this Agreement and delinquent if not received at this address on or before the date it is due.

REPRESENTATION OF SOLVENCY: Insured represents that the Insured is not insolvent or presently the subject of any insolvency proceeding.

VERIFICATION: Insured agrees that GULFinance has the right, in its discretion, to contact the Insured, either before or after acceptance of this Agreement, to verify the information in this Agreement. Insured understands that Insured's credit history and any other relevant information concerning the Insured's creditworthiness may be obtained by GULFinance for the sole purpose of determining acceptance of this Agreement.

WARRANTY OF ACCURACY: Insured warrants to GULFinance that the Scheduled Policies of Insurance have been or will be issued to the Insured, are in full force and effect, and Insured has not assigned any interest in the policies except for interests of mortgagees, lien holders, or loss payees.

### BROKER REPRESENTATIONS

Broker certifies and agrees that: (1) the down payment shown on this Agreement has been paid by Insured and meets GULFinance's requirements (2) all Scheduled Policies of Insurance are, or will be, in force on the stated effective date and have been, or will be, delivered by Broker to Insured and the premiums are correct (3) Insured has authorized this transaction and recognizes the security interest created herein (4) no audit, reporting form, or fully earned premium policy is included in this Agreement (5) the policies can be canceled by Insured or company on 10 or 30 days' notice, the unearned premium will be computed on the standard short rate or pro rata table, and the down payment meets GULFinance's requirements for these cancellation conditions (6) this Agreement shall be a bona fide and binding contract upon acceptance by GULFinance (7) the signatures contained herein are genuine (8) a copy of this Agreement has been delivered to Insured (9) with respect to GULFinance, Broker acts as an independent contractor and nothing contained in this Agreement shall be construed to create the relation of principal and agent between GULFinance and Broker (10) Insured is not currently the subject of bankruptcy, insolvency or receivership proceedings (11) GULFinance has the right, but not obligation, to take every action necessary to collect upon and discharge this Agreement (12) Broker will hold in trust for GULFinance any return premiums paid or credited to Broker, directly or indirectly by any of the insurance companies, and will forward the gross return premiums to GULFinance; and that any lien Broker has on these return premiums is secondary to GULFinance's lien or security interest, and Broker will pay interest of 1.5% per month on the balance of any such amounts not paid within 45 days (13) Broker will notify GULFinance immediately upon acquiring knowledge of any change in the terms of any Scheduled Policies of Insurance (14) in the event that any Scheduled Policies of Insurance is endorsed or otherwise transferred, Broker will not have any power or authority to transfer this Agreement to any other person and will not make any attempt to do so (15) Broker has complied, and will at all times comply, with the Alabama Insurance Premium Finance Companies, as well as any amendments to those statutes or pertinent regulations by the Commissioner of Insurance (16) Broker will indemnify and hold GULFinance harmless for all liability and costs resulting to GULFinance from any breach of these covenants and from any actually or allegedly unauthorized or illegal transaction by Broker or anyone acting on Broker's behalf (17) Broker is within the scope of the persons bound by the clause captioned "ARBITRATION" and similarly agrees to submit any disputes arising from or relating to this Agreement or the relationships resulting hereunder to binding arbitration.