IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANIE L. KINSEY and C.H. KINSEY, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No.: 2:05-cv-636-F** |
| | ) | |
| C. LANCE GOULD, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR ALTERNATIVELY, TO COMPEL ARBITRATION AND STAY PROCEEDINGS, INCLUDING DISCOVERY

**COME NOW** Defendants CitiFinancial Corporation, n/k/a CitiFinancial Corporation, LLC, and TranSouth Financial Corporation, n/k/a CitiFinancial Auto Corporation (or collectively "Defendants"), without waiver of their defenses under the Federal Rules of Civil Procedure, or any other applicable rule of civil procedure, and without waiver of any and all defenses under the federal laws of bankruptcy, and hereby move this honorable Court for an order compelling the arbitration of Plaintiffs' claims in this matter, and dismissing their claims or, in the alternative, staying all proceedings pending the resolution of the arbitration.[1]

1.     Defendants' Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and Stay Proceedings, including Discovery (the "Motion"), is due to be granted because Plaintiffs entered into written arbitration agreements with Defendants, the scopes of which encompass Plaintiffs' claims in the above-styled action.  In addition, the

_____

[1] Simultaneously with the filing of this Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and Stay Proceedings, including Discovery, Defendants are filing an Objection to the Court's October 10, 2006 Order denying Defendants' Motion to Quash and to Dismiss.  Defendants do not waive their arguments set forth in the Motion to Quash and Dismiss by filing the instant Motion.

transactions at issue involve interstate commerce.    As such, all of the prerequisites to enforcement of arbitration agreements under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* are met, and Defendants' instant Motion is due to be granted.

2.        The Parties entered into written agreements to arbitrate.

3.        Plaintiffs entered into a loan with Defendant TranSouth Financial Corporation (or "TranSouth") on or about December 18, 1998.  (*See* Declaration of Teresa M. Baer, at Exhibit A, attached hereto as Exhibit 1.)  In connection with their 1998 TranSouth loan, Plaintiffs executed an arbitration agreement, wherein they agree to arbitrate any claims they have regarding their 1998 loan, as well as other disputes and claims against Defendants.  (Baer Dec., at Ex. A.)  The arbitration agreement provides, in pertinent part:

> In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

<div align="center">

\*    \*    \*

</div>

> **DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us.  This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:
> - your loan from us today;
> - any previous loan from us and any previous retail installment sales contract or loan assigned to us;
> - all the documents relating to this or any previous loan or retail installment sales contract;
> - any insurance purchased in connection with this or any previous loan or retail installment sales contract;
> - whether the claim or dispute must be arbitrated;
> - the validity of this arbitration agreement;
> - any negotiations between you and us;
> - any claim or dispute based on an allegation of fraud or misrepresentation;
> - any claim or dispute based on a federal or state statute; and
> - any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our

affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

\* \* \*

OTHER IMPORTANT AGREEMENTS:

\* \* \*

2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.

7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.

(Baer Dec., at Ex. A.)

4. Plaintiffs refinanced their 1998 TranSouth loan with Defendant CitiFinancial Corporation (an affiliate of TranSouth) on April 30, 2002. (*See* Baer Dec., at Exhibit B.) In connection with their 2002 CitiFinancial loan, Plaintiffs executed another arbitration agreement, wherein they agree to arbitrate any claims they have regarding their 2002 loan, as well as other disputes and claims against Defendants. The arbitration agreement provides, in pertinent part:

In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors, assigns, and representatives.
"We" or "Us" means the Lender under this Disclosure Statement, Note and Security Agreement, American Health & Life Insurance Company, Triton

Insurance Company, and any assignee of Lender, together with all of their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

* * *

Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment.

* * *

**Special Acknowledgments. You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will _not_ hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United**

**States Arbitration Act, 9 U.S.C. §§ 1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, (iv) rights to appeal an arbitration award are very limited, and (v) the rights of the parties hereunder may not be exactly mutual in all respects.**

(Baer Dec., at Ex. B (emphasis in original.))

5.    The scope of the arbitration agreements is broad and encompasses the claims Plaintiffs assert in the above-styled action.

6.    On or about July 7, 2005, Plaintiffs filed the above-styled action in this Court. They alleged "wrongdoing" regarding the loans Plaintiffs entered into with Defendants. (Compl. at p. 1.) They also asserted "negligence," "fraud," "trespass," "property loss," "oppression," "malice" "wanton," "wanton injury," "wanton negligence," "mental anguish," "confidentiality," and "discrimination." (*Id.* at pp. 3-4.) They do not allege any act or omission on the part of Defendants with respect to any of these "claims," except for the charge of "confidentiality," with respect to which they allege "Citifinancial has lost our identity social security number date of birth. All of our life we worried about who may use social security number in future or maybe after expiration of life." (*Id.* at p. 4.)

7.    After being ordered by this Court to do so, Plaintiffs then filed an amended complaint on July 27, 2005. In the amended complaint, Plaintiffs allege that Defendants made misrepresentations regarding their loans; failed to disclose the cost and term of credit insurance; lost their credit history; and generally list a number of other claims, without setting forth any supporting facts.

8.    Because Plaintiffs allege wrongdoing in connection with their loans and insurance obtained with respect to their loans, their allegations are squarely encompassed in the scope of the arbitration agreements they executed with Defendants

9.    The transactions at issue involve interstate commerce.

10.    Plaintiffs, who are alleged residents of the State of Alabama, entered into loan transactions with TranSouth, a South Carolina corporation with its principal place of business in South Carolina, as well as CitiFinancial, a Delaware corporation with its principal place of business in Delaware. (Baer Dec. ¶¶ 5, 8.)

11.    In addition, TranSouth is in the business of making consumer loans. (Baer Dec. ¶ 6.) All of TranSouth's loan operations necessarily involve interstate commerce. (*Id.*) For example, TranSouth funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a TranSouth loan transaction is closed, funds representing the loan proceeds are drawn on a line of credit with Bank One in Chicago, Illinois, and wired via Automated Clearing House ("ACH") directly to the individual closing the transaction. (*Id.*) Further, when TranSouth makes a loan to a customer, including Alabama customers, the TranSouth employee processing the transaction inputs customer data into a nationwide computer system, and that data is stored and updated in a database maintained by TranSouth in Roanoke, Texas. (*Id.*)

12.    Further, CitiFinancial is in the business of making consumer loans. (Baer Dec. ¶ 9.) All of CitiFinancial's loan operations necessarily involve interstate commerce. (*Id.*) For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. (*Id.*) When CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (*Id.*)

13.     Because all of Plaintiffs' claims against Defendants are subject to arbitration, Plaintiffs' claims are due to be dismissed. *See, e.g., Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1415-16 and 1418-19 (M.D. Ala. 1998) (finding that the matter was due to be dismissed with prejudice and sent to arbitration because "[w]here all of the issues raised in a complaint must be submitted to arbitration . . . a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy.").

14.     In the event this Court does not dismiss Plaintiffs' claims, all proceedings related to Plaintiffs' claims should be stayed pending the conclusion of the arbitration proceedings.

**WHEREFORE**, Defendants respectfully request that this Court grant its Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and to Stay Proceedings, including Discovery.

Respectfully submitted,

s/ Elizabeth B. Shirley
Reid S. Manley
Elizabeth B. Shirley

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN, LLP**
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: 205-251-3000
Facsimile: 205-458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the plaintiffs via First Class United States Mail, postage prepaid:

Janie L. Kinsey
C.H. Kinsey
420 County Road 250
Headland, Alabama 36345

s/ Elizabeth B. Shirley
OF COUNSEL

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JANIE L. KINSEY and C.H. KINSEY,       )
                                        )
    Plaintiffs,                          )
                                        )
v.                                      )     Case No.: 2:05-cv-636-F
                                        )
C. LANCE GOULD, et al.,                 )
                                        )
    Defendants.                          )

---

## DECLARATION OF TERESA M. BAER

---

**CITY OF BALTIMORE**          )

**STATE OF MARYLAND**          )

Pursuant to 28 U.S.C. § 1746, I, Teresa M. Baer, state as follows:

1.      My name is Teresa M. Baer. I am over the age of 19 years and I am competent to testify regarding the matters contained herein. I make this Declaration based upon my own personal knowledge and my review of relevant records, true and correct copies of which are attached hereto.

2.      I am authorized by the Defendants to execute documents on their behalf. I am familiar with the operations of Defendants.

3.      Citigroup, Inc. is the ultimate corporate parent of Associates First Capital Corporation. Associates First Capital Corporation is the parent corporation of CitiFinancial Credit Company (f/k/a Commercial Credit Corporation).

4.      CitiFinancial Credit Company is the parent corporation of CitiFinancial Auto Corporation (f/k/a TranSouth Financial Corporation) and CitiFinancial Corporation, LLC (f/k/a CitiFinancial Corporation).

5.    TranSouth Financial Corporation ("TranSouth") is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business in South Carolina.

6.    TranSouth is in the business of making consumer loans. All of TranSouth's loan operations necessarily involve interstate commerce. For example, TranSouth funds its loans made in Alabama with capital sources from outside the State of Alabama. Indeed, when a TranSouth loan transaction is closed, funds representing the loan proceeds are drawn on a line of credit with Bank One in Chicago, Illinois, and wired via Automated Clearing House directly to the individual closing the transaction. Further, when TranSouth makes a loan to a customer, including Alabama customers, the TranSouth employee processing the transaction inputs customer data into a nationwide computer system, and that data is stored and updated in a database maintained by TranSouth in Roanoke, Texas.

7.    TranSouth keeps true and correct copies of the loan agreements entered into between TranSouth, on the one hand, and borrowers, on the other hand. According to the business records of TranSouth, Janie L. Kinsey and C.H. Kinsey closed a loan with TranSouth on December 18, 1998. Attached to this Declaration as Exhibit A is a true and correct copy of the Disclosure Statement, Note and Security Agreement and Arbitration Agreement, executed in connection with the December 18, 1998 loan. These documents were prepared, signed, and are maintained in the regular course of the business of TranSouth, and it is and was the regular practice of TranSouth to prepare, have signed, and maintain such documents.

8.    CitiFinancial Corporation, LLC ("CitiFinancial") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Maryland.

2

CitiFinancial Corporation was organized and existing under the laws of the State of Delaware, with its principal place of business in Delaware.

9.    CitiFinancial is in the business of making consumer loans. All of CitiFinancial's loan operations necessarily involve interstate commerce. For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. Indeed, when a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. Further, when CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system.

10.    CitiFinancial keeps true and correct copies of the loan agreements entered into between CitiFinancial, on the one hand, and borrowers, on the other hand. According to the business records of CitiFinancial, Janie L. Kinsey and C.H. Kinsey closed a loan with CitiFinancial on April 30, 2002. Attached to this Declaration as Exhibit B is a true and correct copy of the Disclosure Statement, Note and Security Agreement and Arbitration Agreement, executed in connection with the April 30, 2002 loan. These documents were prepared, signed, and are maintained in the regular course of the business of CitiFinancial, and it is and was the regular practice of CitiFinancial to prepare, have signed, and maintain such documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Done this 17 day of October, 2006.

Teresa M. Baer

3

# EXHIBIT A



**DISCLOSURE STATEMENT**

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

| BORROWER (Called "you" or "your") | LENDER (Called "we" or "us") |
|---|---|
| KINSEY,C H<br>KINSEY,JANIE L<br>RT 2 BOX 284<br>HEADLAND      AL    36345 | TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN       AL    36303-2600 |

CO-BORROWER:

| DATE OF LOAN<br>12/18/98 | ACCOUNT NUMBER<br>●●●1646 |
|---|---|

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.84 % | $    3929.05 | $    7505.93 | $    11434.98 |

PAYMENT SCHEDULE - Payments are payable monthly

1st Payment Date
02/01/99

| 60 Payments | at $ | 216.72 | followed by | 59 | at $ | 190.14 | followed by | 000 | at $ | $.00 |

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE: If a payment is 10 days or more late, you will be charged 5% of the amount of the payment in default or $10.00, whichever is greater, but not to exceed $100.00.

PREPAYMENT: If you pay off early, you will not have to pay a penalty. You may be entitled to a rebate of part of the surcharge. You will not be entitled to a rebate of the loan fee.

SECURITY: ☒ You are giving a security interest in your real estate located at: _____
            RT 2 BOX 284              HEADLAND           AL
         ☐ You are giving a security interest in the real estate being purchased and which is located at: _____

ASSUMPTION: If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, security interests and prepayment refunds.

☐ This is a variable interest rate loan.

☒ This is a fixed interest rate loan.

BORROWER
BORROWER

BORROWER
BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from this insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | 060 months, beginning on the Effective Date of Insurance | $    505.93 | We want joint borrower credit life insurance. |
| Credit Accident and Health Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | _____ months, beginning on the Effective Date of Insurance | $    $.00 | I want involuntary unemployment insurance. |

CANCELLATION OPTION: You may cancel all, but not part of, the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made. The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account. Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

WITNESS

BORROWER

BORROWER

| ✓ | ORIGINAL (1) |
|---|---|
| | BORROWER COPY (1) |
| | CO-BORROWER COPY (1) |
| | EXAMINER COPY (1) |

667092 REV. 8-96

01745A.11

## Loan Agreement

ALABAMA
REAL ESTATE I.B.
VARIABLE - FIXED RATE

LENDER:
TRANSOUTH FINANCIAL CORPORATION

8604 2623 MONTGOMERY HWE ST E DOTHAN                    ALABAMA

BRANCH CODE, STREET ADDRESS, CITY AND STATE

| ACCOUNT NUMBER | DUE | LOAN DATE | LAST PAYMENT DUE | BROKER FEE PAID BY BORROWER (I) | | |
|---|---|---|---|---|---|---|
| 646 | 01 | 12/18/98 | 01/01/04 | $ .00 | | FINANCE CHARGE |

BORROWER
KINSEY,C H
RT 2 BOX 284
HEADLAND
AL 36345

| | FEES | SURCHARGE (2) | LOAN FEE (H) | INTEREST (H) | (1)+(2)+(2)+(H)+(h) |
|---|---|---|---|---|---|
| | 509.15 | 120.00 | 375.29 | 3433.76 | 3929.05 |
| | CREDIT LIFE INS. PREM. | CREDIT A&H INS. PREM. | | | AMOUNT FINANCED (9) |
| | 505.93 | $ .00 | | | 7505.93 |
| | A.B. | | PRINCIPAL BALANCE (1)+(2)+(9)+(9) | | TOTAL OF PAYMENTS (N)+(H) |
| | $ .00 | | 8001.22 | | 11434.98 |

PAYMENT SCHEDULE - PAYMENTS ARE PAYABLE MONTHLY

| | NET PAYMENT DATE |
|---|---|
| | 02/01/99 |

| 60 | PAYMENTS | 1 | AT $ | 216.72 | FOLLOWED BY | 59 | AT $ | 190.14 | FOLLOWED BY | 000 | AT $ | $ .00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

CO-BORROWER (SPOUSE)                    CO-BORROWER (NON-SPOUSE)

KINSEY,JANIE L

☒ AGREED RATE OF INTEREST:  14.95  % per year on the unpaid principal balance.
☐ AGREED RATE OF INTEREST: THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE "BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____%, which is the published rate as of the last business day of _____; therefore, the initial interest rate is _____% per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____% per year nor more than _____% per year. The interest rate will not change before the First Payment Date.

Adjustments in the Agreed Rate of Interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter, so that the total amount due under this Loan Agreement will be paid by the last payment date. TranSouth waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

REPAYMENT
I promise to pay you at your office, the principal balance, together with interest figured at the Agreed Rate of Interest checked above until fully paid.

I will pay principal and interest by making payments each month. I will make my payments as set forth in the Payment Schedule. Payments will be made every month beginning on the first payment date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the maturity date, I will pay these amounts in full on that date.

I agree to pay interest after maturity at the Agreed Rate of Interest.

LATE CHARGES
If any payment is past due 10 days or more, I agree to pay you a late charge equal to the greater of 5% of the amount of the payment in default or $10.00, but not to exceed $100.

BAD CHECK CHARGE
If any check I give as payment of this indebtedness is returned unpaid by a bank or other organization, I will pay a charge of $25.00, or an amount equal to the charge by the bank or organization for the return of the check, whichever is greater.

PREPAYMENT
I have the right to make prepayments of principal at any time. When I make a prepayment, I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no portion of the loan fee will be rebated. No refund of the surcharge will be made except that, if this loan is paid in full by any means within 90 days from the loan date, the surcharge will be refunded on a daily pro rata basis; however, you may retain an amount of no less than $25.00.

SECURITY
I give you a Real Estate Mortgage dated the same as this loan agreement to assure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

ARBITRATION
The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS
WHICH BORROWER AGREES TO, WHICH CONSTITUTE A PART OF THIS NOTE.

The Alternative Mortgage Transaction Parity Act of 1982 governs certain provisions of this loan.

I acknowledge receipt of a completely filled-in copy of this loan agreement.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ
THE CONTRACT BEFORE YOU SIGN IT.

_____
(AGENT FOR LENDER)

_____
(BORROWER)

_____
(BORROWER)

☑ ORIGINAL (1)
☐ BORROWER COPY (1)
☐ CO-BORROWER COPY (1)

667092 REV. 6-68                    01744A.11

0090959        **REAL ESTATE MORTGAGE**

STATE OF ALABAMA, County of _____HOUSTON_____

This Mortgage made and entered into on this the __18__ day of __DECEMBER__ _____, 1998 , by and between the

undersigned, __C.H. KINSEY AND WIFE JANIE L. KINSEY__ (hereinafter called Mortgagors, and TranSouth Financial

Corporation, a corporation hereinafter called "Corporation";

WITNESSETH: WHEREAS, Mortgagors are justly indebted to Corporation in the sum of __EIGHT THOUSAND ONE DOLLAR AND__

__AND 22/100***********************************************__ Dollars ($ __8001.22__ ),

together with interest at the rate provided in the loan agreement of even date herewith which is secured by this Mortgage.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the sum of $1.00 to the Mortgagors, cash in hand paid, the receipt of which is hereby acknowledged and for the purpose of securing the payment of the above-described loan agreement and the payment and performance of all the covenants and agreements hereinafter stated, the Mortgagors do hereby grant, bargain, sell and convey unto Corporation that property situated

in the County of _____HENRY_____ State of Alabama, described as follows, to wit:

LOT NO 32 IN PARKWOOD ACRES SUBDIVISION, A SUBDIVISION IN HENRY COUNTY,
ALABAMA, AS SHOWN BY PLAT AND SURVEY OF SAID SUBDIVISION RECORDED IN
THE OFFICE OF THE JUDGE OF PROBATE OF HENRY COUNTY, ALABAMA, IN TOWN PLAT
BOOK 1, AT PAGE 106.

SUBJECT TO EASEMENTS, RESERVATIONS, RESTRICTIONS AND RIGHT OF WAYS OF
RECORD.

ADDRESS:  RT 2 BOX 284, HEADLAND, AL. 36345    TAX MAP OR PARCEL ID NO
003-14-1-11-0-43.

THIS INSTRUMENT PREPARED BY:
TRANSOUTH FINANCIAL CORP
2623 MONTGOMERY HIGHWAY SUITE E
DOTHAN, AL  36303

STATE OF ALABAMA, HENRY COUNTY,
FILED __03/24/1999__ AT __1:30__ P_M FOR
RECORD AT PAGE __533-535__ _Mg._
RECORD NO. __425__ $ __12.15__ MTG
$ __8.50__ DEED TAX RECORDING
HEREBY CERT
LAMAR TURNER JUDGE OF PROBATE CH

TO HAVE AND TO HOLD the above described property, together with all and singular, the rights, privileges, tenements, appurtenances and improvements unto said Corporation, its successors and assigns forever.  And Mortgagors do hereby warrant, covenant, and represent unto Corporation, its successors and assigns, that they are lawfully seized of the above described property in fee, have a good and lawful right to sell and convey said property, and shall forever defend the title to said property against the lawful claims and demands of all persons whomsoever, and that

said real property is free and clear from all encumbrances except ____FHA_____.

ORIGINAL (1)
BORROWER COPY (1)
RETENTION COPY (1)

815550 (TS) REV. 11-98                                                                01766A.03



It is specifically agreed that time is of the essence of this contract and that no delay in enforcing any obligation hereunder or of the obligations secured hereby shall at any time hereafter be held to be a waiver of the terms hereof or of any of the instruments secured hereby.

If less than two join in the execution hereof as mortgagors, or may be of the feminine sex, the pronouns and related words herein shall be read as if written in singular or feminine respectively.

The covenants herein contained shall bind, and the benefits and advantages inured to, the respective heirs, successors and assigns of the parties named.

The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

IN WITNESS WHEREOF, the said mortgagors have hereunto set their hands and seals this the day and date first above written.

_____ (SEAL)
C.H. KINSEY

_____ (SEAL)
JANIE KINSEY

**STATE OF ALABAMA**

County of ____HOUSTON____ }

I, the undersigned authority, a Notary Public in and for said County and State aforesaid, hereby certify that _____
C.H. KINSEY AND WIFE JANIE L KINSEY
whose names are signed to the foregoing conveyance, and who are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they executed the same voluntarily on the date the same bears date.

Given under my hand and official seal this ____18____ day of ____December____, ____1998____.

My commission expires ____8-9-99____ _____
Notary Public

**STATE OF ALABAMA**

County of _____ }

I, the undersigned authority, a Notary Public in and for said County and State aforesaid, hereby certify that _____
_____ , whose name as _____ of the
_____ , a corporation, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the _____ day of _____, _____.

My commission expires _____ _____
Notary Public

615550                                                                                          0176dC.03



**ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY**
A Tennessee Stock Insurance Company, herein called the Company

Admin. Office: P.O.Box 223727, Dallas, Texas 75222-3727
Home Office: 25 Century Blvd. Ste. 600, Nashville, TN 37214

**INSURANCE SCHEDULE**

| CREDITOR BENEFICIARY<br>TRANSOUTH FINANCIAL CORP.<br>2623 MONTGOMERY HWE ST E<br>DOTHAN        AL 363041081 | ACCOUNT NUMBER<br>1646 | GROUP POLICY NUMBER     895-S | |
|---|---|---|---|
| | | ORIGINAL AMOUNT OF<br>DECREASING LIFE INSURANCE | $*****8,001.22* |
| SECOND BENEFICIARY | | AMOUNT OF LEVEL<br>LIFE INSURANCE | $      NONE |
| | | Monthly Disability Indemnity<br>(Borrower Only) | $      NONE |
| BORROWER (called you)<br>ADDRESS  C H KINSEY<br>        RT 2 BOX 284<br>        HEADLAND    AL 36345 | AGE<br>48 | INSURANCE PREMIUM CHARGE | |
| | | Single Decreasing<br>Life Premium | $      N/A |
| CO-BORROWER<br>JANIE L | AGE<br>41 | Joint Decreasing<br>Life Premium | $  ****505.93* |
| Effective Date of Insurance    12/23/98 | | Single Level<br>Life Premium | $      N/A |
| TERM OF DECREASING LIFE INSURANCE    60    mos | | Joint Level<br>Life Premium | $      N/A |
| TERM OF LEVEL LIFE INSURANCE    N/A    mos | | DISABILITY INSURANCE<br>PREMIUM | $      N/A |
| TERM OF DISABILITY INSURANCE    N/A    mos | | Waiting Period<br>Elimination Period | 7 Days<br>NONE Days |
| Maximum Amount of Life Insurance    $ 100,000.00 | | TOTAL CREDIT LIFE<br>AND DISABILITY<br>INSURANCE PREMIUM | $ *******505.93* |
| Maximum Disability Benefit    $ 27,000.00 | | | |
| Maximum Monthly Disability Indemnity    $ 750.00 | | | |

The only insurance effective under this Certificate is that for which a premium is paid.

## APPLICATION FOR CREDIT INSURANCE
### To Be Completed When the Amount of Life Insurance Coverage Will Be Greater Than $7,500.00

SINGLE LIFE INSURANCE ☐          JOINT LIFE INSURANCE ☑          TOTAL DISABILITY INSURANCE ☐
(Borrower Only)                  (Borrower and Co-Borrower)      (Borrower Only)

I, the undersigned borrower, hereby apply for the credit insurance checked above in connection with the loan for which I am applying. To the best of my knowledge, the answers given to the questions below are true.

(If insurance is desired only on the borrower, only those questions applicable to the borrower need be answered.)

| | BORROWER | | CO-BORROWER | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| 1. Have you during the past 5 years received medical advice, consultation or treatment for:<br>Paralysis    Drug addiction    Sugar diabetes<br>Cerebral hemorrhage    Cirrhosis    Leukemia<br>High blood pressure    Cancer    Alcoholism | ☐ | ☒ | ☐ | ☒ |
| 2. Have you during the past 5 years received medical advice, consultation or treatment for disease or disorder of the:<br>Heart or Circulatory system    Lungs<br>Kidneys | ☐ | ☒ | ☐ | ☒ |
| 3. Have you during the past 3 years had an application for life insurance rejected by any life insurance company? | ☐ | ☒ | ☐ | ☒ |
| 4. Have you during the past 5 years received medical advice, consultation or treatment for disease or disorder of the back or neck? | ☐ | ☒ | Not Applicable | |
| 5. Have you during the past 10 years:<br>A. Had or been told you had Acquired Immune Deficiency Syndrome ("AIDS") or AIDS Related Complex ("ARC")? | ☐ | ☒ | ☐ | ☒ |
| B. Received advice or treatment in connection with any of the categories mentioned in (A) above? | ☐ | ☒ | ☐ | ☒ |
| C. Tested positive for antibodies to the AIDS (Human T-Cell Lymphotropic, Type III; HTLV-III) virus? | ☐ | ☒ | ☐ | ☒ |
| 6. Height and weight | | '  ''  4-50 lbs. | 5-30-57 lbs. | |
| 7. Date of birth | | (Mo./Day/Year) | (Mo./Day/Year) | |

I understand that I am not eligible for insurance if I will have attained the age of 66 prior to the inception date of the indebtedness in connection with which this insurance is applied for. I represent that the above answers are true and correct to the best of my knowledge and belief and understand that these representations shall be the basis for the company's acceptance of this application for the insurance applied for.

I UNDERSTAND THAT THE MAXIMUM TERM OF LIFE INSURANCE MAY BE LESS THAN THE TERM OF INDEBTEDNESS. FURTHER, IF I AM APPLYING FOR TOTAL DISABILITY INSURANCE, I UNDERSTAND THAT THE MAXIMUM TERM OF TOTAL DISABILITY INSURANCE MAY BE LESS THAN THE TERM OF INDEBTEDNESS.

TO THE BEST OF MY KNOWLEDGE AND BELIEF, I REPRESENT THAT I HAVE NOT BEEN ADVISED BY A PHYSICIAN DURING THE PAST 6 MONTHS TO HAVE AN OPERATION.

Name and address of your and your co-borrower's family doctor and date of last visit.
Dr. Meadow    12 Mos.

Proposed Term of Loan    60                          Signature of borrower

Date of application    12-23-98                      Signature of co-borrower

I have witnessed the borrower(s) answers and signature(s) to this application.

Signature of witness

74-4900

| ✓ ORIGINAL (1) |
|---|
| BORROWER COPY (1) |

674246 Rev. 6-07
00344.04



READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.

### ARBITRATION AGREEMENT

| BORROWER (Called "you" or "your")<br>KINSEY, C H<br>KINSEY, JANIE L<br>RT 2 BOX 284<br>HEADLAND        AL    36345 | LENDER (Called "we" or "us")<br>TRANSOUTH FINANCIAL CORPORATION<br>2623 MONTGOMERY HWE ST E<br>DOTHAN        AL  36303-2600 |
|---|---|
| Date of Loan    12/18/98 | Account Number        646 |

In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.

**ARBITRATION:** Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

**DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

**ARBITRATION RULES:** The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.

**STARTING ARBITRATION:** Either you or we can start arbitration any time a dispute arises between you and us. To start arbitration, you or we must do the following things:

1. Complete a Demand For Arbitration (a copy is attached to this agreement)
2. Send three copies of the completed Demand For Arbitration and three copies of this agreement, along with $125 filing fee, to:
   American Arbitration Association
   13455 Noel Road
   Two Galleria Tower, Suite 1750
   Dallas, TX 75240-6636
3. Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.

**COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expense of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.



**SELECTION OF ARBITRATION:** The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.

**LOCATION OF ARBITRATION:** The arbitration will take place in the county where you live unless you and we both agree to another location.

**ENFORCEMENT OF ARBITRATION DECISION:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**OTHER IMPORTANT AGREEMENTS:**

1. This agreement does not affect the applicability of any statute of limitations.
2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

You and we have entered into this agreement as of the "Date of Loan" written above.

| Borrower | Lender |
|---|---|
| KINSEY,C H | TRANSOUTH FINANCIAL CORPORATION |

By: _____

Borrower
KINSEY,JANIE L

You acknowledge that you have received a completed copy of this agreement together with a copy of the Commercial Arbitration Rules and one Demand for Arbitration form.

Initials          Initials



## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.


COSIGNER SIGNATURE _____ DATE __12/18/90__


615063  Rev. 9-85

| ✓ | ORIGINAL (1) |
|---|---|
|   | CO-BORROWER COPY (1) |

00025




## NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/ security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ DECEMBER 18, 1998 _____;

    or

(2) the date you received your Truth in Lending disclosures;

    or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that our (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Name of Creditor _____ TRANSOUTH FINANCIAL CORPORATION _____

_____ 2623 MONTGOMERY HWE ST E, DOTHAN, AL 363041081 _____

<p align="center">(Address of Creditor's Place of Business)</p>

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ DECEMBER 22, 1998 _____
<p align="right">(date)</p>

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
Consumer's Signature                                                    Date

The undersigned acknowledges receipt of two completed copies of this notice this _____ 18 _____ day of

_____ DECEMBER _____, 1998.

_____
<p align="right">Consumer</p>

_____
<p align="right">Consumer</p>

| | |
|---|---|
| ✓ | ORIGINAL (1) |
| | BORROWER COPY (2) |
| | CO-BORROWER COPY (2) |

610664 REV. 10-98

00004.03

# EXHIBIT B

# Disclosure State[redacted]nt, Note and Security [redacted]eement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. / Date of Loan |
|---|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CITIFINANCIAL CORPORATION<br><br>CITIFINANCIAL<br>DOTHAN CHEROKEE AL 36303 | Account No.<br>[redacted]6995<br>Date of Loan<br>04/30/2002 |

| ANNUAL PERCENTAGE RATE The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Borrower. | Amount Financed The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 20.99 % | $ 4,205.87 | $ 6,700.91 | $ 10,906.78 |

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 213.62 | 06/15/2002 |
| 59 | $ 181.24 | MONTHLY BEGINNING 07/15/2002 |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Security: If checked, Borrower has a security interest in:

- [ ] Motor Vehicle
- [ ] Mobile Home
- [x] Real Property
- [ ] Other:

Late Charge: If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00.

Prepayment: If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 226.60 | $ 7,035.96 | $ 335.05 | 05/06/2002 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. **If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid.** The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
**Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.**

**Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.**

**Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.**

**If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.**

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $ 12.98 | $ 146.56 | JOINT CREDIT LIFE |
| $NONE | $ | |
| $NONE | $ | |

First Borrower's Signature ______ Date 4-30-02

Second Borrower's Signature ______ Date 4/30/02

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

TERMS: In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

PROMISE TO PAY: In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 18.6696 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to N/A % per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to Borrower.

(Intentionally left blank)

Borrower's Initials: ______

C H KINSEY  JANIE L KINSEY                    ●               ●        ●6995    04/30/2002

Principal and interest shall be paid in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal balance. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

**SECURITY AGREEMENT:**

A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

2. Other Property:

B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at
RR 2 BOX 284              HEADLAND AL 36345                    . . .  . . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGE:** Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

**NSF CHECKS:** Lender may charge the greater of either a $ 20.00  fee or an amount equal to the actual charge by the depository institution if a check, draft, negotiable order of withdrawal or like instrument is not paid or is dishonored.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

**EFFECTS OF DEFAULT:** If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Borrower's Initials: C.N M?? Jc

CitiFinancial Corporation
AL 25738-15  3/2002              Original (Branch)    Copy (Customer)              Page 2 of 4

C H KINSEY  JANIE L KINSEY ●●●●●●                    ●●●●6995    04/30/2002

If the proceeds of sale are not sufficient to satisfy the unpaid balance, earned interest, and expenses, subject to applicable Alabama law, Borrower agrees to pay the remaining amount upon demand.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

---

### NOTICE OF ARBITRATION PROVISION

**THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND LENDER, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

Definitions for Arbitration Provision. As used in this Arbitration Provision ("Provision"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors, assigns, and representatives.
"We" or "Us" means the Lender under this Disclosure Statement, Note and Security Agreement, American Health & Life Insurance Company, Triton Insurance Company, and any assignee of Lender, together with all of their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:
- This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

Agreement to Arbitrate Claims. Upon written request by either party that is submitted according to the applicable rules for arbitration, any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Financial Services Arbitration Rules and Procedures of JAMS/Endispute, Inc. ("Administrator"), and (iii) this Provision, unless we both agree in writing to forgo arbitration. The terms of this Provision shall control any inconsistency between the rules of the Administrator and this Provision. You may obtain a copy of the arbitration rules by calling (800) 448-1660 or by accessing the Administrator's internet site at www.jamsadr.com/financial_rules.asp. At Your request, We will obtain and provide to You copies of the Administrator's rules and other materials, including a form Demand for Arbitration. Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. Pursuant to this Provision, You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons or entities involved with any Credit Transaction or any other matter covered by this Disclosure Statement, Note and Security Agreement, (ii) all persons who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

Judgment. Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

(Intentionally left blank)

Borrower's Initials: _____

CitiFinancial Corporation
AL 25738-15  3/2002            Original (Branch)    Copy (Customer)            Page 3 of 4

C H KINSEY  JANIE L KINSEY                                    6995        04/30/2002

Claims Excluded from Arbitration. The following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate:

- Any action to effect a foreclosure to transfer title to the property being foreclosed, or exercise of extra-judicial or self-help repossession under applicable law; or
- Any matter where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages; restitution; disgorgement; costs and fees (including attorneys' fees), or any Claims brought in a small claims court. In the event You attempt to assert any of Your Claims on behalf of a putative class of persons, in violation of other terms in this Provision, the value of Your Claims will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00.

However, should either party initiate arbitration, the other party, at its option, may seek injunctive and monetary relief in arbitration. Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

Additional Terms.

Administration of Arbitration. Arbitration shall be administered by the Administrator, but if it is unable or unwilling to administer the arbitration, then the American Arbitration Association will administer any arbitration required under this Provision pursuant to its Commercial Arbitration Rules and Expedited Procedures. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

Appeal. Either You or We may appeal the arbitrator's award in accordance with the Optional Appeals Procedures of the Administrator, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Provision.

Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Costs. The cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay the initial filing fee up to $125.00 to the Administrator when the demand is made. We will pay any balance.
- We will pay to the Administrator all other costs for the arbitration proceeding up to a maximum of one day (eight hours) of hearings.
- All costs of the arbitration proceeding that exceed one day of hearings will be advanced by the party that initiated the arbitration. To the extent allowed by the applicable arbitration rules and applicable law, the arbitrator may tax or assess costs of the arbitration to any party.
- In the case of an appeal, the appealing party will advance any costs of initiating an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing an appeal.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of this Disclosure Statement, Note and Security Agreement.

Governing Law. This Provision is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

Severability. If the arbitrator or any court determines that one or more terms of this Provision or the arbitration rules are unenforceable, or would make this Provision unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Provision, but such determination shall not impair or affect the enforceability of the other terms of this Provision or the arbitration rules.

Special Acknowledgments. You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will not hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, (iv) rights to appeal an arbitration award are very limited, and (v) the rights of the parties hereunder may not be exactly mutual in all respects.

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

_(Seal)_
C H KINSEY                                                    -Borrower
_(Seal)_
JANIE L KINSEY                              4/30/02          -Borrower

The following notice applies only if this box is checked.   ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

WITNESSES:                          SIGNED:
                                                             _(Seal)_
                                    C H KINSEY               -Borrower
                                                             _(Seal)_
                                    JANIE L KINSEY           -Borrower
                                                             _(Seal)_
                                                             -Borrower
                                    CITIFINANCIAL CORPORATION
                                    By:
                                        (Name and Title)

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_(Seal)_                                      _(Seal)_
Signature                    Date             Signature                    Date

CitiFinancial Corporation
AL 25738-15  3/2002          Original (Branch)    Copy (Customer)                    Page 4 of 4

# ITEMIZATION OF AMOUNT FINANCED

01-0039

| Borrower(s) | Lender | Account Number |
|---|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CITIFINANCIAL CORPORATION<br><br>CITIFINANCIAL<br>DOTHAN CHEROKEE AL 36303 | 6995<br><br>Date of Loan<br>04/30/2002 |

**ITEMIZATION OF AMOUNT FINANCED:$      6,700.91**

$ ___2,339.71___ Amount given to you directly (check to you)    $ ___335.05___ Prepaid finance charge

$ ___3,720.09___ Amount paid on your prior account

$ ____641.11___ Amount paid to others on your behalf (sum of schedules A through C)

**SCHEDULE A: PREMIUMS PAID TO INSURANCE COMPANIES**

$ ___NONE___ Credit Life

$ ___NONE___ Credit Disability

$ ___NONE___ Property Insurance

$ ___NONE___ Automobile Single Interest

$ ___NONE___

$ _____

**SCHEDULE B: PAID TO PUBLIC OFFICIALS**

$ ___NONE___ License/title/registration fees

$ ___25.65___ Recording and releasing fees

$ _____ Stamps/intangible/transfer tax

$ _____

$ _____

**SCHEDULE C: PAID TO OTHERS**

| AMOUNT | PAYEE NAME | REASON |
|---|---|---|
| 440.46 | CITIFINANC | PAYOFF OF ACCOUNT |
| 175.00 | NATIONAL RE SERVICES | TITLE FEES |

ANY AMOUNTS LISTED IN SCHEDULE C, PAYABLE AS BROKER FEES, APPLICATION FEE, SETTLEMENT FEE, OVERNIGHT DELIVERY FEE, FLOOD CERTIFICATION FEE OR TAX SERVICE FEE ARE INCLUDED IN PREPAID FINANCE CHARGE AND NOT IN THE AMOUNT FINANCED.

25746-8 7/2000                    Original (Branch)    Copy (Customer)

After recording return to:
CITIFINANCIAL CORPORATION

CITIFINANCIAL
DOTHAN CHEROKEE AL 36303

STATE OF ALABAMA, HENRY COUNTY, 11:00 A M FOR
FILED 05/03/2002 in mtg.
RECORD AT PAGE 107 - 110
RECORD NO. 455 $ 10.65 MTG TAX
$ _____ DEED TAX RECORDING FEE
$ 15.00 HEREBY CERTIFIED
LAMAR TURNER JUDGE OF PROBATE CR

0215748

# MORTGAGE

THIS MORTGAGE is made this  30th  day of       April           , 2002   , between the Grantor,
C.H. KINSEY AND WIFE, JANIE L. KINSEY

(herein "Borrower"),

and the Mortgagee,  CITIFINANCIAL CORPORATION
a corporation organized and existing       under the laws of       Delaware               , whose address
is CITIFINANCIAL DOTHAN CHEROKEE AL 36303                                (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $        7,035.96          ,
which indebtedness is evidenced by Borrower's note dated     04/30/2002        and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the
indebtedness, if not sooner paid, due and payable on  05/15/2007  ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to
Lender and Lender's successors and assigns with power of sale, the following described property located in the County of
HENRY                          , State of Alabama:

LOT NO. 32 IN PARKWOOD ACRES SUBDIVISION, A SUBDIVISION IN HENRY
COUNTY, ALABAMA, AS SHOWN BY PLAT AND SURVEY OF SAID SUBDIVISION
RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF HENRY COUNTY,
ALABAMA, IN TOWN PLAT BOOK 1, AT PAGE 106.

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns, forever, together with
all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of
which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing,
together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the
"Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record.  Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal and Interest.  Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

Alabama 1596-6 01/98     Original (Recorded)     Copy (Branch)     Copy (Customer)         Page 1 of 4

C H KINSEY  JANIE L KINSEY                                                          04/30/2002

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage and deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

C H KINSEY  JANIE L KINSEY                                                    04/30/2002

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish the notice of sale once a week for three consecutive weeks in some newspaper published in HENRY                           County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of said County. Lender shall deliver to the purchaser Lender's deed conveying the Property so sold. Lender or Lender's designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in the Mortgage or (ii) entry of a judgment enforcing the Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall

C H KINSEY  JANIE L KINSEY                                                      04/30/2002

continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver or the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead, Dower and Curtesy.** Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all right of dower and curtesy in the Property.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

—————————————————————— REQUEST FOR NOTICE OF DEFAULT ——————————————————————
——————————————— AND FORECLOSURE UNDER SUPERIOR ———————————————
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the presence of :

_____          _____ (Seal)
                                  C.H. KINSEY                        -Borrower

_____          _____ (Seal)
                                  JANIE L. KINSEY                    -Borrower

STATE OF ALABAMA, ____HENRY_____ County ss:

On this ___30TH___ day of ___APRIL_____, __2002__, I, _____
a Notary Public in and for said county and in said state, hereby certify that ___C.H. KINSEY AND WIFE___
___JANIE L. KINSEY_____, whose name(s) ___ARE_____ signed to the foregoing
conveyance, and who ____ARE_____ known to me, acknowledged before me that, being informed of the contents of
the conveyance, __T__ he __Y__ executed the same voluntarily and as _____
act on the day the same bears date.

Given under my hand and seal of office this the ___30TH___ day of ___APRIL_____, 2002 .

My Commission expires: __4-27-2004__        _____
                                                      Notary Public

This instrument was prepared by: _____
                                 2407 MONTGOMERY HWY STE 1
                                 DOTHAN, AL  36303

Alabama 1596-6 1/98     **Original (Recorded)   Copy (Branch)   Copy (Customer)**                   Page 4 of 4
                        ———— (Space Below This Line Reserved For Lender and Recorder) ————

**AMERICAN HEALTH AND LIFE INSURANCE COMPANY**
307 West 7th Street, Suite 400 PO Box 2248
Fort Worth, Texas 76113
(called we, our, or us)

certifies that the Insured Debtor and the Joint Insured Debtor (when insurance on the joint debtor is requested and an additional premium is paid), shown in the Schedule below, hereafter referred to as "you" or "your", are insured under the group policy issued to the Creditor. Only those coverages for which a specific premium rate appears in the Schedule are provided by this Certificate of Insurance.

## APPLICATION FOR INSURANCE

**If the Initial Debt is greater than $5,000, You must answer the following question:**
Have you in the past 5 years, been treated for or been diagnosed as having:
(1) cancer; (2) stroke; (3) AIDS (Acquired Immune Deficiency Syndrome), ARC (AIDS Related Complex - ARC is a condition with signs and symptoms which may include generalized Lymphadenopathy, (swollen lymph nodes); loss of appetite, weight loss; fever; oral thrush; skin rashes; unexplained infections; dementia; depression or other psychoneurotic disorders with no known cause); or any other immunological disorder (including testing positive for the HIV-Human Immunodeficiency Virus);
(4) alcoholism or substance abuse; or
(5) any disease or disorder of the heart, liver, kidneys, or lungs?
**If an answer is not checked below, if the answer is "YES", or if you have not signed below, you are not eligible and the loan office is not authorized to issue Credit Life or Disability insurance Coverage.**

   Proposed Insured Debtor - [ ] YES [X] NO     Proposed Joint Insured Debtor - [ ] YES [✓] NO

**If you are applying for Credit Disability Coverage you must answer the following question:**
Have you in the past 2 years, as a result of disease, injury, sprain, or strain to the back, neck or spine: 1) received disability benefits; 2) been hospitalized; or 3) missed 7 or more consecutive days of work? **If an answer is not checked below, if the answer if "YES", or if you have not signed, you are not eligible and the loan office is not authorized to issue Credit Disability Insurance Coverage.**

   Proposed Insured Debtor - [ ] YES [ ] NO

Are you currently working less than 30 hours per week? **If an answer is not checked below, if the answer is "YES", or if you have not signed, you are not eligible and the loan office is not authorized to issue Credit Disability Insurance Coverage.**

   Proposed Insured Debtor - [ ] YES [ ] NO     Proposed Joint Insured Debtor - [ ] YES [ ] NO

I (We) acknowledge that the creditor will be adding an initial insurance premium using the rate indicated below, for each coverage requested, to my account each month on the payment due date.

x _C H Kinsey_     Age: 52  Date: 4-30-02
_Signature of Proposed Insured Debtor_
x _____     Age: 45  Date: 4/30/02
_Signature of Proposed Joint Insured Debtor_

## SCHEDULE

| Certificate/Account Number | Group Policy Number | Branch Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| ●●●6995 | 3380 | 0039 | 05/06/2002 | 05/15/2007 |

| INSURED DEBTOR | | | JOINT INSURED DEBTOR | |
|---|---|---|---|---|
| NAME C H KINSEY | AGE 52 | JANIE L KINSEY | | AGE 45 |
| STREET ADDRESS RR 2 BOX 284 | | | | |
| CITY HEADLAND | STATE AL | ZIP CODE 36345 | | |

| CREDITOR - FIRST BENEFICIARY | SECOND BENEFICIARY - RELATIONSHIP (if not specified - Estate of Insured) |
|---|---|
| CITIFINANCIAL CORPORATION CITIFINANCIAL DOTHAN CHEROKEE AL 36303 | ESTATE ESTATE |

| Monthly Premium Rate per $100 of monthly outstanding balance - Single Life | Monthly Premium Rate per $100 of monthly outstanding balance - Joint Life | Monthly Premium Rate per $100 of regular monthly payment - Single Disability |
|---|---|---|
| NONE | 0.1845 | NONE |

| Maximum Amount of Life Insurance | Maximum Monthly Disability Benefit | Disability Waiting Period | Age Limit | Maximum Number of Monthly Benefits Per Occurrence | Initial Debt |
|---|---|---|---|---|---|
| $100,000 | $840.00 | 7 Days | 68 | 60 months | $ 7,035.96 |

**YOU HAVE THE RIGHT TO CANCEL THIS INSURANCE FOR ANY REASON WITHIN 30 DAYS AFTER THE EFFECTIVE DATE. RETURN THE CERTIFICATE WITH YOUR WRITTEN REQUEST FOR CANCELLATION TO THE CREDITOR AT THE ADDRESS LISTED ABOVE. ANY PREMIUM YOU HAVE PAID WILL BE REFUNDED OR CREDITED TO YOUR ACCOUNT AND THE INSURANCE WILL BE VOIDED AS OF THE EFFECTIVE DATE.**

NOTICE: PLEASE READ YOUR CERTIFICATE OF INSURANCE CAREFULLY. THE LIFE INSURANCE BENEFIT MIGHT NOT COMPLETELY PAY OFF YOUR LOAN. THE DISABILITY BENEFIT IS LIMITED TO A MAXIMUM OF 60 MONTHLY PAYMENTS PER OCCURRENCE OF DISABILITY. THIS CERTIFICATE MAY NOT PROVIDE DISABILITY BENEFITS FOR CERTAIN PREEXISTING CONDITIONS.

## DEFINITIONS

ACCIDENTAL INJURY: Means accidental bodily injury sustained by you during the term of insurance.

ACCOUNT: Means your loan with the creditor listed in the Schedule, which coincides with the Account Number shown in the Schedule.

**CREDITOR - DEBTOR INSURANCE CERTIFICATE**
**MONTHLY OUTSTANDING BALANCE/CRITICAL PERIOD DISABILITY**
**SINGLE LIFE/JOINT LIFE/SINGLE DISABILITY**

73765          Original (Branch)     Copy (Customer)     Copy (Ins. Co.)     AL 36644 Page-1 of 3

**DISABILITY PRE-EXISTING CONDITION:** A pre-existing condition are those conditions which manifested themselves to you by requiring medical diagnosis or treatment within six months preceding the Effective Date of this insurance and which caused or contributed to your disability within the six months following the Effective Date of this insurance; however, any disability commencing after that time resulting from such condition shall be covered.

**OUTSTANDING BALANCE AT DEATH:** The Outstanding Balance At Death equals the unpaid Account balance as of the date of death.

**SICKNESS:** Means illness or disease which commences during the term of insurance.

**TOTAL DISABILITY:** Means that during the first 12 consecutive months of disability, because of Accidental Injury or Sickness, you are unable to perform the important and significant duties of your occupation at the time disability commences. For the remainder of the period of disability, "Total Disability" means that you are unable to perform the duties of any gainful occupation for which you are reasonably suited by reason of education, training or experience. During any period of Total Disability, the Insured Debtor must be under the care of a legally qualified physician or surgeon other than himself, the joint debtor, or a member of his immediate family.

**REGULAR MONTHLY PAYMENT:** Means the regularly scheduled monthly payment obligation due the Creditor in connection with the Certificate/Account number shown in the Schedule plus any credit insurance premium except for credit life premiums and credit disability premiums. In no event will the regularly scheduled monthly payment referenced in this certificate include any: a) late charges; b) delinquency; or c) default charges.

**OCCURRENCE:** Means each separate period of total disability for which benefits are payable.

<center>CREDIT LIFE INSURANCE BENEFIT</center>

If you have not misrepresented your health or age and are eligible for coverage under this certificate, and subject to the payment of the life premiums each month, you will be insured against the contingency of death, subject to the exclusions and provisions herein. Any Credit Life benefit paid will completely discharge our obligation with regard to this Certificate of Insurance.

**SINGLE LIFE INSURANCE BENEFIT:** We will pay the Amount of Life Insurance in force on the date of death to the Creditor Beneficiary after we receive due proof of your death at our administrative offices.

**JOINT LIFE INSURANCE BENEFIT:** We will pay the Amount of Life Insurance in force on the date of death to the Creditor Beneficiary when the first of you dies and after we receive due proof of death at our administrative offices. In the event of simultaneous deaths, only one such benefit will be paid.

**AMOUNT OF LIFE INSURANCE:** Subject to the Maximum Amount of Life Insurance shown in the Schedule, the Amount of Life Insurance in force at any time will be equal to the Outstanding Balance At Death (see Definitions section).

If, at any time, the outstanding balance on your Account exceeds the Maximum Amount of Life Insurance and a premium for the excess amount is charged, we have the right to refund the excess premium, provided that such refund is made prior to any claim.

**MAXIMUM LIMITS OF LIABILITY:** If you are currently insured under another certificate of insurance issued under the same group policy mentioned above in connection with another Account, making the total Amount of Life Insurance in excess of the Maximum Amount of Life Insurance shown in the Schedule, the amount of insurance in excess will be canceled. You will receive a refund or credit of the premium paid for the excess amount.

**SUICIDE:** If you die as the result of suicide or self-destruction, while sane or insane, within one year of the Effective Date of this insurance, a death benefit will not be paid. A refund of the life insurance premium will be made. If joint life coverage was selected, insurance on the surviving debtor will be canceled and a full refund of all premiums will be made.

**PREMIUM WAIVER:** We will waive the life premiums due on this certificate during any period for which you are receiving benefits under any credit disability or credit involuntary unemployment insurance in force on this Account.

<center>CREDIT DISABILITY INSURANCE BENEFIT</center>

If you have not misrepresented your health or age and are eligible for coverage under this certificate, and subject to the payment of the disability premiums each month, you will be insured against the contingency of Total Disability, subject to the exclusions and provisions herein.

**ELIGIBILITY:** This disability coverage becomes effective only if you are actively at work at least 30 hours per week on the Effective Date and truthfully answer "NO" to the health question(s) in this Certificate of Insurance.

**SINGLE DISABILITY INSURANCE BENEFIT:** We will pay a Monthly Benefit, to the Creditor Beneficiary when you become Totally Disabled and after we receive due proof of your Total Disability at our administrative offices.

**MONTHLY BENEFIT:** If, while insured, you become Totally Disabled, and remain Totally Disabled continuously for the number of days indicated in the Disability Waiting Period shown in the Schedule, we will pay a benefit for each day of disability equal to the lesser of 1/30th of: a) your scheduled monthly Account payment or the Maximum Monthly Disability Benefit shown in the Schedule plus; b) the monthly credit disability insurance and credit involuntary unemployment premium if due on this certificate, Benefits begin after the Disability Waiting Period stated in the Schedule and are payable up to the Maximum Number of Monthly Benefits Per Occurrence.

Once the Monthly Benefit becomes payable, it will continue until the earliest of the following: 1) the date of death; or 2) the date upon which you are no longer Totally Disabled; or 3) when the Maximum Number of Monthly Benefits Per Occurrence shown in the Schedule have been paid for that disability Occurrence. We will make no more than 60 monthly payments for any one disability Occurrence. A disability Occurrence will be considered separate from another Occurrence if the two disabilities are from totally unrelated causes. Only one benefit per day will be payable during any period of Total Disability even though Total Disability is caused by or results from both Accidental Injury and Sickness.

**DISABILITY EXCLUSIONS:** This insurance does not cover any Total Disability resulting from: (a) normal pregnancy; (b) intentionally self-inflicted injuries; (c) war, declared or undeclared; (d) flight in nonscheduled aircraft; or (e) a Pre-existing Condition, as defined; however, any disability commencing after that time resulting from such condition shall be covered.

<center>STANDARD PROVISIONS-DISABILITY INSURANCE</center>

**NOTICE OF CLAIM:** You must send a written notice to us or our agent regarding your disability claim within 20 days after disability starts or as soon as reasonably possible. The notice should include sufficient information to identify you as an Insured Debtor.

**CLAIM FORMS:** Upon receipt of your notice, we will send you the necessary forms for filing a claim. If you do not receive the forms within 15 working days, you can simply send us a written statement describing your disability. The statement should be signed by your physician and should include the dates as well as the nature and extent of your disability. Thereafter, claim forms are required to be filed every 30 days, while Total Disability continues.

**PROOF OF DISABILITY:** The proof of Total Disability signed by your physician must be sent to us no later than 90 days after the disability ends. If it is not possible to submit proof within 90 days, we will not reduce or deny a claim for this reason, if the proof is filed as soon as reasonably possible. In any event, the necessary proof must be given no later than one year from the date the disability commenced unless you are legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** Provided written proof of Total Disability is submitted, all benefits to which you are entitled will be payable by us to the Creditor each month.

**PHYSICAL EXAMINATION:** We, at our own expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

**LEGAL ACTION:** No legal action may be brought by you to recover on this insurance within 60 days after written proof of Total Disability has been given. No such action may be taken after 3 years from the time proof of disability is given.

## GENERAL PROVISIONS

**AGE LIMIT:** If either of you misstate your age or will attain age 66 before the expiration date of the Account, the insurance is void. In such instance, all premiums paid will be refunded. However, if either of you correctly stated your age and it was above the maximum, and a Certificate of Insurance was issued in error, we have the right to terminate the coverage and refund the full premium, provided that such refund is made prior to any claim.

**GENERAL:** We will not pay benefits on any late charges or finance charges added to your Account balance after the date of death or the date Total Disability commences.

**PAYMENT OF CLAIMS:** Any benefits paid will be paid to the Creditor Beneficiary to reduce or extinguish your Outstanding Balance At Death. If the amount of insurance exceeds the unpaid balance of your Account, any excess will be paid to the Second Beneficiary, named by you, or to your estate. We will pay the excess, if any, by check or draft.

**PREMIUM:** Premiums will be paid by the Creditor each month on your behalf and will be collected from you in accordance with the terms of the Account agreement. The rate of premium charged by the Creditor for this insurance may not legally exceed that paid by the Creditor to us, on your behalf. If we change the premium rates and such change results in an increase then we will give you written notice: (1) at least thirty (30) days in advance; and (2) setting forth the revised rates and the Effective Date. Any such notice should be attached to the certificate. Any increase in rates will not be retroactive.

**AUTOPSY:** We, at our own expense, have the right to have an autopsy performed, unless it is not permitted by law.

**TERMINATION OF INSURANCE:** This insurance terminates upon the earliest of the following dates: (1) the last day of the billing cycle of the month in which you reach your 66th birthday; (2) when your Account is discharged for any reason, including prepayment, renewal, or refinancing; (3) upon repossession of the collateral given as security for your Account, or by your Account or any portion of your Account being charged off or required to be charged off by law; (4) upon nonpayment of premium by the Creditor; (5) on the expiration date shown the schedule; or (6) the date the Group Policy terminates.

**REFUND OF PREMIUM:** If the insurance is terminated prior to the original scheduled Expiration Date, the unearned portion of the prepaid premium will be refunded to You and/or credit to your account. Any such refund will be calculated according to the "Pro Rata" method. Refunds of less than $1.00 will not be made.

**CANCELLATION OF INSURANCE:** By the Debtor: This insurance may be cancelled by you by providing 1) Us, or 2) the Creditor, with advance written notice stating when cancellation is to be effective. By the Creditor: The Creditor may request cancellation of this Certificate for Your nonpayment of premium. The Creditor will give You written notice 30 days prior to the requested effective date of cancellation. By the Company: The Company may cancel this Certificate by giving the Debtor(s) written notice 30 days prior to the effective date of cancellation.

**CONFORMITY WITH STATE STATUTES:** Any provision of this Certificate of Insurance which, on its Effective Date, is in conflict with the statutes of the state in which it was issued is changed to conform to the minimum standards of those statutes.

**ENTIRE CONTRACT:** The policy including the certificate, any endorsements, and any attached papers, constitutes the entire contract of insurance. All statements made by the policyholder or by you will be deemed representations and not warranties. No statements made by you will be used in any contest unless a copy of the statement is or has been furnished to you or your beneficiary.

**INCONTESTABILITY:** Insurance under this Certificate of Insurance, in amounts up to and including $1,000 will not be contested, except for nonpayment of premiums or fraud, after it has been in force for ninety days from its Effective Date. Insurance under this Certificate of Insurance, in an amounts over $1,000 or more, will not be contested, except for nonpayment of premiums or fraud, after it has been in force during Your lifetime for one year from its Effective Date. No statement made by or on behalf of You relating to your insurability will be used in a contest of his insurance unless it is contained in a written statement signed by you, and a copy has been furnished to you and/or your beneficiary.

We reserve the right to rescind this insurance coverage during the contestable period in the event of material misrepresentation made in the Application portion of this Certificate of Insurance.

**TRANSFER PROCEDURE:** We reserve the right to enter into an agreement with another insurer to transfer the liability under this Certificate without prior notice to you. We shall be relieved of all liability transferred, and the assuming insurer shall be directly and solely liable to you for those obligations or risks.

*Darrell J. Lambert*

PRESIDENT

CI▬FINANCIAL CORPORATION
(Lender)

Policy/Certificate No. _____6995_____

# ACKNOWLEDGMENT OF INSURANCE LIMITATIONS IN THE AMOUNT AND/OR TERM OF CREDIT INSURANCE

## PLEASE READ THIS DISCLOSURE CAREFULLY

The undersigned has obtained a loan from the above-mentioned lender evidenced by a promissory note dated 04/30/2002 . In connection with the loan, the undersigned has voluntarily chosen to purchase optional credit insurance. The terms of the insurance protection are as described in the policy(s)/certificate(s) of insurance identified above, which has been delivered to the undersigned.

**(A) CREDIT LIFE INSURANCE**--Credit life insurance has been obtained upon the borrower(s) named as insured in the policy(s)/certificate(s) of insurance. The original amount of decreasing credit life insurance is $ ___7,035.96_ which may be less than the amount of your loan. Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions.

**(B) CREDIT ACCIDENT AND HEALTH INSURANCE**--Credit accident and health insurance has been obtained upon the borrower(s) named as insured(s) and provides an initial benefit of $ N/A_____ per month in the event the insured(s) becomes disabled in accordance with the terms of the insurance policy/certificate. The maximum number of monthly benefits payable for each separate occurrence of disability is 60. Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions.

**(C) CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE**--Credit involuntary unemployment insurance has been obtained upon the borrower(s) named as insured(s) and provides an initial benefit of $ N/A_____ per month in the event the insured(s) becomes involuntarily unemployed in accordance with the terms of the insurance policy/certificate. The maximum number of monthly benefits payable for each separate occurrence of involuntary unemployment is N/A__ . Your coverage may end before your loan expiration date. See your policy/certificate for termination provisions. (For Members of the Armed Forces: No credit involuntary unemployment insurance benefits will be paid as a result of dishonorable discharge or separation from service at the conclusion of an active duty commitment.)

**AGE LIMITATIONS APPLY**--Review your Policy(s)/Certificate(s) for age limitations applicable to your coverage(s).

**The undersigned(s) realize that if benefits should become payable, said benefits may not be sufficient to repay the loan in full or meet the monthly payments for the full term of the loan. The undersigned(s) may be required to pay monies in order to completely repay the debt even if insurance benefits have been paid or are being paid.**

The undersigned(s) acknowledge receipt of a completed copy of this Acknowledgment this 30th day of April , 2002 .

Insured - C. H. Kinsey                    Joint Insured -

C H KINSEY                                         JANIE L KINSEY

36555-4 12/2001                    Original (Branch)     Copy (Customer)

# NOTICE OF RIGHT TO CANCEL

| ACCOUNT NUMBER | DATE OF TRANSACTION |
|---|---|
| ■■6995 | 04/30/2002 |

| BORROWER(S)--(Name and Address) | CREDITOR--(Name and Address) |
|---|---|
| C H KINSEY<br>JANIE L KINSEY<br>RR 2 BOX 284<br>HEADLAND AL 36345 | CitiFinancial<br>2407 MONTGOMERY HWY<br><br>DOTHAN          AL36303 |

**Your Right to Cancel**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is stated above; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not support the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address stated above. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel the new transaction, you may do so by notifying us in writing at the address stated above.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of ____05/03/2002____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____          _____
        Borrower's Signature                              Date

Each of the undersigned acknowledges receipt of two copies of this Notice of Right to Cancel this ___30th___ day of_____April_____, 2002

_C.H. Kinsey_
Borrower's Signature

_____
Borrower's Signature