IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANIE L. KINSEY and C.H. KINSEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 2:05-cv-636-F |
| ) | |
| C. LANCE GOULD, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR
ALTERNATIVELY, TO COMPEL ARBITRATION AND STAY PROCEEDINGS,
INCLUDING DISCOVERY**

**COME NOW** Defendants CitiFinancial Corporation, n/k/a CitiFinancial Corporation, LLC, and TranSouth Financial Corporation, n/k/a CitiFinancial Auto Corporation (or collectively "Defendants"), without waiver of their defenses under the Federal Rules of Civil Procedure, or any other applicable rule of civil procedure, and without waiver of any and all defenses under the federal laws of bankruptcy, and hereby submit this Memorandum in support of their Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and Stay Proceedings, including Discovery, with respect to Plaintiffs Janie L. Kinsey and C.H. Kinsey's claims against Defendants.[1]  In support, Defendants show as follows:

I.     **INTRODUCTION**

Defendants' Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and Stay Proceedings, including Discovery (the "Motion"), is due to be granted

---

[1] Simultaneously with the filing of the Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and Stay Proceedings, including Discovery, Defendants are filing an Objection to the Court's October 10, 2006 Order denying Defendants' Motion to Quash and to Dismiss.  Defendants do not waive their arguments set forth in the Motion to Quash and Dismiss by filing their motion to compel arbitration.

1508010

because Plaintiffs entered into written arbitration agreements with Defendants, the scopes of which encompass Plaintiffs' claims in the above-styled action. In addition, the transactions at issue involve interstate commerce. As such, all of the prerequisites to enforcement of arbitration agreements under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* are met, and Defendants' instant Motion is due to be granted.

## II.   FACTS

**A.   Plaintiffs' Loans At Issue.**

Plaintiffs Janie L. Kinsey and C.H. Kinsey entered into a loan with Defendant TranSouth Financial Corporation (or "TranSouth") on or about December 18, 1998. (*See* Declaration of Teresa M. Baer, at Exhibit A, attached to Defendants' Motion as Exhibit 1.) In connection with their 1998 TranSouth loan, Plaintiffs executed an arbitration agreement, wherein they agree to arbitrate any claims they have regarding their 1998 loan, as well as other disputes and claims against Defendants. (Baer Dec., at Ex. A.) The arbitration agreement provides, in pertinent part:

> In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.
>
> \* \* \*
>
> **DISPUTES COVERED:** This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:
> - your loan from us today;
> - any previous loan from us and any previous retail installment sales contract or loan assigned to us;
> - all the documents relating to this or any previous loan or retail installment sales contract;
> - any insurance purchased in connection with this or any previous loan or retail installment sales contract;
> - whether the claim or dispute must be arbitrated;
> - the validity of this arbitration agreement;
> - any negotiations between you and us;
> - any claim or dispute based on an allegation of fraud or misrepresentation;

> - any claim or dispute based on a federal or state statute; and
> - any claim or dispute based on an alleged tort.
>
> This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.
>
> \* \* \*
>
> OTHER IMPORTANT AGREEMENTS:
>
> \* \* \*
>
> 2.  The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
>
> 7.  This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.

(Baer Dec., at Ex. A.)

Plaintiffs refinanced their 1998 TranSouth loan with Defendant CitiFinancial Corporation (an affiliate of TranSouth) on April 30, 2002. (*See* Baer Dec., at Exhibit B.) In connection with their 2002 CitiFinancial loan, Plaintiffs executed another arbitration agreement, wherein they agree to arbitrate any claims they have regarding their 2002 loan, as well as other disputes and claims against Defendants. The arbitration agreement provides, in pertinent part:

> In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.
>
> **Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors, assigns, and representatives.

"We" or "Us" means the Lender under this Disclosure Statement, Note and Security Agreement, American Health & Life Insurance Company, Triton Insurance Company, and any assignee of Lender, together with all of their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment.

\* \* \*

> **Special Acknowledgments. You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will <u>not</u> hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, (iv) rights to appeal an arbitration award are very limited, and (v) the rights of the parties hereunder may not be exactly mutual in all respects.**

(Baer Dec., at Ex. B (emphasis in original.))  As such, Plaintiffs agreed to arbitrate all claims and disputes against Defendants regarding their loans with Defendants, among other matters.

B.     <u>Plaintiffs' Lawsuit.</u>

On or about July 7, 2005, Plaintiffs filed the above-styled action in this Court.  They alleged "wrongdoing" regarding the loans Plaintiffs entered into with Defendants.  (Compl. at p. 1.)  They also asserted "negligence," "fraud," "trespass," "property loss," "oppression," "malice" "wanton," "wanton injury," "wanton negligence," "mental anguish," "confidentiality," and "discrimination."  (*Id.* at pp. 3-4.)  They do not allege any act or omission on the part of Defendants with respect to any of these "claims," except for the charge of "confidentiality," with respect to which they allege "Citifinancial has lost our identity social security number date of birth.  All of our life we worried about who may use social security number in future or maybe after expiration of life." (*Id.* at p. 4.)

After being ordered by this Court to do so, Plaintiffs then filed an amended complaint on July 27, 2005.  In the amended complaint, Plaintiffs allege that Defendants made misrepresentations regarding their loans; failed to disclose the cost and term of credit insurance; lost their credit history; and generally list a number of other claims, without setting forth any supporting facts.

Plaintiffs did not attempt service of their complaint on Defendants until <u>June 28, 2006</u>, when ordered by the Court to do so, and the attempted service was improper.[2] When Defendants became aware of the summons and complaint, they filed a motion to quash service and to dismiss the complaint for failure to state a claim. On October 10, 2006, the Court denied Defendants' motion.

C.  **Plaintiffs' Loan Transactions At Issue Involve Interstate Commerce.**

Plaintiffs, who are alleged residents of the State of Alabama, entered into loan transactions with TranSouth, a South Carolina corporation with its principal place of business in South Carolina, as well as CitiFinancial, a Delaware corporation with its principal place of business in Delaware. (Baer Dec. ¶¶ 5, 8.)

In addition, TranSouth is in the business of making consumer loans. (Baer Dec. ¶ 6.) All of TranSouth's loan operations necessarily involve interstate commerce. (*Id.*) For example, TranSouth funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a TranSouth loan transaction is closed, funds representing the loan proceeds are drawn on a line of credit with Bank One in Chicago, Illinois, and wired via Automated Clearing House ("ACH") directly to the individual closing the transaction. (*Id.*) Further, when TranSouth makes a loan to a customer, including Alabama customers, the TranSouth employee processing the transaction inputs customer data into a nationwide computer

---

[2] Pursuant to Federal Rule of Civil Procedure 4(h), Plaintiffs could have served Defendants by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1), or "by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process," Ala. R. Civ. P. 4(c)(6). Plaintiffs did neither. They served Shaun Hawthorne, who is an assistant manager of a CitiFinancial branch located in Dothan, Alabama. Ms. Hawthorne is not an officer of CitiFinancial; she is not a managing or general agent of CitiFinancial; she is not a partner in CitiFinancial; and she is not otherwise authorized by appointment or by law to receive service of process on behalf of CitiFinancial.

system, and that data is stored and updated in a database maintained by TranSouth in Roanoke, Texas. (*Id.*)

Further, CitiFinancial is in the business of making consumer loans. (Baer Dec. ¶ 9.) All of CitiFinancial's loan operations necessarily involve interstate commerce. (*Id.*) For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. (*Id.*) When CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (*Id.*)

### III. ARGUMENT

Under the facts set forth above, federal law mandates that Plaintiffs be compelled to arbitrate the claims they assert in the above-styled action.

A. **Arbitration Agreements Are Presumptively Valid.**

The Federal Arbitration Act ("FAA") establishes that an arbitration agreement shall be valid, irrevocable, and enforceable. 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Through its passage of the FAA, Congress "placed arbitration agreements upon the same footing as other contracts." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987).

"Generalized attacks on arbitration," *Gilmore v. Interstate/Johnson Lang Corporation*, 500 U.S. 20, 28 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in this substantive law to would-be complaints," *Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 480 (1989), have been repudiated as "far out of

step with our current strong endorsement of the federal statute favoring this method of resolving disputes." *Shearson/American Express, Inc.*, 490 U.S. at 481. Instead, Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. Indeed, these policies are so strong that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). It is against this backdrop of the strong federal policy encouraging arbitration that the Court evaluates Defendants' Motion to Compel Arbitration and Stay Proceedings, including Discovery.

**B.    All of the Prerequisites Under the FAA For Enforcement of Arbitration Agreements Are Satisfied.**

An arbitration agreement is specifically enforceable under the FAA if the following three requirements are met: (1) the existence of a written agreement to arbitrate claims; (2) interstate commerce is involved; and (3) coverage of the claims by an arbitration clause. 9 U.S.C. § 2.

**1.    Plaintiffs Entered Into Written Agreements To Arbitrate.**

This requirement merits only brief mention. It cannot be disputed that Plaintiffs signed arbitration agreements. (Baer Dec., at Exs. A & B.) Thus, the first prerequisite to enforcement of the parties' arbitration agreements is clearly satisfied here.

**2.    Plaintiffs' Loan Transactions With Defendants Involve Interstate Commerce.**

The FAA provides, in pertinent part, that:

> A written provision in maritime transaction or a contract <u>evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "effecting commerce" and "'encompasses a wider range of transactions than those actually in commerce -- that is, within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 123 S.Ct. 2037, 2040 (2003) (citing *Allied Bruce Terminix Co.*, 513 U.S. 265, 273 (1995)). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if an aggregate the economic activity in question would represent 'a general practice . . . subject to federal court.'" *Citizens Bank*, 123 S.Ct. at 2040 (citing *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)). Furthermore, "commerce" under the FAA is not limited to interstate shipment of goods, but rather includes all contracts relating to interstate commerce, such as loan agreements where "the money-raising activity took place in another state." *Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986).

Interstate commerce is unquestionably affected by the parties' transactions in the instant matter. Plaintiffs entered into loan transactions with TranSouth, a South Carolina corporation with its principal place of business in South Carolina, as well as CitiFinancial, a Delaware corporation with its principal place of business in Delaware. (Baer Dec. ¶¶ 5, 8.)

Further, TranSouth is in the business of making consumer loans. (Baer Dec. ¶ 6.) All of TranSouth's loan operations necessarily involve interstate commerce. (*Id.*) For example, TranSouth funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a TranSouth loan transaction is closed, funds representing the loan proceeds are drawn on a line of credit with Bank One in Chicago, Illinois, and wired via ACH

directly to the individual closing the transaction. (*Id.*) When TranSouth makes a loan to a customer, including Alabama customers, the TranSouth employee processing the transaction inputs customer data into a nationwide computer system, and that data is stored and updated in a database maintained by TranSouth in Roanoke, Texas. (*Id.*)

In addition, CitiFinancial is in the business of making consumer loans. (Baer Dec. ¶ 9.) All of CitiFinancial's loan operations necessarily involve interstate commerce. (*Id.*) For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) Indeed, when a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. (*Id.*) When CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (*Id.*)

Further, Plaintiffs' arbitration agreements specifically acknowledge that interstate commerce is involved in the loan transactions. With respect to the arbitration agreement in the 1998 TranSouth loan, the agreement provides: "The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement." (Baer Dec., at Ex. A.) With respect to the arbitration agreement in the 2002 CitiFinancial loan, the agreement provides: **"the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1-9**." (Baer Dec., at Ex. B (emphasis in original.))

Moreover, Plaintiffs' loan transactions were extensively regulated by the federal government by virtue of its preliminary powers under the commerce clause. For example, credit

agreements must comply with several federal laws and regulations, including the Federal Truth In Lending Act, and the FTC "holder in due course" rule, both of which have as their genesis the Commerce Clause.[3]  Because of the undisputed federal regulation of Plaintiffs' loan transactions, it necessarily follows that the contracts affect "interstate commerce so as to bring in to play the interstate commerce element of the FAA."

>    3.   **Plaintiffs' Arbitration Agreements Are Broad In Scope, And Encompass The Claims Plaintiffs Assert In The Instant Matter.**

Finally, the arbitration agreements that Plaintiffs signed are unquestionably broad enough in scope to encompass their claims against Defendants in the instant matter.  When determining the scope of an arbitration provision, a court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provision.  *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2nd Cir. 1993); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1987); *Costle v. Fremont Indem. Co.*, 839 F. Supp. 265 (D. Vt. 1993). Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 476 (1989) (citations omitted).

The presumption of arbitrability, created by the existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in

---

[3] *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377 (1973) (stating that the power to enact the Truth-In-Lending-Act was granted to Congress under the Commerce Clause); *Federal Trade Comm'n v. P. Lorillard Co.*, 283 F. Supp. 999 (S.D.N.Y. 1992), *aff'd*, 264 U.S. 298 (1924) (stating that the FTC's power to enact rules and regulations derives from Congress' power under the Commerce Clause).

favor of coverage." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582083 (1960)). Furthermore, "in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." *H.L. Fuller Construction Co. v. Industrial Dev. Bd*, 590 So. 2d 218, 222 (Ala. 1991).

The arbitration agreements Plaintiffs signed in connection with their loans at issue are broad and unquestionably cover the claims they assert in their complaint and amended complaint. For example, the 1998 TranSouth arbitration agreement encompasses <u>all claims and disputes</u>, including but not limited to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

(Baer Dec., at Ex. A.) The 2002 CitiFinancial arbitration agreement also encompasses <u>all claims and disputes</u>, including but not limited to:

- This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;

- Any documents or instruments that contain information about any Credit Transaction, insurance, service or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

(Baer Dec., at Ex. B.) Plaintiffs allege wrongdoing in connection with their loans and insurance obtained with respect to their loans. Clearly, Plaintiffs' allegations are squarely encompassed in the scope of the arbitration agreements they executed with Defendants.

Moreover, Plaintiffs cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc.*, 475 U.S. 650. Accordingly, all of Plaintiffs' claims against Defendants are subject to arbitration.

**C.      Plaintiffs' Claims Are Due To Be Dismissed.**

Because all of Plaintiffs' claims against Defendants are subject to arbitration, Plaintiffs' claims are due to be dismissed. *See, e.g., Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1415-16 and 1418-19 (M.D. Ala. 1998) (finding that the matter was due to be dismissed with prejudice and sent to arbitration because "[w]here all of the issues raised in a complaint must be submitted to arbitration . . . a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy."); *Clayton v. Woodmen of World Life Ins. Soc'y*, 981 F. Supp. 1447 (M.D. Ala. 19970 (same); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) (affirming dismissal of case with prejudice when it was determined that all of the plaintiff's claims were subject to arbitration). In *Alford*, the Court of Appeals held that the "weight of authority clearly supports dismissal of the case when all of

the issues raised in the district court must be submitted to arbitration." *Id.* at 1164 (citing *Sea-Land Services, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal)). The *Alford* Court further held that:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Alford*, 975 F.2d at 1164 (quoting *Sea-Land*, 636 F. Supp. at 757).

Moreover, in a similar case involving claims of predatory lending practices, *First Family Financial Services, Inc. v. Walton*, 2005 WL 1683607 (N.D. Miss. July 19, 2005), the United States District Court for the Northern District of Mississippi held that "it is readily apparent that all of [plaintiff's] claims against First Family . . . are arbitrable; therefore, it is in the interest of judicial economy to simply dismiss those claims without prejudice rather than stay them pending the completion of the arbitration." *Id.* at *2. As set forth above, all of Plaintiffs' claims are subject to arbitration; therefore, in the interest of judicial economy, Plaintiffs' claims are due to be dismissed.

D. **Alternatively, All Proceeding Related To Plaintiffs' Claims Should Be Stayed Pending Arbitration.**

In the event this Court does not dismiss Plaintiffs' claims, all proceedings related to Plaintiffs' claims should be stayed pending the conclusion of the arbitration proceedings. Section 3 of the FAA provides for a stay of litigation *where issues are referable to arbitration*:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that

the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Moreover, Section 7 of the FAA provides for discovery by the arbitrator. Therefore, any additional discovery would create "dual discovery," thereby contravening the very expense and delay-saving purpose which arbitration was designed to serve in the first place. *See Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648 (11th Cir. 1988) (reversing a district court's decision to allow discovery to proceed during arbitration); *Corpman v. Prudential-Bache Securities, Inc.*, 907 F.2d 29 (3d Cir. 1990) (same); *Sacco v. Prudential-Bache Securities, Inc.*, 703 F. Supp. 362 (E.D.Pa. 1988) (same); *Corcoran v. Shearson Lehman/American Express, Inc.*, 596 F. Supp. 1113, 1117 (N.D. Ga. 1984) (same); *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D. Miss. 1976) (same). For these reasons, if this Court enters an order compelling arbitration, which it should, the Court should dismiss Plaintiffs' claims or, in the alternative, stay all proceedings related to Plaintiffs' claims, including discovery, during the pendency of the arbitration proceedings.

**WHEREFORE**, Defendants respectfully request that this Court grant its Motion to Compel Arbitration and to Dismiss, or Alternatively, to Compel Arbitration and to Stay Proceedings, including Discovery.

> Respectfully submitted,
>
> s/ Elizabeth B. Shirley
> Reid S. Manley
> Elizabeth B. Shirley
>
> Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN, LLP**
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: 205-251-3000
Facsimile: 205-458-5100

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the plaintiffs via First Class United States Mail, postage prepaid:

Janie L. Kinsey
C.H. Kinsey
420 County Road 250
Headland, Alabama 36345

s/ Elizabeth B. Shirley<br>OF COUNSEL